# JUDGE BRIEANT                                   ORIGINAL

PROSKAUER ROSE LLP
Paul Salvatore (PS-1880)
Mark A. Saloman (MS-5764)
1585 Broadway
New York, New York 10036
(212) 969-3000
Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ **07 CV 10306**

LOUIS DRETCHEN,                          :    ___ Civ. _____

                          Plaintiff,     :    **NOTICE OF REMOVAL**

          v.                             :

ALLAN PHARMACEUTICAL LLC,                :    **ECF CASE**

                          Defendant.     :

------------------------------------------------ x

Pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446, Allan Pharmaceutical LLC

("Defendant"), by its attorneys, PROSKAUER ROSE LLP, hereby files this Notice of Removal

of the above-captioned action to the United States District Court for the Southern District of New

York from the Supreme Court of the State of New York, County of Rockland, where the action

is now pending.  In support of this Notice of Removal, Defendant states as follows:

        1.    The above-captioned action was commenced in the Supreme Court of the

State of New York, County of Rockland (Index No. 07/9248) on or about October 10, 2007.

This action is now pending in that court and no further proceedings have been had therein.

        2.    Defendant was served on October 15, 2007, by and through its agents

the State of Delaware, with a Summons and Verified Complaint in the above-referenced action.

The Summons and Verified Complaint were the first pleadings to set forth the claim for relief

upon which the above-referenced action is based.  A true and correct copy of Plaintiff's

Summons and Verified Complaint ("Complaint") are annexed hereto as Exhibit 1.

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C.

§ 1332.  Further, this action is one that may be removed to this Court pursuant to 28 U.S.C. §

1441 because it is a civil action that is between citizens of different states and in which the

amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      There is complete diversity of citizenship between the parties.

3.      Defendant is a Limited Liability Corporation incorporated in Delaware,

with its principal place of business in Pennsylvania.  (See Complaint, ¶ 3).

4.      Plaintiff is a citizen of New York and resides in Valley Cottage, within

Rockland County, New York.  (See Complaint, ¶ 1).

5.      Plaintiff's Complaint seeks judgment against Defendant for alleged

violations of state labor law, breach of contract, conversion, *quantum meruit*, and unjust

enrichment arising out of Plaintiff's former employment with Defendant.  (See Complaint ¶¶ 5-

31).  The Complaint seeks monetary damages in excess of $125,000 for these causes of action.

(See Complaint at p. 9).

6.      This Notice of Removal is timely filed, pursuant to 28 U.S.C. §1446(b),

because fewer than 30 days have elapsed since Defendant was served with the Summons and

Verified Complaint setting forth the claim for relief upon which the above-referenced action is

based.  No other process, pleading, or orders have been served upon Defendant in this action

other than the documents annexed hereto as Exhibit 1.

7.      Defendant has not filed any pleadings or papers to date in this action.

2

8.      As required by 28 U.S.C. §1446(d), upon the filing of this Notice of

Removal, Defendant will serve written notice thereof on Plaintiff, by and through his attorneys,

Sapir & Frumkin LLP, and a copy of this Notice of Removal will be filed with the Court Clerk

for the Supreme Court of the State of New York, County of Rockland.

9.      By filing this Notice of Removal, Defendant does not waive any defenses

which may be available to it.


WHEREFORE, Defendant respectfully requests that this action be removed from

the Supreme Court of the State of New York, County of Rockland to the United States District

Court for the Southern District of New York.


Dated: New York, New York
       November 14, 2007


                              PROSKAUER ROSE LLP

                              By: _____
                                   Paul Salvatore (PS-1880)
                                   Mark A. Saloman (MS-5764)
                                   1585 Broadway
                                   New York, New York 10036
                                   (212) 969-3000
                                   Attorneys for Defendant


3



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LOUIS DRETCHEN,

                        Plaintiff,

  - against -

ALLAN PHARMACEUTICAL LLC,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 07-9248

Date Purchased:

Plaintiff designates
Rockland County
as the place of trial

The basis of venue
is the Plaintiff's residence
the situs of the injury

**SUMMONS**
Plaintiff resides in
Valley Cottage, New York.

To the above named Defendant:

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer, or, if the Complaint is not served with this Summons, to serve a notice of appearance, on the plaintiff's attorney(s) within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint

Dated: White Plains, New York
     October 9, 2007

**FILED MKW**

OCT 1 0 2007

ROCKLAND COUNTY
CLERK'S OFFICE

SAPIR & FRUMKIN LLP

By: _____
Daniel T. Driesen, Esq
Attorneys for Plaintiff
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LOUIS DREICHEN,                                    Index No   07-9248
                                                   Date Purchased:
                          Plaintiff,
                                                   VERIFIED COMPLAINT
    - against -
                                                   Assigned to:

ALLAN PHARMACEUTICAL LLC,                          **FILED MKW**

                          Defendant.               OCT 1 0 2007

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    ROCKLAND COUNTY
                                                   CLERK'S OFFICE

Plaintiff, **LOUIS DREICHEN**, by his attorney, **SAPIR & FRUMKIN LLP**, alleges as and

for his Verified Complaint as follows:

## NATURE OF CLAIMS

This is an action for damages caused to Plaintiff by Defendant, ALLAN

PHARMACEUTICAL LLC ("Allan" or "Defendant"), for violations of Article Six of the N.Y.

Labor Law, and for breach of contract, conversion, quantum meruit and unjust enrichment, arising

from Defendant's unlawful withholding of commissions, stock options, expense reimbursements,

and other benefits earned by Plaintiff. In addition, Plaintiff seeks declaratory relief that a restrictive

covenant not to compete with Defendant is not enforceable against him

## VENUE & PARTIES

1.    Plaintiff is and has been a resident of Valley Cottage, within Rockland County, State

of New York during the period of time relevant to this action.

2.    Plaintiff was employed by defendant from or about June 1, 2005 until on or about

March 23, 2007. Throughout his employment relationship with Defendant, Plaintiff was a salesman

who worked from his home office in Rockland County and held the title of Executive Vice President of Sales and Marketing.

3.      Upon information and belief, Defendant is a domestic corporation organized under the laws of the State of Delaware and has its principal place of business in Pennsylvania.  Upon information and belief, at all times relevant to this action Defendant is a corporation subject to the personal jurisdiction of the Courts of New York because it is and has been doing business on a regular basis within the State of New York, because it is and has been transacting business within the State of New York in connection with the claims set forth herein.

4.      Venue is proper with this Court based upon Plaintiff's residence, and because the injuries arose in the County of Rockland

## STATEMENT OF FACTS

5.      On or about June 1, 2005, the parties executed a written Executive Employment Agreement (the "Agreement"), which is annexed hereto as Exhibit "A."

6.      In return for Plaintiff's services as a salesman, Defendant agreed to pay Plaintiff a base salary, commissions on sales, stock options and benefits, including but not limited to annual leave, car allowance and health insurance in return for the services provided by Plaintiff

7.      During the period from June 1, 2005 through March 23, 2007, Plaintiff performed services for Defendant in accordance with the Agreement.

8      Pursuant to paragraph 3(a) of the Agreement, Plaintiff was entitled to receive a base salary of $175,000 00 per year, with an annual COLA increase no less than the percentage of change "in the Bureau of Labor Statistics CPI for the New York-Northern New Jersey-Long Island-all items"

2

9.    Pursuant to paragraph 3(b) of the Agreement, Plaintiff was entitled to receive commissions on gross sales of business procured by Plaintiff in excess of $3 million, less discounts and rebates, among other things, for sales of new products to new or existing customers of Defendant and for sales of existing products to new customers of Defendant

10    In 2006 plaintiff procured gross sales in excess of $17 million, which warranted payment of commissions pursuant to the Agreement.

11.    Payment of Plaintiff's commissions for sales in 2006 were due and owing on January 1, 2007

12.    Pursuant to paragraph 3(d) of the Agreement, Plaintiff also was entitled to receive stock options equal to one percent (1%) of the outstanding stock and/or membership interest of Defendant for each year he exceeded $10,000,000 in gross sales, at a price of $.01 per share of stock or .01% of membership interest.

13    Plaintiff did not receive the base salary increase he was entitled to receive pursuant to Section 3(a) of the Agreement.

14.    Plaintiff did not receive the stock options he was entitled to receive pursuant to Section 3(b) of the Agreement as a result of exceeding his 2006 sales goal

15.    In or about the third week of December 2006, Joseph Donovan, Defendant's Chief Financial Officer, advised Plaintiff that Defendant would not be able to pay Plaintiff his 2006 commissions until the second week in January 2007.

16.    When Plaintiff asked Mr. Donovan about receipt of the stock options he earned in 2006, Mr. Donovan did not provide a date when Plaintiff would receive the stock options

3

17    On or about January 16, 2007, Plaintiff asked Mr. Donovan about Defendant's continued failure to pay Plaintiff his earned commissions for 2006. Mr. Donovan apologized for the delay, alleging that Defendant was in the midst of an audit, and promised to send payment to Plaintiff by the end of that week. Mr. Donovan alleged that Plaintiff's 2006 commissions were $170,000

18    Defendant failed to send Plaintiff his earned commissions in January 2007

19    When Plaintiff attempted to contact Defendant to inquire about his unpaid commissions, Mr Donovan refused to take Plaintiff's calls or abruptly terminated the conversations with the promise that he would get back to Plaintiff

20    Despite not receiving his earned commissions and stock options, plaintiff continued to perform his obligations under the Agreement and had gross sales in the first three months of 2007 of approximately $3 million.

21    On March 1, 2007, Plaintiff sent an e-mail to Mr. Donovan demanding payment of his earned commissions as previously promised.

22.    On March 16, 2007, Plaintiff was asked to attend an in-person meeting with Defendant's management to discuss his unpaid commissions

23    On March 23, 2007, Plaintiff met with Mr. Donovan and Defendant's Chief Operating Officer Neil Sirkin, President Raju V.K. Vegesna and Human Resources Director Mandi McDade.

24    At the meeting, instead of discussing Plaintiff's unpaid commissions, Defendant informed Plaintiff that his employment was summarily terminated and that he was to cease performing services for Defendant.

25.    The alleged reason stated by Defendant for Plaintiff's termination was not a "for cause" reason set forth in paragraph 4(e) of the Agreement. Consequently, the termination was "without cause," as that term is used in paragraph 4(f) of the Agreement

4

26    Paragraph 5(a) of the Agreement provides that, Plaintiff must be compensated all salary and benefits accrued though the date of his termination

27.    Defendant failed to pay Plaintiff the following upon Plaintiff's termination: commissions that were due and owing, stock options that were due and owing, expense reimbursement, and his accrued, unused vacation pay.

28    Defendant has been and continues to remain in breach of the Agreement

29    Paragraph 5(b) of the Agreement provides that, if the Agreement is terminated by Defendant without cause, Plaintiff is entitled to receive the full base salary that would have been payable to him for the balance of the Agreement with continued health insurance at Defendant's expense

30.    Defendant has failed to pay Plaintiff salary or health insurance premiums since he was terminated.

31    As a result of Defendant's termination of Plaintiff's employment, Defendant's breach of the Agreement, and for other reasons, Plaintiff is not bound by the Non-Competition Following Employment provisions set forth in the Agreement.

## PLAINTIFF'S FIRST CAUSE OF ACTION
### Violations of New York State Labor Law, N.Y.S. Lab. L. § 191, et seq.

32    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.    At the time of his termination, Defendant owed Plaintiff commissions for work performed during the period from on or about January 1, 2006 through March 23, 2007 and, accrued vacation days, stock options, expense reimbursements and other employment benefits , in an amount to be determined at trial, but in excess of $25,000

5

34.    Defendant's refusal to make these payments is willful violation of New York State Labor Law

35.    As a result of Defendant's violation, Plaintiff has suffered monetary damages and is entitled to recover his unpaid commissions, stock options, expense reimbursements and other employment benefits

36.    Plaintiff is entitled to liquidated damages of twenty-five percent of all unpaid commissions, stock options, expense reimbursements and other employment benefits due and owning

37.    Plaintiff is entitled to interest on the monetary and liquidated damages.

38.    Plaintiff has incurred and will continue to incur attorney's fees and costs and is entitled to payment of his reasonable attorney's fees and costs.

## PLAINTIFF'S SECOND CAUSE OF ACTION
### Retaliation under New York State Labor Law, N.Y.S. Lab. L. § 215

39.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

40.    Because Plaintiff requested the payment of outstanding wages and commissions and complained about Defendant's refusal to tender same, his employment was terminated by Defendant

41.    Defendant's retaliatory conduct was wilful and deliberate

42.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered monetary damages and is entitled to recover compensatory damages including lost wages and benefits

43.    Plaintiff has incurred and will continue to incur attorney's fees and costs and is entitled to payment of his reasonable attorney's fees and costs.

6

## PLAINTIFF'S THIRD CAUSE OF ACTION
### Breach of Contract

44    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint, as if fully set forth herein.

45    The Agreement executed by Plaintiff and Defendant concerning Plaintiff's employment relationship created an enforceable obligation for the payment of wages, commissions, stock options, accrued, unused vacation, business expenses and employment benefits owed to Plaintiff at the time of his termination.

46    Defendant had a contractual duty to compensate Plaintiff for the services he rendered while in its employ

47.   By failing to pay Plaintiff's commissions, stock options, accrued, unused vacation, business expenses and employment benefits, Defendant breached its contractual obligations to Plaintiff.

48.   As a result of Defendant's breach, Plaintiff has suffered monetary damages and is entitled to recover all unpaid commissions, stock options, accrued, unused vacation, business expenses and employment benefits, as well as reasonable costs and interest.

## PLAINTIFF'S FOURTH CAUSE OF ACTION
### Conversion

49.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

50.   By failing to pay Plaintiff's wages, commissions, stock options, accrued, unused vacation, business expenses and employment benefits, Defendant has unlawfully converted Plaintiff's money for its own use.

7

51     As a result of Defendant's unlawful conversion, Plaintiff has suffered monetary damages and is entitled to recover all unpaid commissions, stock options, accrued, unused vacation. business expenses and employment benefits, as well as reasonable costs and interest

52     Because Defendant's conversion was wanton and willful, Plaintiff is entitled to punitive damages.

## PLAINTIFF'S FIFTH CAUSE OF ACTION
### Quantum Meruit

53.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein

54.     By failing to pay Plaintiff's commissions, accrued, unused vacation and employment benefits, Defendant has denied Plaintiff the reasonable value for the services he rendered.

55.     As a result of Defendant's unlawful refusal to pay Plaintiff the reasonable value for the services he performed, Plaintiff has suffered monetary damages in an amount to be determined at trial, but in excess of $25,000

56.     In addition to the reasonable value for the services he performed, Plaintiff is entitled to reasonable costs and interest.

## PLAINTIFF'S SIXTH CAUSE OF ACTION
### Declaratory Relief

57     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

58     The Agreement provides that Plaintiff will be bound by a covenant not to compete with Defendant for as long as Defendant's payments of severance to Plaintiff continue

8

59.    The Agreement provides that if Plaintiff is terminated without cause, Defendant shall pay Plaintiff severance of full base salary and continuation of health insurance benefits for the balance of the Agreement

60.    The Agreement provides that, if Plaintiff is terminated with cause, the term of the non-compete will be six months

61.    Plaintiff was terminated without cause as defined by the Agreement.

62.    Defendant did not pay Plaintiff his severance as set forth in the Agreement

63.    Defendant is in breach of its Agreement with Plaintiff.

64.    Because Defendant is in breach of the Agreement, and for other reasons, the post-termination non-compete provisions are not enforceable against Plaintiff.

**WHEREFORE**, Plaintiff, Louis Dietchen, demands judgment as follows:

A.    Granting Plaintiff's First Cause of Action and awarding damages in an amount to be determined at trial, but in excess of $25,000, plus liquidated damages, attorney's fees, reasonable costs and interest;

B.    Granting Plaintiff's Second Cause of Action and awarding damages in an amount to be determined at trial, but in excess of $25,000, plus attorney's fees, reasonable costs and interest;

C.    Granting Plaintiff's Third Cause of Action and awarding damages in an amount to be determined at trial, but in excess of $25,000, plus reasonable costs and interest;

D.    Granting Plaintiff's Fourth Cause of Action and awarding damages in an amount to be determined at trial, but in excess of $25,000, plus punitive damages, reasonable costs and interest;

E.    Granting Plaintiff's Fifth Cause of Action and awarding damages in an amount to be determined at trial, but in excess of $25,000, plus punitive damages, reasonable costs and interest;

9

F.    Granting Plaintiff's Sixth Cause of Action declaring that paragraph 8 of the Agreement, prohibiting Plaintiff from directly or indirectly performing services for, or becoming affiliated with, any drug manufacturer that is a direct competitor of Defendant through making similar products, is not enforceable against Plaintiff.

G.    Such other and further relief that this Court deems appropriate

Yours, etc.

**SAPIR & FRUMKIN LLP**

Dated: White Plains, New York
      October 9, 2007

By: _____
      Daniel T Driesen, Esq.
      Attorneys for Plaintiff
      399 Knollwood Road, Suite 310
      White Plains, New York 10603
      (914) 328-0366

10

## ATTORNEY VERIFICATION

STATE OF NEW YORK        )
COUNTY OF WESTCHESTER   ) ss.:

      **DANIEL T. DRIESEN,** an attorney duly admitted to practice in the courts of the State of

New York, states as follows:

      I am the attorney of record for Plaintiff Dretchen in the within action; I have read the

foregoing Complaint and know the contents thereof; the same is true to my own knowledge except

as to the matters therein stated to be alleged on information and belief, and as to those matters I

believe it to be true. The reason this verification is made by me and not by Plaintiff Dretchen is that

Plaintiff Dretchen resides in another county  The grounds of my belief as to all matters not stated

upon my own knowledge are as follows: The information provided and contents of a file compiled

by Plaintiff Dretchen and maintained by our law firm.

      I affirm that the foregoing statements are true, under the penalties of perjury

Dated: White Plains, New York
       October 9, 2007

                                    DANIEL T DRIESEN

F:\APPLICAT\WP\Dretchen\Allan Pharmaceutical\Verified Complaint 10 07 wpd\Rtvdp

FILED MKW

OCT 1 0 2007

ROCKLAND COUNTY
CLERK'S OFFICE

**Exhibit A**

<u>EXECUTIVE EMPLOYMENT AGREEMENT</u>

This Agreement is made and entered into as of the 1st day of June 2005 by and between Allan Pharmaceutical LLC. a Delaware corporation (Company), and Lou Dretchen (Executive).

In consideration of the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.<u>Employment</u>.  The Company hereby employs Executive, and Executive hereby accepts employment, as the Executive Vice President of Sales and Marketing of the Company, upon the terms and conditions set forth in this Agreement for the three (3) year period beginning on the date of this Agreement, subject to extension and/or early termination as stated below.

2. <u>Duties</u>.

(a) Executive shall serve as the Executive Vice President of Sales and Marketing of the Company and shall have the customary duties, responsibilities and authority of such a position. Furthermore Executive will server on the Product Selection and Development Committee.

b) Executive agrees to devote his best efforts to the business and affairs of the Company and its subsidiaries, divisions and operational units. Executive shall perform his duties and responsibilities faithfully, diligently and in a manner consistent with and in furtherance of the best interests of the Company, and in accordance with all laws and regulations related to the performance of his duties hereunder.

3. <u>Base Salary and Benefits</u>.  The Company will provide Executive the following compensation:

(a) <u>Base Salary</u>.   Executive's base salary will be $175,000 for the term of this agreement.  The Company will consider in good faith not less often than annually, whether the Executive salary shall be increased because of market conditions, the Executive's performance of his responsibilities, cost-of-living, and other relevant considerations.

Executive's base salary shall be increased each year by at least for a COLA adjustment, based upon and equal to the change in the Bureau of Labor Statistics CPI for the New York-Northern New Jersey-Long Island – all

Items.

(b) Commission. Shall be five percent (5%) of Gross sales from Qualified Sales. For the purposes of this section, the following terms shall have the following meanings: Gross Sales means the sales revenue less discounts and rebates in excess of $3,000,000 to $5,000,000. Qualified Sales in excess of $5,000,000 shall be subject to one percent 1% commission. Qualified Sales means business procured by the Executive for the Company, including but not limited to sales of new products to new or existing customers of the Company, and sales of existing products to new customers of the Company.

(d) Stock options.

Executive can earn stock options equal to (1%) one percent of the outstanding stock and / or membership interest, per year up to a total interest of (5%) five percent, based on the following certeria:

1.) Stock options are available after gross sales, as defined in this agreement, exceed $10,000,000.

2.) Sales as defined in this agreement must increase yearly by a minimum of $1,000,000.

3.) The maximum stock options available per year of the outstanding stock and / or membership interest equal 1%.

4.) Stock options are priced at $.01 per share or per .01% of membership interest.

5.) If the company is sold after the 1st year of this agreement the Executive shall have the right to exercise the full 5% of options, regardless of whether he would otherwise have received the entire 5% under the terms of the Agreement.

6.) The Executive's equity interests will be governed by the same terms as that which applies to the current members of the Company which are defined in the Operating Agreement. This ownership interests are vested as earned.

(c) Other Benefits.

(1) During his employment, Executive shall be entitled to participate on the same basis and at the same level as other members of senior management of the Company, in any group insurance plans or programs of the Company and in any other employee benefit programs of the Company for which the other members of senior management of the Company are generally eligible including, but not limited to retirement plans and stock options or grants. Company will provide and pay for family health insurance for the Executive.

(2) During his employment, Executive shall also be entitled to such other fringe benefits and conditions of employment as other members of senior management of

the Company, excluding the LLC members, including without limitation, customary holidays, sick leave, and up to four weeks vacation per calendar year. Executive shall receive a car allowance of $ 1,300.00 per month.

(3) Contract Extension; this contract will automatically extend for an additional period of (3) three years if the sales goal of $15,500,000 is met within the first contract period.

(d) Reimbursement of Expenses. The Company shall reimburse Executive for all reasonable business expenses incurred by him in the course of performing his duties under this Agreement which are consistent with the Company's policies in effect from time to time with respect to travel, entertainment and other business expenses, subject to the Company's requirements with respect to reporting and documentation of such expenses.

4. Termination. This Agreement, and Executive's employment, shall automatically terminate upon the earliest to occur of the following (the Termination Date):

(a) The close of business on the last day of the term of this Agreement;

(b) The death of Executive;

(c) Upon One-Hundred-eighty (180) days notice from the Company to Executive in the event of Executive's Disability (as used herein, Disability means physical or mental disability which prevents Executive from performing his obligations under this Agreement for (i) a period of One-Hundred-eighty (180) consecutive days or (ii) shorter periods aggregating One-Hundred-eighty (180) days during any period of one hundred eighty (180) consecutive days);

(d) Upon thirty (30) days written notice of resignation by Executive to the Company; or

(e) Upon written notice from the Company to Executive that his employment is being terminated for cause (as used herein, for cause means (i) Executive has demonstrated habitual drunkenness or substance abuse; (ii) Executive has been convicted of a felony, any other crime involving fraud, dishonesty or moral turpitude or (iii) Executive has committed any act of fraud, misappropriation of funds or property, bribery, corrupt practice or embezzlement in connection with his employment hereunder); or failure to reach sales goals of $4,000,000 within the first 12 calendar months from the first day for employment. This sales goal is dependant

3

on the Company providing the Executive with the product to sell and good customer service.

(f) Upon written notice by the Company at any time specifying that such termination be without cause.

5. Severance.

(a) Upon termination of this Agreement, Executive shall be entitled to receive his Base Salary and all benefits accrued through the Termination Date. Subject to Section 5(b) below, following the Termination Date, Executive shall not be entitled to any Salary or benefits.

(b) Notwithstanding Section 5(a), if this Agreement is terminated by the Company without cause, Executive shall be entitled to receive the full base salary that would have been payable to Executive for the balance of the contract along with continued health insurance at the companies expense for the balance of the contract. This amount may be payable, at Company's discretion, at the same time base salary would otherwise have been payable or in one (1) lump sum payment within thirty (30) days following the termination date.

4

6. Confidentiality.

(a) For purposes of Sections 7 through 11 of this Agreement, the term Company shall include the Company and each of its subsidiaries, divisions and operating units identified by the Company to the Executive. Executive recognizes that the Company derives economic value from information created and used in its business which is not generally known by the public, including but not limited to customer and supplier information and lists; confidential business practices of the Company or any of its customers, suppliers, licensees or other business partners or relations; profit margins and the prices or discounts the Company obtains or has obtained or at which it provides or has provided or plans provide its services; labor and sales plans and costs; business and marketing plans, ideas, or strategies; confidential financial performance and projections; employee compensation; employee staffing or recruiting plans and employee personal information; and other confidential concepts or ideas related to the Company's business (collectively, Protected Information). Executive expressly acknowledges and agrees that, by virtue of Executive's employment and position with the Company, Executive has access to certain Protected Information and that Protected Information constitutes trade secrets and confidential and proprietary business information of the Company, all of which is the exclusive property of the Company. For purposes of this Agreement, Protected Information includes the foregoing but does not include information that (i) is known to Executive as of the date of this Agreement from sources outside the Company, or (ii) becomes known outside the Company through means other than a breach of this Agreement by Executive or other person(s) acting in concert with him.

(b) Executive agrees that Executive will not directly or indirectly, without the prior written consent of the Company: (i) use Protected Information for the benefit of any person or entity other than the Company; (ii) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Protected Information, except as required to perform Executive's duties for the Company; and (iii) while employed and for a period of no less than two (2) years thereafter, publish, release, disclose or deliver or otherwise make available to any third party any Protected Information by any communication, including oral, documentary, electronic or magnetic information transmittal device or media; provided, that Executive shall have the right to disclose Protected information pursuant to Subpoena or other process of law. Upon termination of employment, the Executive shall return all Protected Information and all other Company property. This obligation of non-disclosure and non-use of information shall continue to exist

5

for so long as such information remains Protected Information, except as otherwise limited above.

7. Non-Competition During Employment. While Executive is employed by the Company, Executive will not, either directly or indirectly, either as a principal, agent, employee, independent contractor, employer, partner, member or shareholder (other than as an owner of 25% or less of the stock of a Company) or in any other capacity, other than for the Company, engage in any manner in a business providing Pharmaceutical products or services without the prior written approval of the company. Executive shall be permitted to invest in any business opportunities which he introduces to the Company or its members if they invest in them.

8. Non-Competition Following Employment. Executive agrees that the Executive be bound by this non-compete for as long as his severance payments continue. If the Executive is terminated for cause the term of the non-compete will be 6 months. Executive will not, either directly or indirectly, either as a principal, agent, employee, contractor, partner, member or shareholder (other than as an owner of 25% or less of stock) or in any other capacity, perform work or services for, or become affiliated with, any drug manufacturer that is a direct competitor of the Company through making similar products.

10. Acknowledgment of Consideration; Business Interest; Remedies.

(a) Executive acknowledges and agrees that the level of compensation he is receiving pursuant to this Agreement and the opportunity to receive severance pursuant to Section 5, is in consideration of the continuing covenants and obligations of Executive under Sections 7 through 11 hereof and constitutes adequate consideration in support thereof.

(b) If, at the time of enforcement of Sections 7 through 11 above, a court shall hold that the duration, scope, area or activity restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope, area or activity restrictions reasonable and enforceable under such circumstances shall be substituted for the stated duration, scope, area or activity restrictions.

11. Survival. Sections 5, 6, 7, 8, 10, and 11 shall survive and continue in full force in accordance with their terms notwithstanding any termination of the Period. This contract is binding on any successor company.

6

**12. Notices.** Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, or sent by Federal Express or similar next day mail service or by facsimile to the recipient at the address indicated below:

> **Notices to Executive:**
> Lou Dretchen, R. PH
> 8 Sasson Terrace
> Valley Cottage, NY 10939
>
> **Notices to Company:**
> Joseph Donovan
>
> 110 Industrial Drive
>
> Dekalb, MS 39328

or at such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Any notice under this Agreement will be deemed to have been given when so delivered or mailed.

**13. Severability.** Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

**14. Complete Agreement.** This Agreement and the other agreements referenced herein embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

**15. Counterparts.** This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same Agreement.

16. **Successors and Assigns.** This Agreement is intended to bind and inure to the benefit of and be enforceable by the parties hereto and their respective heirs, successors and assigns, except that Executive may not assign his rights or delegate his obligations hereunder without the prior written consent of the Company.

17. **Governing Law.** This Agreement is made and entered into in the State of Mississippi. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Mississippi, without regard to its conflict of law principles.

18. **Amendment and Waiver.** The provisions of this Agreement may be amended or waived only with the prior written consent of the Company and Executive, and no course of conduct or failure to delay in enforcing the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement.

    IN WITNESS WHEREOF, the parties hereto have executed this Executive Employment Agreement as of the date first written above.

Allan Pharmaceutical LLC.

By: _____

Name: Joseph Donovan

Title: Chief Financial Officer

EXECUTIVE

_____

Lou Dretchen

8