UNITED STATES DISTRICT COURT                                          ECF Case
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LOUIS DRETCHEN,                                        07 Civ. 10306 (CLB) (LMS)

                          Plaintiff,


              v.


ALLAN PHARMACEUTICAL LLC,


                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


---

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION TO TRANSFER VENUE

---


**SAPIR & FRUMKIN LLP**
399 Knollwood Road, Suite 310
White Plains, New York 10603
(914) 328-0366
Attorneys for Plaintiff Louis Dretchen


*On the Brief*:

        Donald L. Sapir
        Daniel T. Driesen

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       DEFENDANT HAS NOT MET ITS BURDEN TO MAKE A CLEAR AND
       CONVINCING SHOWING THAT VENUE SHOULD BE TRANSFERRED SO
       AS TO DENY PLAINTIFF HIS CHOICE OF FORUM IN NEW YORK . . . . . . . . . . . 8

       A.     Plaintiff's Choice of Forum Will not be Lightly Overridden . . . . . . . . . . . . . . . . 9

       B.     Other Factors to be Considered Do Not Strongly Favor Transfer to
             Mississippi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.     Convenience of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.     Location of Documents and Ease of Access to Sources of
                 Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            3.     Convenience of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            4.     Locus of Operative Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            5.     Availability of Process to Compel Unwilling Witnesses . . . . . . . . . . . . 16
            6.     Relative Means of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            7.     Forum's Familiarity with the Governing Law . . . . . . . . . . . . . . . . . . . . 17
            8.     Trial Efficiency and Interests of Justice . . . . . . . . . . . . . . . . . . . . . . . . 18

       C.     Defendant's Motion is Premature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>**TABLE OF AUTHORITIES**</u>

<u>*Cases*</u>

*Chong v. Healthtronics, Inc.*, 2007 U.S. Dist. LEXIS 45956 (E.D.N.Y. June 20, 2007) . . . 10, 17

*Editorial Musical Latino Americana, S.A. v. Mar Intl. Records*, 829 F. Supp. 62
(S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . 10

*Filmline (Cross-Country) Prod., Inc. v. Yellowbill Finance Ltd.*, 865 F.2d 513 (2d Cir. 1989) . . 9

*Ford Motor Co. v. Ryan*, 182 F.2d 329 (2d Cir. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kirkland v. New York State Dept. of Corr. Serv.*, 358 F. Supp. 1349 (S.D.N.Y. 1973) . . . . 13, 16

*Montgomery v. TAP Enter., Inc.*, 2007 U.S. Dist. LEXIS 12702 (S.D.N.Y. Feb. 26, 2007) . . . . . 9

*Navigators Mgt. Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 2006 U.S. Dist. LEXIS
83220 (S.D.N.Y. Nov. 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Paragon Realty Group LLC v. Lecates*, 2007 U.S. Dist. LEXIS 11458
(D.Conn. Feb. 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Photoactive Prod., Inc. v. Al-Or Intl. Ltd.*, 99 F. Supp. 2d 281 (E.D.N.Y. 2000) . . . . . . . 9, 10, 16

*PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F. Supp. 1218 (S.D.N.Y. 1979) . . . . . . . . . . 9, 12

*Rollins v. Green*, 2007 U.S. Dist. LEXIS 55089 (S.D.N.Y. July 26, 2007) . . . . . . . . . . . . . . . . 9

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040 (S.D.N.Y.) . . . . . . 14, 17

*Rosenstock v. Fink*, 351 F. Supp. 113 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*The Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341 (S.D.N.Y. 2002) . . . . . . . . 9

<u>*Rules and Statutes*</u>

F.R.Civ.P. 45(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

New York State Labor Law § 191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

**_Other Authorities_**

Philadelphia Business Journal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PRELIMINARY STATEMENT

The instant action was commenced by Louis Dretchen ("Dretchen") to recover compensation he earned by making millions of dollars in profit for Defendant, Allan Pharmaceutical LLC ("Allan Pharma"), while selling Defendant's pharmaceutical products. Pursuant to a written employment agreement that Dretchen performed from his home office in Valley Cottage, New York, the Defendant agreed to pay Dretchen a stated percentage of his sales as commissions, and if Dretchen was very successful with sales in excess of ten million dollars, Defendant also agreed to compensate Dretchen with an ownership interest of up to five percent of the Defendant company. Dretchen was "very successful," but Defendant has failed and refused to pay Dretchen the commissions or ownership interest that he earned.

Dretchen created sales relationships for Allan Pharma with Dretchen's longstanding industry retail contacts. Having milked Dretchen for his contacts in the pharmaceutical industry, Defendant unilaterally unlawfully terminated the employment agreement after leading Dretchen on for months with empty promises to pay him the commissions and ownership interest that he was owed. Defendant has yet to pay the commissions that Dretchen earned prior to the unlawful termination, the ownership interest he earned, or the severance pay that the agreement entitled him to receive from Defendant. Accordingly, Dretchen commenced the instant action asserting statutory claims arising under Article Six of the N.Y. Labor Law, and for breach of contract, conversion, quantum meruit and unjust enrichment, arising from Defendant's unlawful withholding of commissions, Allan Pharma stock, expense reimbursements, and other benefits earned by Plaintiff.

Defendant removed the action from New York state court in Rockland County to federal court in White Plains. Plaintiff did not contest the removal. In the instant motion to transfer venue,

1

Defendant admits that the present venue is proper, but alleges that it is more convenient for **its** witnesses to litigate the matter in Mississippi, where Defendant's related companies are one of the area's largest employers.  As shown herein, the motion is premature, without merit, and should be denied.

## **FACTS**

Plaintiff was employed by one company and only one company, Allan Pharmaceutical LLC, a Delaware Corporation with its principal place of business in Pennsylvania.  Dretchen did not sell the cosmetics or dietary supplements that are the principal products of Allan's parent company, Allan Holdings LLC, or for Allan Holdings LLC's subsidiary, ProDerma LLC.  The generic drugs that Dretchen sold were exclusively for Allan Pharma, not for Allan Holdings LLC's other subsidiary, Pharma Pac, LLC.  He was Executive Vice President of Sales and Marketing only of Allan Pharma and was required "to devote his best efforts to the business affairs of the Company [Allan Pharma] and *its* subsidiaries, divisions and operational units." (Agr., ¶ 2(b)) (emphasis added).  None of the other "Allan" companies are subsidiaries, divisions or operational units of Allan Pharma.  Dretchen had no duties with, or responsibilities to, Allan Holding, LLC or its subsidiaries, ProDerma LLC or Pharma Pac, LLC.  (Affidavit of Louis Dretchen ("Dretchen Aff."), sworn to December 12, 2007, ¶¶2-4).

**Dretchen's Recruitment by Allan Pharma and Pre-hire Activities**

Dretchen was first recruited to join Allan Pharma by its CEO, Neil Sirkin and his brother, Sam Sirkin, an owner of Allen Pharma.  Upon information and belief, at all relevant times Sam Sirkin was and is a resident of the State of Connecticut.  Dretchen had known Sam Sirkin for over ten years as a player in the pharmaceutical sales industry.  In or about February 2005, Dretchen

traveled from his home in New York to Greenwich, Connecticut for an interview with the Sirkin brothers. Dretchen had a second interview in Greenwich, Connecticut with the Sirkin brothers in or about March 2005. (Dretchen Aff., ¶¶5-6).

In April 2005, Dretchen had a third and final interview with Allan Pharma executives in Newark, New Jersey. Present in New Jersey were Dretchen, Neil Sirkin, Allan Pharma President Raju V.K. Vegnesa, and Allan Pharma Chief Financial Officer Joseph Donovan. At this meeting, Dretchen was extended an offer of employment, to which he agreed. (Dretchen Aff., ¶7).

Subsequent to the New Jersey meeting, Dretchen's lawyers, who were located in New Jersey, engaged in negotiation with Allan Pharma's lawyers to finalize the details of the agreement that had been discussed by the parties in Newark, New Jersey. Having successfully negotiated an agreement with Dretchen's New Jersey lawyers, Defendant sent to Dretchen's New York home an employment contract for his execution. In May 2005, while in his home office in Rockland County, New York, Dretchen signed the agreement and became an employee of Allan Pharma. (Dretchen Aff., ¶8).

At no time prior to his hiring by Allan Pharma, did Dretchen travel to Mississippi to meet with any person related to Defendant's business. (Dretchen Aff., ¶9).

**Allan Pharma's Employees Outside Mississippi and Their Interaction with Dretchen**

Dretchen's first meeting with Allan Pharma's executives as an employee occurred in June 2005 at the company's headquarters in Huntingdon Valley, Pennsylvania. At the meeting, Dretchen discussed current products and the future timeline for additional products, sales and marketing. Present for this discussion were Dretchen, Neil and Sam Sirkin, Joseph Donovan, Raju Vegesna and Giora Carni. Mr. Carni was one of the five founding partners of Allan Pharma and at that time was responsible for identifying product selection and obtaining/creating pricing and product data for

3

Allan Pharma's pharmaceuticals.  Contrary to the sworn statement of CFO Donovan in his declaration (¶6), that "Allan Pharma did not have an officer, executive and employee in New York other than Dretchen," Giora Carni lived in New York City and worked from his home.  As an executive of Allan Pharma, Mr. Carni performed his duties and responsibilities, and professionally interacted with Dretchen, within the State of New York during Dretchen's employment with the company. (Dretchen Aff., ¶¶10-11).

Although Defendant omitted mention of its New York partner from its moving papers, it included numerous alleged "witnesses" employed at its Mississippi facility.  Without the benefit of knowing what information relevant to the claims or defenses, if any, would be provided by the ten so-called witnesses listed by Defendant (other than Donovan), Dretchen attests that he had little or no relevant professional interaction with at least half of those identified.  Dretchen had minimal relevant professional contact with VP Thomas Otto and Administrative Assistant Bertha Rush, no professional contact with VP's Juan Picado and John Baugh, and does not know, nor did he recall ever having met, April Williams. (Dretchen Aff., ¶12).

Notably absent from the list of potential witnesses are the approximately nineteen employees of Allan Pharma located at the company's Pennsylvania headquarters, in addition to President Raju V.K. Vegesna.  Dretchen had significant professional contact and interactions with all of Allan Pharma's Pennsylvania employees.  Allan Pharma employs 18 scientific researchers in Pennsylvania along with an Office Manger and Pres. Vegesna.[1]  In addition to frequent telephone calls, Mr. Dretchen drove to Allan Pharma's Pennsylvania headquarters monthly to meet with his co-workers

---

[1]  The Court should take notice that Allan Pharma is expanding its presence in Pennsylvania, as evidenced by a news article recently published in the Philadelphia Business Journal.  Annexed as Exh. "1" to Dretchen Affidavit.

in that state.  By contrast, Dretchen's visits to the DeKalb, Mississippi facility were much less frequent. (Dretchen Aff., ¶¶13-15).

**Dretchen's Work Activities**

Dretchen's job was to sell and maintain sales accounts for Allan Pharma's generic drugs. Defendant contends that Dretchen spent 15 of every 20 business days traveling outside New York. Defendant is incorrect.  Dretchen conducted the majority of his business by phone, primarily from his home-office in Rockland County, New York.  On average, Dretchen spent approximately than 25% of his time traveling outside of New York to generate and maintain his sales accounts. Dretchen's business trips almost exclusively originated in, and concluded from, the State of New York.  All earnings received by Dretchen as an employee of Allan Pharma were paid via direct deposit to Dretchen's New York bank.  (Dretchen Aff., ¶¶16-18).

As Executive Vice President of Sales and Marketing, Dretchen was not required to be a licensed pharmacist, nor possess a degree in pharmacology.  Dretchen was never questioned regarding his licensure during his interviews with Allan Pharma executives in Connecticut and New Jersey.  Upon information and belief, the salesperson assigned by Allen Pharma to succeed Dretchen in his position, Brad Cunningham, is neither a licensed pharmacist nor does he possess a degree in pharmacology.(Dretchen Aff., ¶¶19-20).

**Termination of Dretchen's Employment and Breach of the Employment Agreement by Allan Pharma**

Dretchen was recruited by Allan Pharma because of his 20 years experience in pharmaceutical sales and extensive network of sales contacts. While employed by Defendant, Dretchen had sales in excess of $18 million, built a customer base of approximately forty clients and established programs to monitor ordering and customer service.  (Dretchen Aff., ¶21).

5

Defendant alleges that it terminated Dretchen because it learned that he was convicted of a felony in New York (17 years prior) and was not a licensed pharmacist. Although Defendant received its completed report setting forth this information on or before December 1, 2006, *Donovan Declaration*, Exhibit 2, Defendant neither terminated Dretchen's employment nor confronted Dretchen with the information until March 23, 2007. Instead, in January 2007, Defendant directed Dretchen to attend two major sales conventions as Allan Pharma's representative. During the 113 days between Allan Pharma's admitted knowledge of the information and its termination of Dretchen's employment on March 23, 2007, "effective immediately," Allan Pharma encouraged Dretchen's efforts to meet clients, propose and close bids and contracts on dozens of major accounts, including multimillion dollar deals with McKesson, Walmart, Meijer and Duane Reade. (Dretchen Aff., ¶¶22-23).

While not relevant to the instant motion, Defendant asserts that a basis for the termination is Dretchen's purported debarment from contracting with the federal government. During his entire employment by Defendant, Dretchen never solicited bids, nor attempted to solicit bids, from the federal government, nor was he ever required or encouraged to do so. Allan Pharma exclusively serviced the private industry wholesale, retail and institutional market. It was never so much as suggested by Allan Pharma that the federal government was a prospective client for its products. (Dretchen Aff., ¶24).

During the four months (at least) that Allan Pharma admits it had knowledge regarding Dretchen's licensure and prior criminal history, Dretchen made numerous demands for payment of the compensation owed to him by Defendant. In or about the third week of December 2006, Joseph Donovan, told Dretchen that Defendant was not able to pay his 2006 commissions until the second

6

week in January 2007.  When Dretchen asked Donovan about receipt of the ownership interest he earned in 2006, Donovan was unable or unwilling to provide a date when Plaintiff would receive the ownership interest he earned.  On or about January 16, 2007, Dretchen asked Donovan about Defendant's continued failure to pay him his earned commissions for 2006.  Donovan apologized for the delay, alleging that Defendant was in the midst of an audit, and promised to send payment to Plaintiff by the end of that week.  In that conversation Donovan alleged that Plaintiff's 2006 commissions were $170,000.  (Dretchen Aff., ¶¶25-27).

Defendant failed to send Plaintiff his earned commissions in January 2007.  When Dretchen continued to attempt to contact Defendant to inquire about his unpaid commissions, Donovan refused to take his calls or abruptly terminated the conversations with the promise that he would get back to Dretchen.  Despite not receiving his earned commissions and ownership interest, Dretchen continued to perform services for Allan Pharma and had gross sales in the first three months of 2007 of approximately $3 million.  (Dretchen Aff., ¶¶28).

On March 1, 2007, Dretchen sent an e-mail from his home office in New York to Donovan demanding payment of his earned commissions.  On March 16, 2007, Dretchen was instructed to attend an in-person meeting with Defendant's management to discuss his unpaid commissions. On March 23, 2007, Plaintiff met with Donovan, Neil Sirkin, Raju V.K. Vegesna and Human Resources Director Mandi McDade.  Plaintiff's unpaid commissions were not discussed at this meeting.  Rather, Defendant lured Dretchen to Mississippi under false pretenses to inform him that his employment was terminated and that he was to cease performing services for Defendant.  (Dretchen Aff., ¶¶29).

7

Defendant failed to pay Dretchen the following upon his termination: commissions that were due and owing, an ownership interest that was due and owing, expense reimbursement, his accrued, unused vacation pay, and contractually required post-termination salary and benefits. In his home in New York, Dretchen possesses numerous documents that are evidence of the work he performed, expenses he incurred and was not reimbursed, communications between Dretchen and Defendant, salary and benefits he was paid and damages he has suffered as a result of Defendant's statutory violations and common law and contractual breaches. (Dretchen Aff., ¶¶30-31).

Rather than pay Dretchen the money he is owed, Defendant prefers to pay high priced lawyers, Proskauer Rose, at both its New York and New Jersey offices, to bring meritless motions like the instant motion to transfer venue, to increase the cost of litigation for Dretchen to beat him into submission. The cost of litigating in Mississippi would be a burden, perhaps insurmountable, by Dretchen. Furthermore, when terminated by Defendant, Dretchen obtained employment as a consultant with other pharmaceutical companies in New York, Connecticut and New Jersey. Undoubtedly, though abrogated by Defendant's breach, when Defendant files an Answer it will counterclaim alleging violation of the restrictive covenant in its employment agreement with Dretchen. That counterclaim will have New York, Connecticut and New Jersey, not Mississippi, as its locus. (Dretchen Aff., ¶¶32-33).

## ARGUMENT

### DEFENDANT HAS NOT MET ITS BURDEN TO MAKE A CLEAR AND CONVINCING SHOWING THAT VENUE SHOULD BE TRANSFERRED SO AS TO DENY PLAINTIFF HIS CHOICE OF FORUM IN NEW YORK

The standard of review applicable to the instant motion is that, "the party seeking venue transfer bears the significant burden of making a clear and convincing showing that a case should

be transferred." *Editorial Musical Latino Americana, S.A. v. Mar Intl. Records*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993); *see, Filmline (Cross-Country) Prod., Inc. v. Yellowbill Finance Ltd.*, 865 F.2d 513, 521 (2d Cir. 1989); *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950); *see also, PI, Inc. v. Valcour Imprinted Papers, Inc.*, 465 F. Supp. 1218, 1223 (S.D.N.Y. 1979) (motion to transfer venue denied because defendant did not show it would be substantially more convenient); *Photoactive Prod., Inc. v. Al-Or Intl. Ltd.*, 99 F. Supp. 2d 281, 292 (E.D.N.Y. 2000) (defendant bears the burden to make a "clear" showing).

> In evaluating a motion to transfer venue, courts commonly consider such factors as:
>
> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*The Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

## A.    Plaintiff's Choice of Forum Will not be Lightly Overridden

In stating the applicable factors for consideration, Defendant neglected to mention that courts accord substantial weight to the first factor, plaintiff's choice of forum. *See, Rollins v. Green*, 2007 U.S. Dist. LEXIS 55089, *25 (S.D.N.Y. July 26, 2007); *Editorial Musical*, 829 F. Supp. at 66; *Rosenstock v. Fink*, 351 F. Supp. 113, 115 (S.D.N.Y. 1972); *Photoactive Prod., Inc. v. AL-OR Intl. Ltd*, 99 F. Supp. 2d 281, 292 (E.D.N.Y. 2000). "That choice should not be lightly overridden." *Albert Fadem Trust*, *supra*, 214 F. Supp. 2d at 343.  Only where there is little material connection to the chosen forum will the presumption in favor of plaintiff's choice be lessened. *See Montgomery v. TAP Enter., Inc.*, 2007 U.S. Dist. LEXIS 12702, *8 (S.D.N.Y. Feb. 26, 2007); *Chong v. Healthtronics, Inc.*, 2007 U.S. Dist. LEXIS 45956 (E.D.N.Y. June 20, 2007) (plaintiff's residence

was the only material connection to New York).

Here, plaintiff commenced his action in New York, where he performed the vast majority of the employment duties that serve as the basis for both his statutory claims arising under New York State Labor Law, and his common law claims for breach of contract, quantum meruit and unjust enrichment. As set forth more fully below, Plaintiff's choice of forum should not be disturbed.

**B.    Other Factors to be Considered Do Not Strongly Favor Transfer to Mississippi**

**1.    Convenience of Witnesses**

"When a party seeks the transfer on account of the convenience of the witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978); *Photoactive Photoactive Prod., Inc.*, 99 F. Supp. 2d at 292. Absent such a showing, the motion should be denied. *Editorial Musical*, 829 F. Supp. at 67, citing *Factors Etc., Inc.*, 579 F.2d at 218.

Defendant provided the declaration and intended testimony of only one of its alleged witnesses, Joseph Donovan. Defendant identifies nine other employees of Allan Pharma, but does not inform the Court or Plaintiff of what relevant evidence, if any, each of these individuals might provide. Rather, it lists "bullet points" of topics that it contends are relevant, but fails to make any statement of what each alleged witness's testimony will cover. Def. Mem. pp., 13-14. Defendant's failure to set forth the evidence to be offered by each purported witness is fatal to its motion. *See Editorial Musical*, *supra*.

In addition to Defendant's deficient offer of proof, its contentions regarding the purported witnesses are otherwise faulty. First, Dretchen had little or no professional interaction with five of

10

the nine employees identified by Defendant as "witnesses." Second, President Raju Vegesna, who was present during the "interview and hire" of Dretchen in New Jersey, is a resident of Pennsylvania, where Allan Pharma is headquartered. Third, Defendant makes no showing how witness testimony would be necessary to prove material facts in dispute in the action.

The amount of sales made by Dretchen and his reimbursable expenses can be verified by documents in the possession of Plaintiff and Defendants, should not be in dispute, and should not require witness testimony. The same is true for the amount of commissions earned by Dretchen. What is in dispute is whether Dretchen's conviction some seventeen years before his employment by Defendant permitted termination of employment "for cause" within the meaning of the written employment agreement. This question is one of contract interpretation and likely does not require witness testimony, since Dretchen's conviction record is not in dispute. Similarly, witness testimony regarding Dretchen's licensure status is immaterial because the contract does not require that Dretchen, a salesman, possess a license.

Testimony of unspecified witnesses from Mississippi are not required for these claims and their convenience should not be considered by this court. Furthermore, absent a proffer by Defendant regarding the proposed substance of the testimony of its ten alleged witnesses, it is likely that their testimony would be repetitive and that they were identified merely in an attempt to shift the balance to Mississippi in support of the instant motion.

Lastly, Defendant's evaluation of the convenience of the witnesses ignores those located in or near to the Southern District of New York. Plaintiff, a key witness, is a resident of New York.[2]

---

[2] Defendant's argument that the inconvenience to Dretchen is lessened because he traveled to Mississippi in the past is without merit. He does not now travel to Mississippi and it cannot rationally be stated that to do so would be convenient for him.

11

President Vegesna resides in Pennsylvania. Furthermore, to the extent it will be necessary to discover information from any of the nineteen employees located at Defendant's Pennsylvania headquarters with whom Dretchen regularly interacted, travel to the Southern District of New York, which is attainable by car or short flight into its many airports, is undoubtedly more convenient and readily available than travel to the Southern District of Mississippi, Eastern Division. *See PI, Inc.*, 465 F.Supp. at 1223 (refusing to deprive plaintiff of his choice of forum in the Southern District of New York where travel was more readily available than to the proposed transferee district). Also, Sam Sirkin, a non-party, recruited Dretchen and was present at each of the first two interviews of Dretchen in Connecticut, the State where Mr. Sirkin resides. If his testimony were required, he, too, would be inconvenienced by traveling from Western Connecticut to Mississippi, rather than to White Plains.

Accordingly, in the absence of a showing of the proposed relevant testimony of each the numerous Mississippi "witnesses" identified by Defendant, and in light of the greater convenience of retaining venue that would inure to Plaintiff, as a witness, Sam Sikrin in Connecticut, and to Vegesna and any other employees of Defendant located at its headquarters in Pennsylvania who may provide relevant information, Defendant has not met its burden of demonstrating that the convenience of the witnesses clearly favors transfer of venue to Mississippi.

In addition, Dretchen performed consultant services for pharmaceutical companies after his termination by Defendant. These services were performed predominantly in New York and were on behalf of companies located in Long Island, Connecticut and New Jersey. Anticipating that counterclaims will be brought by Defendant when it files its Answer, alleging a breach of the non-compete provision in connection with Dretchen's post-termination activity (notwithstanding

Defendant's breach of the agreement), the non-party witnesses able to testify regarding the counterclaim would be subjected to great inconvenience if venue was transferred to Mississippi.

### 2. Location of Documents and Ease of Access to Sources of Proof

Defendant falsely claims that "all relevant documents are in Mississippi, not New York." Defendant ignores the fact that Plaintiff is in possession of numerous relevant documents reflecting the work he performed, reimbursement expenses he is owed, his communications with Defendant, salary and benefits he was paid, and damages he has suffered as a result of Defendant's statutory violations and contractual and other common law breaches.

Furthermore, Defendant admits that it collected what it contends to be the relevant documents in this case and that they fill only two banker's boxes. *See* Def. Mem. of Law, p. 11. From the detail contained in Defendant's moving papers, as well as the exhibits annexed thereto, it is apparent that the two boxes of documents are already in the possession of Defendant's counsel, Proskauer Rose, in its New York and New Jersey offices, from which it is defending the instant action. There is no inconvenience in producing the documents in New York. They are already here. Moreover, the "locus of documents is not a very compelling factor because records are easily portable." *Navigators Mgt. Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 2006 U.S. Dist. LEXIS 83220, * 17 (S.D.N.Y. Nov. 9, 2006); *see also, Kirkland v. New York State Dept. of Corr. Serv.*, 358 F. Supp. 1349, 1351 (S.D.N.Y. 1973) (inconvenience of transporting records into the District was not sufficient cause to override Plaintiff's choice of venue).

Lastly, the likelihood of a counterclaim by Defendant arising from work performed by Dretchen in New York on behalf of pharmaceutical companies located in New York, Connecticut and New Jersey after he was terminated by Defendant also militates in favor of retaining venue

because documents and other sources of proof relevant to those matters are located in this district and districts immediately adjacent.

### 3.    Convenience of the Parties

As demonstrated above, the parties, their evidence and witnesses, are located in New York, Connecticut, Pennsylvania and, as alleged by Defendant, Mississippi. *See* Point (B)(1),(2), *supra*. Plaintiff would be inconvenienced if his choice of venue were disturbed and he was forced to litigate this action in Mississippi. Plaintiff, a New York resident, works in New York and has retained counsel in this district. If denied his venue of choice and forced to litigate his claims in a court over 1000 miles away, Plaintiff would be tremendously inconvenienced, perhaps to the extent that he would be unable to continue prosecution of this action. Defendant's witness in Mississippi (only one was sufficiently identified), would be inconvenienced if venue is retained in New York. Defendant's documents, however, have already been shipped to its New York and New Jersey counsel. Moreover, the presence of Defendant's employees and evidence in Pennsylvania belies its motion for transfer to Mississippi.

Defendant must make a clear and convincing argument that convenience strongly favors transfer: a mere shifting of inconveniences from one party to another would be inappropriate. *See, Editorial Musical*, 829 F. Supp. 62, 67; *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1060 (S.D.N.Y. 1987); *Paragon Realty Group LLC v. Lecates*, 2007 U.S. Dist. LEXIS 11458, * (D.Conn. Feb. 5, 2007). Accordingly, convenience of the parties does not weigh in favor of transfer to Mississippi.

### 4.    Locus of Operative Facts

Dretchen's First and Second Causes of Action are for failure to pay earnings in violation of New York State Labor Law §§ 191 *et seq.* and that his termination of employment is in retaliation

14

for complaints in connection therewith. Dretchen, a New York resident, performed the vast majority of his duties on behalf of Defendant from his home office in New York. Most of his activities were performed by telephone from his New York home. His travel, both within and without the State, was limited to approximately five days per month. Trips that required out-of-state travel originated from, and concluded in, New York. Dretchen was paid by direct deposit to his New York bank account. When Defendant failed to deposit his commissions in Dretchen's New York bank account, Dretchen communicated with Defendant from his New York home office. His communications from New York constituted protected activity under New York Labor Law and thus his subsequent termination was a retaliatory act. Accordingly, New York is situs of the majority of the work performed, the statutory violations, and the damages suffered. It therefore is the locus of operative facts for Plaintiff's First and Second Claims, not Mississippi.

The locus of operative facts for Dretchen's common law claims arising out of the employment relationship is not Mississippi. Dretchen was neither interviewed nor hired in Mississippi. He was interviewed three times - twice in Greenwich, Connecticut, and once in Newark, New Jersey - districts that border the Southern District of New York. Defendant extended Dretchen an offer of employment while meeting in New Jersey, which he accepted at that location. The employment agreement was negotiated by Dretchen in New Jersey and executed by Dretchen in New York. The majority of services Dretchen performed occurred in New York. While Dretchen occasionally traveled to Mississippi, as part of his employment, he traveled more frequently to Defendant's headquarters in nearby Pennsylvania. Accordingly, where operative facts are dispersed among many loci, insufficient grounds exist to override plaintiff's choice of venue. *See, Kirkland*, 358 F. Supp. at 1349-51; *Photoactive Prod., Inc.*, 99 F. Supp. 2d at 292 ("[w]here the balance of

15

convenience is equipose, plaintiff's choice of forum should not be disturbed" (internal quotations omitted)).

### 5.     Availability of Process to Compel Unwilling Witnesses

Defendant identifies no unwilling witness it will be required to compel.  Plaintiff may need to compel the testimony of Sam Sirkin, brother of Allan Pharma CEO Neil Sirkin.  Sam Sirkin was present, along with his brother, during the first two interviews of Dretchen in Greenwich, Connecticut.  Sam Sirkin is a non-party and resident of Connecticut.  From Greenwich, Sam Sirkin can be compelled to appear in the Southern District of New York, but could not be made to appear in Southern District of Mississippi, Eastern Division.  *See* F.R.Civ.P. 45(b)(2) (district court only can compel witnesses who are located within 100 miles of the district).

Additionally, Dretchen may need to compel the testimony of executives at pharmaceutical companies for whom he did consultant work in Long Island, New York, Connecticut and New Jersey after his termination by Defendant.  If Defendant asserts counterclaims against Dretchen for breach of the agreement's non-compete provision (notwithstanding Defendant's breach), Dretchen will be required to compel the appearance of those with knowledge regarding his work activities in New York.  These individuals are located within 100 miles of the Southern District of New York and are subject to compulsion by this Court.  If the action were transferred to Mississippi, the Court would be unable to compel the testimony of these witnesses and Dretchen would be prejudiced.

### 6.     Relative Means of Parties

Defendant ignores the relative means of the parties, one of the relevant factors the Court must consider in determining if clear and convincing reason exists to transfer venue from the Southern District of New York to Mississippi.  Dretchen, an individual, was terminated from his

16

position by Defendant, denied payment of several months of earned commissions and benefits, and has been forced by Defendant to litigate to obtain payment. Defendant, a Delaware corporation with its expanding headquarters and workforce in Pennsylvania, versus Plaintiff, a working individual denied months of compensation by his former employer, is an easy factor to decide. The relative means of the parties militate strongly in favor of retaining venue in Dretchen's home district in New York. *See Chong v. Healthtronics, Inc.*, *supra*, 2007 U.S. Dist. LEXIS at *38.

### 7.     Forum's Familiarity with the Governing Law

Dretchen's First and Second Causes of Action do not arise from any contract, but rather from New York State's statutory law, New York Labor Law § 191, *et seq*. Similarly, Dretchen's common law claims for unjust enrichment, quantum meruit and conversion are extra-contractual claims that should be governed by New York law, as this was the site of the performance of the work for which compensation was not paid. It is presumed that a federal court sitting in New York will have familiarity with New York's statutory and common law, and that a Mississippi court would have none.

The agreement contains a choice of law provision that putatively would apply Mississippi law to Dretchen's claim of breach of contract. *See Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, *supra*, 657 F. Supp. 1040 at 1061 (parties' choice of law governing a contract may be considered relevant to those claims arising out of the contract). This choice is unsound, however, because Dretchen's employment bore little relationship with Mississippi. Allen Pharma is incorporated in Delaware, headquartered in Pennsylvania, Dretchen was recruited in Connecticut, the agreement was negotiated in New Jersey, and he signed it in New York where he performed the majority of his work and was paid until Defendant unlawfully withheld payments to his New York

bank account. Dretchen's visits to Mississippi were infrequent, compared to his visits to Allen Pharma's headquarters in Pennsylvania. The only visit to Mississippi of consequence to this action is the final visit, when Dretchen was fraudulently induced by Defendant to come to Mississippi, allegedly to discuss the long delayed payment of the commissions it owed to him. Lastly, even if the Court were required to apply Mississippi contract law, Defendant has not shown by clear and convincing evidence that any substantive differences exist between Mississippi and New York contract law such that the Court would lack familiarity. Accordingly, because New York law governs most, if not all of the claims brought by Dretchen, this factor does not militate in favor of Defendant.

### 8.    Trial Efficiency and Interests of Justice

Defendant represents that the docket in this district is crowded, but offers no comparative evidence regarding the docket in this district versus the docket in the proposed transferee district. Moreover, the interests of justice militate against transfer to Defendant's home district, where it, its parent corporation is a major employer. Defendant states that it shares offices in De Kalb, Mississippi with its sister companies Pharma Pac and ProDerma, all subsidiaries of Allan Holdings. In a town with a population of 900, Defendant represents that it and its sister companies employ 139 people and operate a combined 47,000 square-feet of manufacturing, packaging, laboratory and office space. Having offered no evidence that trial efficiency would be better served in Mississippi, this Court has no basis to indulge Defendant's obvious preference to a jury in the Eastern District of Mississippi to one in the Southern District of New York. Furthermore, having practiced in this Court for more than twenty years, Plaintiff's counsel can represent that Defendant will be hard-pressed to find a federal district court run more efficiently than the instant court.

18

**C.      Defendant's Motion is Premature**

As this Court noted in *Rosenstock v. Fink*, 351 F. Supp. 113 (S.D.N.Y. 1972), denying plaintiff his choice of venue and granting of a §1404(a) transfer motion at the inception of an action is often inappropriate.  In *Rosenstock*, the motion to transfer venue was denied without prejudice to renew when the pleading and pre-trial discovery were complete and the cause was ready for trial. *Id.*  Your Honor opined that at that later date, an assessment of the interests of justice and convenience of the witnesses could be considered and transfer argued anew.

Likewise, in this action, Plaintiff's choice of forum, the Southern District of New York, should be accorded substantial weight, and because Defendant failed to clearly and convincingly show that venue should be transferred to Mississippi, its motions should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to transfer venue should be denied.

Dated: White Plains, New York          Yours, etc.
      December 13, 2007          **SAPIR & FRUMKIN LLP**


By:   /s/ Daniel T. Driesen
      Donald L. Sapir (DS 2724)
      Daniel T. Driesen (DD3201)
      Attorneys for Plaintiff Louis Dretchen
      399 Knollwood Road, Suite 310
      White Plains, New York  10603
      (914) 328-0366

F:\APPLICAT\WP\Dretchen\Allan Pharmaceutical\Litigation\Memo of Law.Opposition.Transfer Venue.ECF.wpd\dp\rlh

UNITED STATES DISTRICT COURT        ECF Case
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LOUIS DRETCHEN,        07 Civ. 10306 (CLB) (LMS)

       Plaintiff,

   v.

ALLAN PHARMACEUTICAL LLC,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

**APPENDIX TO PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

---

LEXSEE 2007 U.S. DIST. LEXIS 55089

**KAREN D. ROLLINS, Plaintiff, -against- JESSE D. GREEN, TRUCKLEASE CORP. and SHOWMOTION, INC., Defendants.**

**06 Civ. 3351 (CM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 55089*

**July 25, 2007, Decided
July 26, 2007, Filed**

**COUNSEL:** **[*1]** For Karen D. Rollins, Plaintiff: Edward Calvin Kramer, LEAD ATTORNEY, Law Offices of Edward C. Kramer, P.C, New York, NY.

For Jesse D. Green, Trucklease Corp., Defendants: Alfred Thomas Lewyn, Law Office of Charles J. Siegel, New York, NY.

For Showmotion, Inc., Defendant: Steven B. Cohen, LEAD ATTORNEY, Cohen, Kuhn & Associates, New York, NY.

For Showmotion, Inc., Cross Claimant: Steven B. Cohen, LEAD ATTORNEY, Cohen, Kuhn & Associates, New York, NY.

For Jesse D. Green, Cross Claimant: Alfred Thomas Lewyn, Law Office of Charles J. Siegel, New York, NY.

For Showmotion, Inc., Cross Defendant: Steven B. Cohen, LEAD ATTORNEY, Cohen, Kuhn & Associates, New York, NY.

**JUDGES:** Colleen McMahon, U.S.D.J.

**OPINION BY:** Colleen McMahon

**OPINION**

DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLAIMS AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS CODEFENDANTS' CROSS-CLAIMS

McMahon, J.:

**I. Introduction**

Plaintiff Karen Rollins brought suit against defendant Jesse Green ("Green") and corporate defendants Trucklease Corp. ("Trucklease") and ShowMotion, Inc. ("ShowMotion") in connection with a motor vehicle accident that occurred on May 7, 2003. Plaintiff alleges that Green negligently drove a truck, leased by ShowMotion **[*2]** from Trucklease, into the bus she was driving, causing her personal injuries. She seeks $ 750,000 in damages.

Defendant ShowMotion has moved to dismiss both the plaintiff's claims and the co-defendants' cross-claims against it. The motion is denied with respect to the plaintiff's claims and Trucklease's cross-claim. The motion is granted with respect to Green's cross-claim.

The court has found dealing with this motion very frustrating. The motion is labeled Motion to Dismiss and purports to be made pursuant to *Federal Rule of Civil Procedure 12* (no subsection specified). A motion to dismiss is ordinarily made pursuant to *Rule 12(b)*, and *Rule 12(b)* motions are generally made prior to the service of an answer. Indeed, most *Rule 12(b)* motions are waived if not made prior to the service of an answer. But ShowMotion has already answered the complaint. One might, therefore, think that the motion is intended to be a motion for Judgment on the Pleadings, pursuant to *Rule 12(c)*. Only ShowMotion does not refer to *Rule 12(c)* at all; instead, it has attached to the motion a Statement Pursuant to *Local Rule 56.1*, which pertains to

summary judgment motions made pursuant to *Federal Rule of Civil Procedure 56*. **[*3]** The Notice of Motion does not, however, refer to *Rule 56* or summary judgment.

The other two defendants have responded to the motion to dismiss their cross-claims with extensive Rule 56.1 Counter-Statements of their own. But the motion to dismiss the cross-claim as "void" rests entirely on a technical procedural ground, so no factual showing is implicated. And the defendants' Rule 56.1 Counterstatement does not contain any information that would assist in the resolution of the other asserted ground for dismissing the cross claim, namely, that the indemnity provision in the lease does not apply in this instance. Instead, defendants put in a great deal of factual material that pertains to the motion to dismiss the complaint.

Plaintiff has responded to the motion to dismiss her claims with something purporting to be a Rule 56.1 Counterstatement, which does not comply in any manner with *Local Rule 56.1* and looks more like an answer (and a very poorly drafted one at that). She also relies on some of the factual material that was placed in the record by defendants Green and Trucklease Corporation, which means that she consents to having the motion considered under the standards applicable to **[*4]** motions for summary judgment, even though she has taken absolutely no discovery.

The result is a procedural morass. [1]

    1  It may be hard to believe, but it gets worse. See discussion of joint-representation of Green and Trucklease on page 14.

I elect to treat the motion to dismiss the plaintiff's complaint (Trucklease's original motion) as a motion for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*, and the motion to dismiss the cross-claim in the same manner. I therefore decline to consider any of the other material submitted by the parties and will rely exclusively on the pleadings (the amended complaint and the cross-claims of defendants Green and Trucklease).

## II. Facts

The following facts are alleged in the complaint and are assumed to be true for purposes of the motion to dismiss the complaint:

On the morning of May 7, 2003, plaintiff was driving a school bus in Manhattan. (Am. Compl. P 7.) Around 9:35am, plaintiff stopped at a red light at the intersection of 96th Street and Second Avenue. (Id.) As the bus was stopped, a truck, driven by individual defendant Green, hit the bus's rear left side. (Am. Compl. P 8.) An accident report was issued that morning at the scene of **[*5]** the collision. (Accident Report, Ex. F to Def.'s Mem. in Supp. of Mot., dated Feb. 12, 2007.)

On May 2, 2006, plaintiff brought suit against Green and Trucklease (Compl.), and on November 15, 2006, she amended her complaint, adding ShowMotion as a defendant (Am. Compl.). Trucklease is a Connecticut vehicle rental company that owned the truck driven by Green. (Am. Compl. P 8.) ShowMotion, also a Connecticut company, was the leasee of the truck and, allegedly, Green's employer. (Am. Compl. P 12.)

Plaintiff brought suit in federal court against Green and Trucklease claiming diversity of citizenship jurisdiction. (Am. Compl. P 5.) She seeks $ 750,000 in damages. (Am. Compl. P 20.) Plaintiff resides in southern New Jersey, and both corporate defendants are incorporated in and have their principal places of business in Connecticut. (Am. Comp. PP 1, 3-4.) While plaintiff stated in her amended complaint that Green resides in Stamford, Connecticut, she later conceded that Green lives in Brooklyn, New York and was living there at the time of the accident. (Am. Compl. P 10; Pl.'s Decl. in Opp. 2.) Plaintiff chose the Southern District of New York as the venue for her action on a theory that the **[*6]** claim arose here. See *28 U.S.C. § 1391(a)*.

In her complaint, plaintiff alleged that Green negligently failed to maintain a reasonable speed, slow down, observe traffic signals, and avoid other vehicles stopped at the red light. (Am. Compl. P 9.) She also alleged that, as a result of the accident, she suffered serious, permanent injuries, including a tear of the superior and anterior labrum, requiring surgery, and herniated disks. (Am. Compl. P 10.) Plaintiff argued that ShowMotion--as Green's employer and the leasee of the truck that Green was driving--was liable for her injuries. (Am. Compl. PP 11, 14-15.) While she named Trucklease as a defendant in the caption of both the complaint and amended complaint, plaintiff has only asserted that Trucklease owned the vehicle driven by Green. (See Compl. P 7, Am. Compl. P 9.) Trucklease, however, has not moved to dismiss.

2007 U.S. Dist. LEXIS 55089, *6

On December 14, 2006, ShowMotion filed an answer to plaintiff's amended complaint denying, among other things, that Green was an employee of ShowMotion and that ShowMotion was vicariously liable for Green's allegedly negligent actions. (Answer, dated Dec. 12, 2006, P 2; see also Am. Compl. PP 12-13.) ShowMotion also denied **[\*7]** that this court had personal jurisdiction over it, and argued that venue in the Southern District of New York was improper. It asserted cross claims against Green and Trucklease. (Answer "Sixth Cause of Action" & "Eleventh Affirm. Defense.")

On January 18, 2007, almost two months after filing their answer, Green and Trucklease filed a boilerplate cross-claim against ShowMotion. (Cross-Claim.) The cross-claiming defendants argued that ShowMotion was entirely liable for any damages that the plaintiff might be awarded. (Id.) ShowMotion responded to the cross-claim on February 6, alleging that it was "void" because it was improperly filed. (Denial of Cross-Claim.)

On March 12, 2007, ShowMotion filed its motion to dismiss plaintiff's claims and the other defendants' cross-claims against it. ShowMotion, among other things, claimed that plaintiff's action against it was barred by the statute of limitations (Def.'s Mem. in Supp. of Mot. PP 1-2), that the amended complaint naming ShowMotion as a defendant was improperly filed without leave of court (P 3), and that the cross-claiming defendants had improperly brought the cross-motion claiming indemnity against ShowMotion (P 4). As an alternative **[\*8]** to dismissal, ShowMotion moved to transfer venue to Connecticut or New Jersey. (P 5, p. 11.)

**III. Standard of Review**

*Federal Rule of Civil Procedure 12(b)(6)* provides for dismissal of a complaint where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999)*; see also *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*. The test is not whether the plaintiff is ultimately likely to prevail, but whether he is entitled to offer evidence to support his claims. *Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)*. A court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *EEOC v. Staten Island Sav. Bank, 207 F.3d 144 (2d Cir. 2000)*. A court may also consider documents incorporated by reference into the plaintiff's

complaint and those where the terms and effect are relied upon by the plaintiff in drafting the complaint. *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC, 298 F.3d 136, 140 (2d Cir. 2002)*. "And whatever documents may properly be considered in connection with the **[\*9]** *Rule 12(b)(6)* motion, the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" *Roth v. Jennings, 489 F.3d 499, 2007 WL 1629889, \*11 (2d Cir. June 6, 2007)* (quoting *Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007)*).

**IV. Discussion**

A. Motion to Dismiss Plaintiff's Complaint is Denied

   *1. The Complaint Against ShowMotion is Timely*

A district court sitting in diversity applies state-law limitations periods to a cause of action arising under state law. *Quinn v. Thomas H. Lee Co., 61 F. Supp. 2d 13, 21-22 (S.D.N.Y. 1999)*. The New York statute of limitations for personal injury caused by negligence is three years. *N.Y. C.P.L.R. § 214(5)*. ShowMotion argues that plaintiff violated this limitations period when it added ShowMotion as a defendant on November 15, 2006, more than three years after the May 2003 vehicle collision.

However, because the amended pleading "relates back" to the original complaint against Green and Trucklease, which was filed on May 2, 2006, plaintiff's claim against ShowMotion is timely.

New York's relation back provision provides that a "claim **[\*10]** asserted in the complaint is interposed against the defendant or a co-defendant *united in interest* when . . . the summons is served upon the defendant." *N.Y. C.P.L.R. § 203(b)* (emphasis added). The New York Appellate Division, Second Department, described a three-part test for applying the relation back doctrine in *Brock v. Bua, 83 A.D. 2d 61, 443 N.Y.S.2d 407 (2d Dept. 1981)*:

> [A] claim asserted against a new party will relate back to the date upon which plaintiff's claim was previously interposed against the original named defendant despite the fact that the former was not named in the process served upon the

latter only if (1) both claims arose out of the same conduct, transaction or occurrence, (2) the new party is "united in interest" with the original defendant, and by reason of that relationship he can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits and (3) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well.

*Brock, 83 A.D. at 69. Buran v. Coupal, 87 N.Y.2d 173, 179, 661 N.E.2d 978, 638 N.Y.S.2d 405 (N.Y. 1995),* [*11] slightly revised the Brock test, and held that mistake alone--whether or not excusable--is the only requirement under the test's third prong.

Plaintiff easily satisfies the first requirement of the *Brock* test, since the initial complaint and the amended complaint, with ShowMotion added as a defendant, both assert claims only in connection with the May 7, 2003 vehicle accident.

Plaintiff's pleading is also sufficient to meet the requirement that the added party be united in interest with the original defendant. Trucklease and ShowMotion's lessor-lessee relationship does not make them united in interest. However, the complaint pleads that original defendant Jesse Green was employed by ShowMotion. An employer-employee relationship is sufficient to allow the complaint to relate back.

ShowMotion argues that Green is not united in interest with it because Green was a part-time worker, or, more precisely, an "occasional hourly worker," for ShowMotion. (Def.'s Mem. in Supp. of Mot. 5.) It also argues that Green was an "independent contractor," filing for that proposition an affidavit from the president of ShowMotion, William Mensching, which states that Green was "[o]n certain occasions . . . [*12] paid hourly as an independent contractor." (Ex. E. to Def.'s Moving Affirm; hereinafter "First Mensching Aff.") It appears to be ShowMotion's contention that Green--and all its hourly workers--were employees of their union, rather than of ShowMotion. (See Reply Aff. of William Mensching, Ex. B. to the Reply Affirmation; hereinafter "Second Mensching Aff.")

In support of its argument that the complaint should be dismissed, ShowMotion relies on *Kitson v. Atlantic Refining & Mktg Corp., 227 A.D.2d 971, 643 N.Y.S.2d 862 (4th Dept. 1996).* In Kitson, the New York Supreme Court, Appellate Division, Fourth Department, held that the original defendants could not be said to be united in interest with the newly added defendants when the new parties were independent contractors:

> It is uncontroverted that [the added defendants] were independent contractors retained by Atlantic and Petroleum Corp. to perform specified services. An independent contractor and the party who retains him are not united in interest because the latter is not vicariously liable for torts of the former.

*Id. at 971-72* (internal citation omitted).

Unfortunately for ShowMotion, it is far from uncontroverted in this case that Green is an independent [*13] contractor. For one thing, plaintiff does not plead that Green is an independent contractor; she pleads that he is an employee, and I must assume that her allegation is true.

On a motion to dismiss, a court may only dismiss a plaintiff's claims that depend on a finding of an employer-employee relationship if the plaintiff fails to allege in her pleading that the relevant defendant is an employee. *Shehab v. N.Y. Dept. of Transp., No. 03-CV-5730, 2005 U.S. Dist. LEXIS 4307, 2005 WL 659146, at *15 (S.D.N.Y. March 10, 2005)* (denying the motion to dismiss since plaintiff could at least potentially prove the requisite employer-employee relationship). In the amended complaint, plaintiff alleges, "Green operated the subject truck as part and parcel of his employment with ShowMotion and operated the subject within the scope of his employment with ShowMotion. Accordingly, ShowMotion is liable for the actions and negligence of Green." (Am. Compl. PP 13-14.) The pleading could not be clearer: plaintiff alleges that Green was an employee of ShowMotion at the time of the action and that he was acting within the scope of his employment, which, if true, would make ShowMotion vicariously liable for [*14] Green's alleged negligence.

Moreover, even if it turned out that Green was an independent contractor and not ShowMotion's employee

(which I view to be highly unlikely, but that is for another day [2]), that would not automatically mean that Green and ShowMotion were not aligned in interest. If Green was driving the truck in any sort of agency capacity for ShowMotion, their interests will be sufficiently aligned. Either way, plaintiff's mere pleading that Green was an employee of ShowMotion is enough to satisfy the second part of the *Brock* test.

> 2    The odds are long against any finding that Green was an independent contractor at the time of the accident. New York courts apply a variety of agency tests to determine whether an individual is an employee or an independent contractor. *Kreinik v. Showbran Photo, Inc., 400 F. Supp.2d 554, 564-66 (S.D.N.Y. 2005).* If Green was driving the rented truck subject to the control of ShowMotion as the entity that rented the truck, going where ShowMotion told him to go when ShowMotion told him to go there, relevant labor laws will likely make him an employee.

*Brock's* third prong is also satisfied, since ShowMotion should have foreseen that an action could [*15] be brought against it in connection with the motor vehicle accident on May 7, 2003. ShowMotion has not maintained that it was unaware that Green was involved in an accident while driving a truck that ShowMotion had leased. (See Def.'s Not. of Mot.) ShowMotion should have been aware of the possibility that it, the renter of the truck and the putative employer of the driver, could be drawn into litigation relating to the accident.

Because the amended complaint adding ShowMotion as a defendant relates back to the initial complaint, the three-year statute of limitations does not shield ShowMotion from the vicarious liability claim asserted against it.

Plaintiff seeks sanctions in the form of attorneys' fees for ShowMotion's assertion of its statute of limitations claim, specifically for the assertion by William Mensching in the First Mensching Affidavit that Green was an independent contractor rather than an employee. Plaintiff argues that this assertion "was presented in bad faith." (See Pl.'s Decl. in Opp'n 4.)

*Rule 56(g)* provides that if it appears to the satisfaction of the court that an affidavit provided in connection with a motion for summary judgment was presented in bad faith or [*16] solely for the purpose of

delay, then the court may award a sanction in the form of attorneys' fees that were incurred as a result of the filing of the bad-faith affidavit. Since I am treating this motion as one made pursuant to *Rule 12*, and am not considering any of the affidavits, no sanction is necessary. Nor would one be proper if I were considering this as a motion for summary judgment, since it is quite clear from plaintiff's almost laughably skimpy motion papers (which in no way comply with the rules of this court pertaining to summary judgment) that plaintiff did not incur any expense specifically as a result of the filing of the First Mensching Affidavit.

### 2. *Plaintiff Had Leave of Court When It Added ShowMotion as a Defendant*

ShowMotion next asserts that plaintiff's complaint should be dismissed as against it because it was filed in violation of the federal rule governing amended pleadings. As a matter of fact, that is just plain wrong.

*Federal Rule of Civil Procedure 15* allows a plaintiff to amend her pleading, after a responsive pleading has already been served, either by leave of court or with the adverse party's written consent. *Fed. R. Civ. P. 15(a).* At the September 29, [*17] 2006 initial pretrial conference before Judge Casey, who originally presided over this case, plaintiff and Trucklease stipulated to add ShowMotion as another defendant. (ECF Docket, 9/29/2006.) On October 27, 2006, Judge Casey signed plaintiff, Green, and Trucklease's stipulation, thereby giving his imprimatur to the addition of ShowMotion as a defendant. (Stipulation & Order, ECF Docket, 10/27/2006.) Since Judge Casey gave permission to add the additional defendant, leave of court was obtained and there has been no violation of the rule requiring leave of court to amend a pleading. (Mem. in Supp. of Mot. 8.)

### B. Motion to Dismiss Cross-Claims

#### 1. *Motion to Dismiss Cross-Claim For Failure to Comply with the Federal Rules of Civil Procedure Is Denied With Respect to Trucklease and Is Granted With Respect to Green*

ShowMotion moves to dismiss the cross-claim filed against it by Green and Trucklease on the ground that they did not obtain leave of court before filing their cross-claim. *Federal Rule of Civil Procedure 13(g)* reads:

> A pleading may state as a cross-claim

any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the **[\*18]** original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

*Fed. R. Civ. P. 13(g).* Green and Trucklease's cross-claims arise out of the May 7, 2003 motor vehicle accident, which is also the foundation of plaintiff's claims. (See Cross-Claim, dated Jan. 18, 2007.) While I have no idea what sort of cross-claim Green could be asserting against his putative employer, Trucklease, at least, has an obvious cross-claim against the person who rented the truck that was being driven at the time of the accident.

However, the cross-claim was not asserted as part of the original answer to the amended complaint. Instead, defendants filed their cross-claim almost two months after they answered the amended complaint. *Rule 15(a)* requires a party to obtain leave of court before filing an amendment to a pleading whenever a responsive pleading was filed more than 20 days earlier. The addition of a cross claim is, technically, an amendment to an **[\*19]** answer, since cross-claims are supposed to be asserted in the answer. So, as a technical matter, Green and Trucklease were required to obtain permission of the court before filing their cross-claim. They did not do so.

The question is whether I will dismiss the cross-claim on that ground or give leave of court now. The answer--at least as to Trucklease--is that I will give retroactive permission to assert the cross-claim. Leave to amend is to be granted freely, and at this stage of the lawsuit, before any discovery has been taken, it is rarely denied. Moreover, depending on how the facts play out (see below), Trucklease may have a right of indemnity as against ShowMotion under the terms of the truck rental agreement.

As to Green, the matter is somewhat different. I do not understand Green's cross-claim against his putative employer. I don't understand what his theory of liability is: I know that it cannot possibly be indemnity under the

lease, because he is not a party to the lease; and I cannot tell from the boilerplate allegations of the cross-claim whether Green has any claim at all against ShowMotion, or whether the answer to that question depends on his employment or agency status **[\*20]** vis-a-vis ShowMotion. Until Green clarifies this, I am not prepared to endorse his purported cross-claim. Therefore, I grant the motion to dismiss Green's cross-claim against ShowMotion.

*2. Motion to Dismiss Trucklease's Cross-Claim Because of the Lease Agreement's Indemnity Clause Is Denied*

In its cross-claim, Trucklease alleges, among other things, that the indemnification provision in the truck-lease agreement between Trucklease and Showmotion makes ShowMotion liable for any damages that might be awarded to plaintiff. (See Cross-Claim.) ShowMotion moves to dismiss the cross-claim on the ground that the indemnity provision in the lease only kicks in if the provisions of Paragraph 12 are satisfied, and it urges that they are not satisfied in this case.

Paragraph 12 says that Trucklease is indemnified if the rental vehicle is misused in a variety of ways, including by being driven in a "reckless, careless, abusive manner." (Id. at 10, P 12(a)(VI).) The allegations of the underlying complaint allege that Green, ShowMotion's employee, was in fact driving the truck in violation of this subsection of Paragraph 12. I assume that what ShowMotion means to say is that, if the truck was merely **[\*21]** driven negligently, it was not driven in a manner that violates Paragraph 12(a)(VI). But that remains to be seen. Moreover, "careless" driving very well may equate with the "negligent" driving that plaintiff alleges in the complaint. For these reasons, ShowMotion's motion to dismiss the cross-claim is denied as against Trucklease.

Finally, for reasons that are not apparent to this court, Trucklease and Green--who alleged that he was employed by ShowMotion at the time of the accident--are being represented by one lawyer, and that lawyer repeatedly lumps Trucklease and Green together in his papers. They are not the same entity; they are not even related entities (according to their own pleadings); and they do not stand in the same shoes vis-a-vis ShowMotion. I am concerned whether one lawyer is capable of representing both Green and Trucklease in this action, since the two defendants seem to have interests adverse to each other. For example, Trucklease is entitled

to indemnity if Green was driving the truck in a "reckless, careless, abusive" manner, but Green is--or should be--interested in proving that he was not driving the truck in a manner that would give rise to an indemnity obligation [*22] in favor of Trucklease. I would suggest that counsel think this through, as he may be committing an ethical violation if he continues to represent both Trucklease and Green.

C. Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer

### 1. This Court Has Jurisdiction Over ShowMotion

In its response to the amended complaint, ShowMotion denied that this court has personal jurisdiction over it, and in its notice of motion to dismiss, it asserted that Green and Trucklease incorrectly served process pursuant to New York state--and not federal--procedure. (Answer "Sixth Cause of Action," Def.'s Not. of Mot. P 21.) Plaintiff resides in New Jersey. Defendant Green is a resident of the Eastern District of New York. Both Trucklease and ShowMotion are Connecticut corporations with their principal places of business in Connecticut. Because plaintiff does not share residence with any defendant (see Am. Compl. PP 1, 3-4, 10; Pl.'s Decl. in Opp., 2), and the amount in controversy exceeds $ 75,000, this case is correctly in federal court for diversity of citizenship reasons. See *28 U.S.C. § 1332(a)-(b).*

Moreover, in a civil action in federal court, a party may choose to serve process "pursuant [*23] to the law of the state in which the district court is located." *Fed. R. Civ. P. § 4(e)(1).* While ShowMotion accused Green and Trucklease of serving process incorrectly by following state procedure, by complying with state procedure, ShowMotion's co-defendants also complied with federal procedure. ShowMotion's motion to dismiss for lack of personal jurisdiction is accordingly denied.

### 2. Venue is Proper in the Southern District of New York

The auto accident that is the basis of the plaintiff's action occurred in Manhattan. So, the majority of the events giving rise to plaintiff's claim occurred in the Southern District of New York, and venue is proper in this court pursuant to *28 U.S.C. § 1391(a).*

### 3. The Motion to Transfer Is Denied

In yet another display of utter misunderstanding of federal procedure, counsel for ShowMotion moves to transfer this action on the ground of forum non conveniens. (See Def.'s Mem. in Supp. of Mot. 11.) "[F]orum non conveniens is a discretionary device permitting a court in rare instances to 'dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.'" *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000)* (quoting [*24] *PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998)).* The doctrine of forum non conveniens is inapplicable to this case.

When ShowMotion asks that venue be transferred to the United States District Court for either the District of New Jersey (where plaintiff lives) or Connecticut (where both corporate defendants have their headquarters), it may be assumed that he means to argue in favor of transfer pursuant to *28 U.S.C. § 1404(a),* which says, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Factors to be considered in determining whether an action should be transferred include: the plaintiff's choice of forum, the convenience of witnesses, the location of relevant documents and relative ease of access to sources of proof, the convenience of parties, the locus of operative facts, the availability of process to compel the attendance of unwilling witnesses, and the relative means of the parties. *D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006).* Courts may also consider "the forum's familiarity with the governing [*25] law" and "judicial economy and the interests of justice, based on the totality of the circumstances." *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co., No. 06-CV-599, 2006 U.S. Dist. LEXIS 83220, 2006 WL 3317030, at *2 (S.D.N.Y. Nov. 9, 2006);* see also *Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp.2d 341, 343 (S.D.N.Y. 2002).* "[C]ourts have typically accorded substantial weight to the first factor, plaintiff's choice of forum, for that very choice reflects one side's assessment of the balance of relevant factors, and since the law permits the suit to be brought where plaintiff has chosen to bring it." *Albert Fadem Trust, 214 F. Supp.2d at 344.*

Plaintiff has chosen the Southern District of New York as a forum. Not only is it the location of the vehicle accident, which gave rise to this suit, it is in easy commuting distance from Fairfield Count, Connecticut,

2007 U.S. Dist. LEXIS 55089, *25

where the two corporate defendants are based (in Stamford and Norwalk). It is also not far from Brooklyn, New York, where Green lives. It is actually the plaintiff who is most inconvenienced by having the case tried in New York, since she lives in southern New Jersey. Because a court generally gives deference to a plaintiff's **[*26]** choice of venue, and venue should be more convenient for all the defendants than for the plaintiff in this case, deference will be given to plaintiff's choice to lay venue in the Southern District of New York. I also take notice that defendants Green and Trucklease appear to have no problem with plaintiff's choice of venue. (Affirm of Alfred T. Lewyn in Opp'n P 22, dated Feb. 23, 2007.) Accordingly, ShowMotion's motion to transfer is denied.

**IV. Conclusion**

For the reasons stated, ShowMotion's motions to dismiss plaintiff's claims and Trucklease's cross-claim against it are denied. Green's cross-claim against ShowMotion, however, is dismissed without prejudice. Green has ten days from the date of this decision to file an amended cross-claim against ShowMotion, but on its face it must plead some theory under which ShowMotion (his putative employer) would be liable to him.

This constitutes the decision and order of the Court.

Dated: July 25, 2007

Colleen McMahon

U.S.D.J.

LEXSEE 2007 U.S. DIST. LEXIS 12702

**SHIRLEY MONTGOMERY, on behalf of herself and others similarly situated, Plaintiffs, - against - TAP ENTERPRISES, INC., Defendant.**

**06 CV 5799 (HB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 12702*

**February 26, 2007, Decided**
**February 26, 2007, Filed**

**COUNSEL:** **[*1]** For Shirley Montgomery, on behalf of herself, Shirley Montgomery, and others similarly situated, Lisa Grant, Plaintiffs: Dan Charles Getman, LEAD ATTORNEY, Law Office of Dan Getman, New Paltz, NY.

Billy Ray Cooper, Plaintiff, Pro se, Conroe, TX.

For TAP Enterprises, Inc., Defendant: Christopher S. Shank, Yvonne M. Warlen, Shank & Hamilton, P.C., Kansas City, MO; Thomas A. Draghi, William Edward Vita, Westerman, Ball, Ederer, Miller & Sharfstein, LLP, Mineola, NY.

**JUDGES:** Hon. HAROLD BAER, JR., U.S.D.J.

**OPINION BY:** HAROLD BAER, JR.

**OPINION**

OPINION & ORDER

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiff Shirley Montgomery ("Plaintiff") has brought this putative class action against defendant Tap Enterprises, Inc. ("Tap" or "Defendant"). Plaintiff alleges that Defendant failed to pay Plaintiffs overtime premium pay as required by the Fair Labor Standards Act (FLSA), *29 U.S.C. § 201 et. seq.*.

Defendant now moves pursuant to *28 U.S.C. § 1404(a)* to transfer venue to the United States District Court for the Western District of Missouri (Southern Division), or alternatively, to the United States District Court for the District **[*2]** of Kansas.

For the reasons set forth below, the motion to transfer is granted. [1]

> 1 The Court wishes to thank Shaun Pappas of Cardozo Law School for his assistance in researching and preparing this Opinion.

**I. BACKGROUND**

A. Underlying Facts of Complaint

Named plaintiff Shirley Montgomery and putative named plaintiff Lisa Grant [2] are employed by Defendant Tap Enterprises. Plaintiffs' jobs are to travel the country in sales crews putting on "tool truck sales shows" for Defendant. See 1/8/2007 Pl.'s Mem. in Opp'n to Mot. to Transfer Venue ("Pl.'s Opp'n") at 1. Plaintiffs allege that they usually work fifteen (15) hour days, six (6) days a week, for which they are paid $ 80 to $ 85 per day. Id. According to Plaintiffs, those workers operating the tool truck sales shows are continuously on the road, except for five (5) days in December. Id. Plaintiffs thus allege that Defendant Tap failed to pay Plaintiffs overtime premium pay as required by the FLSA. Plaintiff's Complaint ("Pl. Compl. **[*3]** ") at P 1.

> 2 On November 8, 2006, Plaintiff Shirley Montgomery filed an unopposed motion to amend her complaint to add Lisa Grant as a named plaintiff. (Grant, on August 8, 2006, "opted-in" to the lawsuit by filing a notice of consent to sue

under the FLSA.) Montgomery's unopposed motion remains *sub judice*. For the sake of simplicity, references to "named plaintiffs" in this opinion refer to both Montgomery and Grant.

B. Facts Relating to Venue

Defendant Tap Enterprises is a corporation organized under the laws of the State of Nebraska. Its principal place of business is located in Spring Hill, Kansas. See 12/6/2006 Aff. of John Hamamy, General Manager of Tap Enterprises, Inc. ("Hamamy Aff.") at P 4. Defendant is also registered and in good standing as a foreign corporation authorized to do business in Missouri. Hamamy Aff. at P 12. Defendant states that its corporate and managing officers, and corporate records, are located in Spring Hill, Kansas. See Def.'s Second Mem. in Supp. of Mot. **[*4]** to Transfer Venue ("Def. Mot."), Dec. 6, 2006, at 4. Defendant is not a resident of New York. See Def's Reply Mem. in Supp. of Mot. to Transfer Venue ("Def. Reply Mem.") at 1. Of any state, the highest percentage of Defendant's total sales - 9.2% - routinely occurs in Missouri. Def. Mot. at 2; Pl.'s Opp'n Mot. at 11.

Defendant states that of its 1,256 employees, 394 are residents of Missouri, comprising the largest percentage of any state (over 31%). Hamamy Aff. at P 25. Further, according to Defendant, 184 employees are residents of Kansas, comprising the second-largest percentage of any state (15%). [3] Id. It is undisputed that only ten (10) potential class members live in New York state. Pl.'s Opp'n at 8. None of Defendant's current or former employees reside in the Southern District of New York. Id.

> 3  Conversely, as plaintiffs note, more than 68% of Defendant's employees live outside of Missouri, and more than 85% live outside of Kansas. Pl. Opp'n Mot. at 7-8.

Neither of the named Plaintiffs **[*5]** resides in New York state. Plaintiff Shirley Montgomery resides in Springfield, Missouri. [4] Def. Mot. at 5. According to Defendant, during the more than two years that Montgomery was employed by Defendant, she worked three hundred twenty-two (322) days - but only fourteen days (14) in New York, and two (2) days in the Southern District of New York. Id. Plaintiff Lisa Grant's last known address, according to Defendant, is in Paris, Texas. Id. at 5. According to Defendant, from August 1, 2003 through December 13, 2003, Grant worked

eighty-two (82) days - but only twelve days (12) in New York, and ten (10) days in the Southern District. Id. at 6.

> 4  Springfield, Missouri happens to be the location of the Southern Division of the Western District of Missouri. Def. Mot. at 1.

None of the parties' identified witnesses reside in New York. Def. Mot. at 12-15. Plaintiffs do not dispute this.

C. Defendant's Motion to Transfer Venue

On December 6, 2006, Defendant Tap filed this Motion to Transfer **[*6]** Venue to the Western District of Missouri (Southern Division), or alternatively, to the District of Kansas. Defendant argues that Plaintiffs' lawsuit has a minimal connection to the Southern District of New York, and that the relevant facts, records, and witnesses are located near Kansas City. Def. Reply Mem. at 1-2. Defendant further argues that transferring venue to either Missouri or Kansas would be more convenient for those potential plaintiffs who might opt in to the class action.

Plaintiffs, conversely, argue that venue in the Southern District of New York is proper based on the alleged violations of FLSA overtime provisions that have occurred in this District. Pl.'s Opp'n at 10. Plaintiffs also claim that if the case were litigated in Missouri or Kansas, court appearances and depositions could require constant travel by plaintiffs' chosen counsel, which would increase plaintiffs' litigation expenses and thus, potentially decrease their potential recovery. Id. at 10-11.

II. STANDARD OF REVIEW

*28 U.S.C. § 1404(a)* provides that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil **[*7]** action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a) (2006)*. [5] It does not mention counsel.

> 5  *Section 1404(a)* strives to prevent "waste of time, energy, and money" and "to protect litigants, witnesses and the public against any unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)*. Congress enacted this provision as a "federal housekeeping

2007 U.S. Dist. LEXIS 12702, *7

measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).*

A motion to transfer pursuant to *1404(a)* rests within the "sound discretion" of the district court. *Schwartz v. R.H. Macy's, Inc., 791 F. Supp. 94 (S.D.N.Y. 1992).* The burden is on the movant to establish that there should be a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978);* see also *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, 829 F. Supp. 62, 66 (S.D.N.Y. 1993)* **[*8]** (movant must make "clear and convincing showing"). Although the plaintiff's choice of forum is entitled to substantial weight, this presumption is reduced if the cause of action bears "little material connection" to the chosen forum. See, e.g., *St. Regis Mohawk Tribe v. State of New York, 774 F. Supp. 185, 189 (S.D.N.Y. 1991);* see also *Arrow Electronics Inc. v. Ducommun, Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1991)* (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance").

## III. DISCUSSION

When evaluating a motion to transfer, a court should consider the following factors: (1) the convenience of witnesses; (2) the availability of process to compel the attendance of unwilling witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances. **[*9]** See, e.g., *Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995).* "The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application." *D'anton Jos, S.L. v. Doll Factory, 937 F. Supp. 320, 322 (S.D.N.Y. 1996);* see also *Hubbell Inc. v. Pass & Seymour, 883 F. Supp. 955, 962 (S.D.N.Y. 1995)* ("The core determination under *§ 1404(a)* is the center of gravity of the litigation, a key test of which is the convenience of witnesses."). [6]

6

To succeed on a motion to transfer, Defendant must as a threshold matter establish

that the action could have been brought in the proposed transferee district. See *Van Dusen v. Barrack, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964).* Secondly, Defendant must "demonstrate that the balance of convenience of the parties and witnesses and the interests of justice are in [his] favor." See, e.g., *Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 569 F. Supp. 773, 774 (D.D.C. 1983).* Because it is undisputed that this action could have been brought in either the District of Kansas, or the District of Missouri, the first inquiry does not require examination.

**[*10]** Here, I find that the totality of the factors favors transfer to the Southern Division of the Western District of Missouri. I will address each factor in turn. [7]

7

Plaintiffs argue, as a threshold matter, that Defendant has waived any challenge to venue by admitting in their Answer that venue is proper in this District. See Defendant's Answer at P 5 ("Defendant does not contest that venue is proper in this district."). However, unlike a motion to transfer venue for improper venue, "[t]he waiver provisions of [*Fed. R. Civ. P.] 12(b)* and *(h)(1)* do not apply to a motion to... transfer on the ground of *forum non conveniens*, which 'may be addressed to the discretion of the court at any time.'" *Waqar Ali Kahn v. AMTRAK,, 1986 U.S. Dist. LEXIS 29974, at *4-5 (S.D.N.Y. 1986),* citing *Snam Progetti S.p.A. v. Lauro Lines, 387 F. Supp. 322, 323 (S.D.N.Y. 1974); Leif Hoegh & Co. v. Alpha Motor Ways, Inc., 534 F. Supp. 624, 626 (S.D.N.Y. 1982).* Indeed, a motion to transfer venue pursuant to *28 U.S.C. § 1404(a)* on the ground of *forum non conveniens*, such as Defendant brings here, presupposes that venue is proper in the transferor court. See *Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1368 n.1 (11th Cir. 2003).* Plaintiffs' cases that address waiver of challenges to improper venue are thus inapposite. See, e.g., *Tri-State Empl. Servs., Inc. v. Mountbatten Sur. Co., 295 F.3d 256, 261 n.2 (2d Cir. 2002); Miller v. Batesville Casket Co., 219 F.R.D. 56 (E.D.N.Y. 2003).*

**[*11]** A. Convenience of Witnesses and Availability of Process

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004)*. Plaintiffs have identified potential witnesses who live in Kansas, Missouri, Oklahoma, Nebraska, and Texas. Def's Reply Mem at 7. Plaintiffs have not at this point in time identified one witness, or potential witness, that resides in New York state, or any of its adjoining states. Id. To the extent Plaintiffs may try to obtain oral testimony from class members, Defendants point out that less than 3% of those class members live in New York or its adjoining states. Def. Reply Mem. at 7.

Plaintiffs generally do not argue that New York is more convenient to the witnesses. Rather, Plaintiffs argue that the two venues are mutually inconvenient. See *Consol. Metal Prods., Inc. v. Am. Petroleum Inst., 569 F. Supp. 773, 774 (D.D.C. 1983)* (*1404(a)* allows transfer to a "more convenient forum, not to a forum likely to prove equally convenient."). Yet given that the majority [*12] of witnesses, at this point in time, will likely be from the Midwest - including Kansas or Missouri - it is hard to say that Kansas or Missouri is not more convenient for potential witnesses.

To the extent that compulsory process may be an issue, it appears that while compulsory process might be available to compel some significant portion of the current potential witnesses to appear in Kansas or Missouri, it will not be available to compel the vast majority of the current potential witnesses to appear in New York. Cf. *Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247, 250 (S.D.N.Y. 1974)* ("courts generally transfer cases when important witnesses can not be compelled to testify in the forum, but could be subpoenaed in the transferee court.").

B. Convenience of Parties

For Defendant Tap, a Nebraska corporation with its principal place of business in Kansas, Kansas is clearly a more convenient forum. Plaintiffs argue, without citing case law, that transferring the case "would greatly increase litigation costs" for the "low wage employees" who comprise the potential class. Pl.'s Opp'n Mot. at 15. It is true that Plaintiff's counsel is located [*13] in New York. Yet courts have generally accorded "little weight" to the convenience of plaintiffs' attorneys. See *Bordiga v. Directors Guild, 159 F.R.D. 457, 463 (S.D.N.Y. 1995)*; *Kolko v. Holiday Inns, 672 F. Supp. 713, 715 (S.D.N.Y.*

*1987)*.

As for plaintiffs themselves, only ten potential class members live in New York state, and none in the Southern District. It is worth noting as well that named Plaintiff Shirley Montgomery resides in Springfield, Missouri, the location of the Southern Division of the Western District of Missouri.

C. Locus of Operative Facts

The locus of operative facts is another "primary factor" in determining whether to transfer venue. *Mattel, Inc. v. Procount Bus. Servs., 2004 U.S. Dist. LEXIS 3895 (S.D.N.Y. 2004)*. Here, due to the itinerant schedule of Defendants' workers against whom the alleged violations were committed, the operative facts are spread throughout the United States.

Defendant argues that since the highest percentage of its sales are in Missouri, the cause of action is more substantially connected with Missouri. Def's Second Mem at 16. However, the difference in percentage is relatively [*14] small. For example, in fiscal year 2006, while 8.9% of Tap's sales occurred in Missouri, 3.6% occurred in New York. Id.

D. Location of Documents

As noted, most, if not all, of the relevant documentation in this case is located in Defendant's headquarters in Kansas. No relevant documents are located in New York. Plaintiffs argue that the physical location of the documents is irrelevant given the availability today of electronic means of transmission. See *In re Glenayre Techs., Inc. Sec. Litig., 982 F. Supp. 294, 300 (S.D.N.Y. 1997)*.

The balance of interests here, albeit slight, favors transfer to Kansas.

E. Relative Means of Parties

Plaintiffs allege that Defendant is a large corporation, and thus has ample means to travel to New York. Pl.'s Opp'n. at 14. Plaintiffs further argue that the class is comprised of low wage employees, and that transferring the case would greatly increase their litigation costs. Pl.'s Opp'n. at 15. However, as noted above, the convenience of plaintiffs' counsel is afforded little weight when considering a motion to transfer venue. Additionally, to the extent named Plaintiff Montgomery

seeks to participate in the litigation, **[*15]** Missouri is a more convenient forum for her.

F. Governing Law

Generally, there exists an interest in having the trial in a forum that is familiar with the governing law. See *Frederick Joseph Jennis v. Duane Rood, et al., 488 F. Supp. 2d 172, 2007 U.S. Dist. LEXIS 3321 (N.D.N.Y. 2007)*. Here, Plaintiff solely alleges violations of a federal statute. Either forum is equally familiar with federal law.

Here, the balance of interests is neutral.

G. Plaintiffs' Choice of Forum

Plaintiffs' strongest argument against transfer is that Plaintiffs themselves chose to bring suit in New York. However, although the plaintiff's choice of forum is generally entitled to "substantial weight," this presumption applies with less force where the plaintiff chooses a foreign forum and the cause of action bears little relation to the chosen forum. See, e.g., *Bassili v. Chu, 242 F. Supp. 2d 223, 232 (W.D.N.Y. 2002)*. Such is the case here. [8]

> [8] "The deference owed to plaintiffs' choice of forum is further diminished where transfer is sought to the forum where plaintiffs reside." *Onyeneho v. Allstate Ins Co., 466 F. Supp. 2d 1, 2006 U.S. Dist. LEXIS 85569, at *11 (D.D.C. 2006)* (citations omitted).

**[*16]** Additionally, Defendants argue that a plaintiff's choice of forum receives less deference in a purported class action, where "numerous potential plaintiffs... [are] each possibly able to make a showing that a particular forum is best suited..." *Eichenholtz v. Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988)*, citing *Koster v. Lumbermens Mutual Co., 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)*. Plaintiffs counter that because this lawsuit is a FLSA collective action, in which plaintiffs "opt-in" - rather than a typical Rule 23 class action, in which plaintiffs "opt-out" - that essentially, any plaintiffs who "opt-in" to the litigation will have affirmatively done so, and thus their choice of forum is entitled to greater deference. "Several courts have noted that the 'opt-in' structure of collective actions under *section 216(b) of the FLSA* strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action." *Onyeneho v.*

*Allstate Ins Co., 466 F. Supp. 2d 1, 2006 U.S. Dist. LEXIS 85569, at *10 n.2 (D.D.C. 2006)* (internal citations omitted), citing, e.g., *Johnson v. Big Lots Stores, Inc., 2005 U.S. Dist. LEXIS 2221,* **[*17]** *at *10-11 (E.D. La. 2005)* (declining to transfer FLSA case to another district for consolidation because plaintiffs had chosen to "opt-in" to litigation in original district).

Plaintiffs' argument would be stronger in a situation where plaintiffs had already "opted-in" to the lawsuit, as opposed to here, where the litigation is nascent. In any case, whether plaintiffs "opt-in" or "opt-out" seems secondary to the ultimate convenience (or inconvenience) of the forum to the parties and witnesses involved. See, e.g., *Onyeneho v. Allstate Ins Co., 466 F. Supp. 2d 1, 2006 U.S. Dist. LEXIS 85569, at *10 n.2* (the fact that a "case has been designated a collective action under the FLSA is of little importance in the face of numerous factors weighing strongly in favor of transfer...").

While Plaintiff's choice of New York counsels against transfer, because Plaintiffs have chosen a foreign forum, and the lawsuit bears little relation to New York, Plaintiffs' choice does not counsel against transfer as strongly as Plaintiffs would like.

H. Interests of Justice

Courts can consider trial efficiency and general "interests of justice" in considering a motion to transfer. See *Balaban v. Pettigrew Auction Co., 1997 U.S. Dist. LEXIS 22127,* **[*18]** *at *10-11 (S.D.N.Y. 1997)*. However, the parties have put forth no evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one District as opposed to another. See *De Jesus v. National R. Passenger Corp., 725 F. Supp. 207, 209 (S.D.N.Y. 1989)*. The balance of interests here is neutral.

IV. CONCLUSION

Here, Plaintiffs have chosen a forum with little connection to the facts of the case. The totality of the factors, particularly the convenience of the parties and witnesses, favors transfer to either Kansas or Missouri. Because Defendant primarily requested transfer to Missouri, and because named Plaintiff Shirley Montgomery resides in Missouri, Defendant's Motion to Transfer Venue to the Southern Division of the Western District of Missouri is GRANTED.

2007 U.S. Dist. LEXIS 12702, *18

The Clerk of the Court is instructed to transfer this case to the Southern Division of the Western District of Missouri and remove it from my docket.

**SO ORDERED.**

**February 26, 2007**

**New York, New York**

Harold Baer, Jr.

U.S.D.J.

LEXSEE 2007 U.S. DIST. LEXIS 45956

**RAYMOND CHONG, Plaintiff, -against- HEALTHTRONICS, INC. d/b/a HEALTHTRONICS SERVICE CENTER, INC., Defendant.**

**CV-06-1287 (SJF)(MLO)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 45956*

**June 20, 2007, Decided**
**June 20, 2007, Filed**

**COUNSEL:** **[\*1]** For Raymond Chong, Plaintiff: Christopher K. Collotta, Saul D. Zabell, LEAD ATTORNEYS, Zabell & Associates, P.C., Bohemia, NY.

For Healthtronics, Inc., doing business as Healthtronics Service Center, Inc., Defendant: Philip M. Halpern, LEAD ATTORNEY, Collier, Halpern, Newberg, Nolletti & Bock LLP, White Plains, NY.

**JUDGES:** SANDRA J. FEUERSTEIN, United States District Judge.

**OPINION BY:** SANDRA J. FEUERSTEIN

**OPINION**

**OPINION & ORDER**

FEUERSTEIN, J.

On March 21, 2006, plaintiff Raymond Chong (plaintiff) filed this diversity action against Healthtronics, Inc. d/b/a Healthtronics Service Center, Inc. (defendant) alleging claims for, *inter alia,* breach of contract, fraud, and violations of *sections 190* and *198, et seq.,* of the New York State Labor Law. Defendant now moves (1) pursuant to *Rules 12(b)(2)* and *12(b)(3) of the Federal Rules of Civil Procedure* to dismiss the complaint for lack of personal jurisdiction and/or improper venue; or (2), in the alternative, pursuant to *28 U.S.C. § 1404(a),* to transfer this case to the United States District Court for the Northern District of Georgia; or (3), in the alternative,

pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* to dismiss the complaint for failure to state **[\*2]** a claim. For the reasons stated herein, defendant's motion is granted in part and denied in part.

I. Background

A. Factual Background

1. The Parties

Plaintiff is a citizen of the State of New York, residing in Centereach, New York. (Complaint [Compl.], P 5).

Defendant is a foreign corporation, incorporated under the laws of the State of Georgia. (Affidavit of Kari Smith dated June 2, 2006 [Smith Aff.], P 3; Affidavit of Dr. Argil Wheelock dated June 31 [sic], 2006 [Wheelock Aff.]). During the period of plaintiff's employment with defendant, defendant had its headquarters in Marietta, Georgia. (Smith Aff. P 3; Wheelock Aff., P 2). [1] According to Kari Smith (Smith), associate counsel for defendant (Smith Aff., P 2), defendant does not maintain a license to do business or any assets, offices, books, bank accounts, a listed telephone number, or a mailing address in the State of New York and does not have any employees who work in New York. (Smith Aff., P 4). In addition, Smith avers that defendant did not have any taxable income from New York for the years from 1999 through 2003, and had only two hundred ninety-three thousand three hundred sixty-four dollars ($ 293,364) of taxable income from **[\*3]** New York in 2004, which represented less than one percent (.505%) of its total

income for that year. (Reply Affidavit of Kari Smith dated August 3, 2006 [Smith Reply Aff.], P 3). [2]

> 1   Defendant currently has its headquarters in Austin, Texas but continues to maintain offices in Georgia. (Smith Aff. P 3; Wheelock Aff., P 2).
>
> 2   Although personal jurisdiction is determined as of the time the lawsuit is filed, see *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, 937 F.2d 44, 52 (2d Cir. 1991)*, Ms. Smith notably does not indicate what, if any, taxable income defendant derived from New York in 2005 and 2006.

Plaintiff maintains, "upon information and belief" that defendant is the majority partner in Metropolitan Lithotriptor Associations (MLA), which conducts business in at least four (4) locations in New York. (Supplemental Affidavit of Raymond A. Chong dated June 26, 2006 [Plf. Supp. Aff.], P 5). However, according to Smith, MLA is a professional corporation wholly owned by physicians which maintains the New York offices to which plaintiff refers. (Smith Reply Aff., P 13). Moreover, according to Smith, defendant does not have any ownership interest in MLA and the two companies do not share [*4] any of the same officers. (Smith Reply Aff., PP 15, 17).

Plaintiff further contends that defendant has advertised in New York regarding its products and services and has sold approximately five (5) lithotripsy and/or orthotripsy machines in New York during the past five (5) years. (Plf. Supp. Aff., PP 1-2). However, according to Smith, defendant has not directed any advertising to New York, but has simply included information on its equipment in national trade journals. (Smith Reply Aff., PP 4-5).

2. Plaintiff's Employment

According to plaintiff, he and Bradley Devine (Devine) had created a health service company which they agreed to merge with defendant to form a new company called HealthTronics Technical Service Division (HTSD). (Compl., P 12). According to Dr. Argil Wheelock (Wheelock), defendant's former Chief Executive Officer, he discussed the creation of a service department within defendant with Devine. (Wheelock Aff., P 4). Wheelock avers that those discussions took place entirely in Georgia. (Id.). Wheelock does not recall having any personal discussions with plaintiff about the creation of a service department. (Id..). Plaintiff alleges that all negotiations with him regarding [*5] the "business venture" with defendant were done "via telephone, e-mail and fax between [plaintiff], here in New York, and [defendant] in Georgia." (Affidavit of Raymond A. Chong dated June 26, 2006 [Plf. Aff.], p. 1).

Plaintiff alleges that he and Devine entered into a written profit-sharing agreement with defendant, which was based upon their respective percentage of ownership in the new company. (Compl., P 13; see also Affidavit of Bradley G. Devine dated June 21, 2006 [Devine Aff.], p. 3). According to plaintiff, he and Devine owned sixty-one and a half percent (61.5%) of the net profit of HTSD. (Id.; see also Plf. Aff., p. 1). Plaintiff contends that the payments he received from defendant, purportedly pursuant to the profit-sharing agreement, were significantly less than he was supposed to receive under the agreement. (Compl., PP 16-20). According to Wheelock, the payments plaintiff believes are due him as compensation under any profit-sharing agreement actually constituted bonuses, which were approved and paid out of defendant's Georgia headquarters. (Wheelock Aff., PP 8, 10).

On or about September 1, 1999, defendant hired plaintiff as a senior field service manager. (Compl., PP [*6] 10-11). According to Wheelock, the decision to hire plaintiff was made in defendant's Georgia headquarters. (Wheelock Aff., P 6). On or about that same date, plaintiff entered into a Non-Statutory Employee Stock Option Agreement (the stock option agreement), which was "intended to provide additional financial incentive to [plaintiff] and to intensify [plaintiff's] interest in the success of [defendant], as well as reward [plaintiff's] contribution to [defendant's] performance." (Wheelock Aff., P 7, Exhibit [Ex.] B, p. 1). The stock option agreement was expressly governed by the laws of the State of Georgia. (Wheelock Aff., Ex. B, P 12).

Plaintiff alleges that he began employment with defendant on September 6, 1999, at which time he went to Georgia to train. (Plf. Aff., p. 1). According to Wheelock, during the course of his employment, plaintiff worked both out of his home in New York and in defendant's Georgia headquarters, and traveled to other states and Canada, but he always reported to Devine in Georgia. (Wheelock Aff., P 12). Plaintiff avers that during the course of his employment, he managed the Field Service Engineers and taught classes for defendant,

attended meetings and occasionally **[*7]** substituted for Devine in Georgia. (Plf. Aff., pp. 1-3). However, plaintiff also claims that he serviced equipment "in the New York Metro area," as well as in New England and Toronto; that he conducted business nationally and internationally from New York via telephone, e-mail and postal service; that he performed other services for defendant for clients in other states from New York or by traveling to the client's respective states; and that during his employment with defendant, he "established and cultivated five (5) new business accounts located in New York on behalf of [defendant]." (Id. at pp. 1-2; Plf. Supp. Aff., P 4).

According to plaintiff, in January 2004, he and Devine [3] met with Martin McGahan (McGahan), defendant's former Chief Financial Officer, who informed them that defendant wanted to eliminate the profit-sharing agreement. (Compl., P 14). Plaintiff contends that in January 2004, he complained to defendant's management about not being paid his earned wages. (Compl. P 22).

> 3   According to Smith, Devine was employed by defendant as vice president of service. (Smith Aff., P 6).

Plaintiff alleges that in February 2004, he met with Wheelock and Roy Brown (Brown), defendant's **[*8]** former Chief Operating Officer, regarding a reduction of plaintiff's profit-sharing compensation for 2003. (Compl., P 15). According to plaintiff, he agreed to the reduction in the payments under the profit-sharing agreement in exchange for a block of stock options. (Id.). Plaintiff does not indicate where this discussion took place. However, Wheelock avers that any discussions plaintiff had with defendant's executives concerning his "bonuses" occurred in Georgia. (Wheelock Aff., P 9).

Defendant terminated plaintiff's employment on or about May 14, 2004, effective May 31, 2004, during a training class that plaintiff was conducting in Georgia. (Compl., P 22; Wheelock Aff., P 11; Plf. Aff., p. 3). According to Dr. Wheelock, the decision to terminate plaintiff was made in Georgia. (Wheelock Aff., P 11). According to plaintiff, all subsequent discussions with defendant regarding his termination were conducted via telephone and e-mail between him in New York and defendant in Georgia. (Plf. Aff., p. 3).

3. Location of Witnesses and Documents

According to Smith, Brown, Devine, and McGahan no longer work for defendant. (Smith Aff., PP5-7). Smith advises that Brown currently resides in Lawrenceville, **[*9]** Georgia; Devine currently resides in Kennesaw, Georgia, and McGahan currently resides in Smyrna, Georgia. (Id.). Devine indicates that he "can make [himself] availably [sic] to testify at a trial in NY, providing sufficient notice is given." (Devine Aff., P 8).

According to Wheelock, he was CEO of defendant until November 2004, at which time defendant went through a merger. (Wheelock Aff., P 2). Wheelock avers that he continues to serve on defendant's Board of Directors; that he resides on Lookout Mountain, Tennessee, which is approximately two miles from the Georgia state line; and that he has an apartment and office in Georgia. (Wheelock Aff., P 3).

Smith further avers that all of plaintiff's personnel records, as well as any compensation or financial data upon which he may base his claims, were maintained in Georgia during the course of plaintiff's employment, and are currently maintained in both Georgia and Texas. (Smith Aff., P 9).

B. Procedural History

On October 24, 2005, plaintiff filed this action against defendant alleging claims for breach of contract, fraud, retaliation, quantum meruit and violations of *sections 190* and *198, et seq.,* of the New York State Labor Law. In essence, **[*10]** plaintiff contends that he "has not received earned compensation in the form of non-discretionary profit-sharing in connection with [h]is former employment with Defendant * * *." (Compl., P 23). Plaintiff seeks, *inter alia,* compensatory and liquidated damages, costs and attorney's fees.

Defendant now moves (1) pursuant to *Rules 12(b)(2)* and *(3) of the Federal Rules of Civil Procedure* to dismiss the complaint for lack of personal jurisdiction and/or improper venue; or (2), in the alternative, pursuant to *28 U.S.C. § 1404(a)* to transfer this case to the United States District Court, Northern District of Georgia; or, (3) in the alternative, pursuant to *Rule 12(b)(6)* to dismiss the complaint for failure to state a claim.

II. Discussion

A. Jurisdiction

Case 7:07-cv-10306-CLB    Document 13-4    Filed 12/13/2007    Page 4 of 12

Page 4
2007 U.S. Dist. LEXIS 45956, *10

### 1. Standard of Review

In resolving issues of personal jurisdiction in diversity cases, the court must determine (1) whether, under the laws of the forum state, in this case New York, there is jurisdiction over the defendant; and (2) whether an exercise of jurisdiction under the laws of the forum state is consistent with federal due process requirements. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)*; see [*11] also *D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006)* (holding that in diversity cases, the issue of personal jurisdiction is governed by the laws of the forum state, so long as the exercise of jurisdiction comports with the requirements of due process). Although the plaintiff must ultimately establish personal jurisdiction over the defendant by a preponderance of the evidence, see *Ball v. Metallurgie Hoboken-Overpelt. S.A., 902 F.2d 194, 197 (2d Cir. 1990)*; *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984)*, in opposing a *Rule 12(b)(2)* motion prior to discovery, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. * * * Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Grand River Enterprises Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005)*, cert. denied sub nom *King v. Grand River Enterprises Six Nations, Ltd., 127 S.Ct. 379, 166 L.Ed.2d 267 (2006)* (quoting *Bank Brussels, 171 F.3d at 784* (internal quotations [*12] and citations omitted)). In order to make a prima facie showing of jurisdiction, the plaintiff need only plead "legally sufficient allegations of jurisdiction." *Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)*; see also *Dorfman v. Marriott Int'l Hotels, Inc., No. 99 Civ. 10496, 2002 U.S. Dist. LEXIS 72, 2002 WL 14363, at *1 (S.D.N.Y. Jan. 3, 2002)* (holding that when a motion to dismiss pursuant to *Rule 12(b)(2)* is brought on the pleadings, before any discovery has taken place, the plaintiff need only make a prima facie showing that personal jurisdiction exists, based on allegations of fact which will be taken as true).

"Unlike a motion to dismiss pursuant to *Rule 12(b)(6)*, deciding a *Rule 12(b)(2)* motion necessarily requires resolution of factual matters outside the pleadings." *ADP Investor Commun. Servs. v. In House Atty. Servs., 390 F.Supp.2d 212, 217 (E.D.N.Y. 2005)*. "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Wickers Sportswear, Inc. v. Gentry Mills, Inc., 411 F.Supp.2d 202, 205-206 (E.D.N.Y. 2006)*(quoting *Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 [2d Cir. 2001])*; [*13] see also *Magnetic Audiotape, 334 F.3d at 206* (holding that a plaintiff's averments of jurisdictional facts must be credited as true); *ADP Investor, 390 F.Supp.2d at 217* (holding that where no jurisdictional discovery has been conducted, the plaintiff need only establish a prima facie case, and allegations of jurisdictional fact must be construed in a light most favorable to the plaintiff).

### 2. General Jurisdiction [4]--N.Y. C.P.L.R. § 301

4    "General" jurisdiction exists where the plaintiff's claim is not related to the defendant's contacts in New York. See, e.g. *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 98 (2d Cir. 2000)* (stating that where the plaintiffs' claims is not related to the defendants' contacts with New York, jurisdiction is properly characterized as "general.")

Under New York law, an out-of-state defendant is subject to general personal jurisdiction if it is "doing business" in the state. *N.Y. C.P.L.R. § 301*; see also *Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000)*. Section 301 "permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is 'engaged in such a continuous and systematic course of 'doing business' [*14] here as to warrant a finding of its "presence" in this jurisdiction.'" *Landoil Resources Corp. v. Alexander & Alexander Services, Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)* (citing *McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)*). "A corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Wiwa, 226 F.3d at 95* (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985))*.

In order to establish general personal jurisdiction under *section 301*, a plaintiff must demonstrate that the defendant engaged in "continuous, permanent, and substantial activity in New York." *Landoil Resources,*

*918 F.2d at 1043*. "The test is a 'simple pragmatic one' * * *, which is necessarily fact sensitive because each case is dependent upon its own particular circumstances." Id. (citations omitted). Factors to be considered in determining whether general jurisdiction lies under *section 301* include: (1) whether the **[*15]** defendant maintains an office in New York; (2) whether the defendant has any bank accounts or other property within the state; (3) whether the defendant has a telephone listing in the state; (4) whether the defendant does public relations work or solicits business within the state; and (5) whether the defendant has employees or agents located within the state. See *Wiwa, 226 F.3d at 98*; *Landoil Resources, 918 F.2d at 1043*.

Plaintiff has not made a prima facie showing that defendant had a "substantial 'physical corporate presence' in [New York], permanently dedicated to promoting [its] interests," *Wiwa, 226 F.3d at 98*, sufficient to confer general personal jurisdiction over defendant. The evidence submitted on the motion establishes that defendant did not maintain an office in New York, did not have any bank accounts or other property in New York, did not have a New York telephone listing, did not perform public relations work in New York, and did not, as of the date the action was filed, have any employees permanently located in New York. Plaintiffs conclusory allegations to the contrary, particularly those stated only upon "information and belief," are insufficient to establish general **[*16]** personal jurisdiction over defendant pursuant to *N.Y. C.P.L.R. § 301*. See, e.g. *Jazini, 148 F.3d at 185* (holding that courts are not bound to accept as true a legal conclusion couched as a factual allegation).

a. "Agency" or "Mere Department" Theory of Jurisdiction

Plaintiff maintains that general personal jurisdiction may be maintained over defendant because it has an agent in New York, HealthTronics Service Center Inc. (HTSCI), which is either a wholly-owned subsidiary or independent department of defendant and which consented to jurisdiction in New York when it registered with the Secretary of State of New York.

According to Smith, during plaintiff's employment, HTSCI operated under the name Prime Service Center, Inc. (PSCI) and was owned by Prime Medical Services, Inc. (PMSI) until PMSI merged with defendant effective November 9, 2004. (Smith Reply Aff., P 6). After the

merger, PSCI became HTSCI. (Id.). Defendant wholly owns Prime Medical Operating, Inc., which wholly owns HTSCI. (Id.). Smith maintains: (1) that HTSCI is not financially dependent on defendant and instead relies on its own revenues; (2) that HTSCI directs its own marketing, operational policies and daily practices; **[*17]** and (3) that defendant and HTSCI "follow appropriate corporate procedures with respect to actions taken by their officers and boards." (Smith Reply Aff., PP 10-12). In addition, Smith maintains that only one of defendant's directors sits on HTSCI's board, as Chairman of the Board, and that "four individuals are officers of one of the companies but not the other." (Smith Reply Aff., P 11). However, eight (8) of the ten (10) officers of HTSCI are also officers of defendant and vice versa. (Smith Reply Aff., Exhibit A).

Initially, since HTSCI is authorized by the New York Secretary of State to do business in New York, and, pursuant to *New York Business Corporation Law § 304*, has consented to jurisdiction in New York, general personal jurisdiction exists over HTSCI under *N.Y. C.P.L.R. § 301*. See e.g., *Obabueki v. IBM, No. 99 Civ. 11262, 2001 WL 921172, at *5, 2001 U.S. Dist. LEXIS 11810 (S.D.N.Y. Aug. 14, 2001)* (finding that the defendant who was authorized by the New York Secretary of State to do business in New York met the "doing business" criteria of *section 301* for the purposes of personal jurisdiction); *Amalgamet, Inc. v. Ledoux & Co., 645 F.Supp. 248, 249 (S.D.N.Y. 1986)* (holding **[*18]** that the general rule is that a foreign corporation which files a certificate of authority to do business in New York has consented to personal jurisdiction in the state and that by filing its application for authority to do business in New York, defendant has also designated the Secretary of State as agent for service of process); *Augsbury Corp. v. Petrokey Corp., 97 A.D.2d 173, 175, 470 N.Y.S.2d 787 (3d Dept. 1983)* (holding that the defendant's authorization to do business in New York and concomitant designation of the Secretary of State as its agent for service of process pursuant to *section 304(b) of the New York Business Corporation Law* is consent to in personam jurisdiction). [5]

5 Although two district courts have held that a filing for authorization to do business alone is insufficient to confer personal jurisdiction, see *Wright v. Maersk Line, Ltd., No. 99 Civ. 11282, 2001 U.S. Dist. LEXIS 60, 2000 WL 744370, at *1 (S.D.N.Y. Jun. 9, 2000)* and *Bellepointe, Inc. v.*

*Kohl's Department Stores, Inc.,* 975 F.Supp. 562, 564 (S.D.N.Y. 1997), those cases rely on mere *dictum* from a Second Circuit case, *Beja v. Jahangiri,* 453 F.2d 959, 961-962 (2d Cir. 1972), which vaguely stated that "the mere authorization to do **[*19]** business * * * may not be conclusive on the issue of [personal] jurisdiction * * * [but was] certainly very strong evidence that the corporation is subject to in personam jurisdiction." (emphasis added). Wright and Bellepointe are not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York. See, e.g. *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG,* 409 F.Supp.2d 427, 436 (S.D.N.Y. 2006)(citing New York and federal cases), rejected on other grounds by *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434 (2d Cir. 2006).

The mere presence of a subsidiary in New York, without more, is insufficient to establish the parent company's presence in the state for jurisdiction purposes. See *Jazini,* 148 F.3d at 184; see also *Beech Aircraft,* 751 F.2d at 120 (holding that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation). Rather, the subsidiary must be either an "agent" or a "mere department" of the parent company **[*20]** in order for personal jurisdiction to attach. *Jazini,* 148 F.3d at 184.

i. Agent

In order to establish that a domestic corporation is an agent of a foreign corporation, "the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could were it here by its own officials.'" *Jazini,* 148 F.3d at 184 (quoting *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)(alteration in original)). "Courts have interpreted this to mean that the agent's activities in New York must be sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Stutts v. De Dietrich Group,* 465 F.Supp.2d 156, 162 (E.D.N.Y. 2006) (internal quotations and

citations omitted). "To be considered an agent for jurisdictional purposes, the putative agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." *Ross v. UKI Ltd.,* No. 02 Civ. 9297, 2004 U.S. Dist. LEXIS 2970, 2004 WL 384885, at *4 (S.D.N.Y. Mar. 1, 2004) (quoting *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1981)). **[*21]** In addition, the plaintiff must demonstrate that the principal exercised some control over the activities of the purported agent. *Ross,* 2004 U.S. Dist. LEXIS 2970, [WL] at *4 (citing *Cut Co Industries. Inc. v. Naughton,* 806 F.2d 361, 366 (2d Cir. 1986)). "The required control need not rise to the level of absolute control over the acts or decisions of the putative agent; rather, it may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." *Scholastic, Inc. v. Stouffer,* No. 99 Civ. 11480, 2000 U.S. Dist. LEXIS 11516, [WL] at *5 (S.D.N.Y. Aug. 14, 2000).

Plaintiff offers no factual allegations in support of its contention that HTSCI is an "agent" of defendant for purposes of personal jurisdiction, instead arguing that further discovery on this issue is warranted. Therefore, plaintiff fails to make any showing, never mind a prima facie showing, that jurisdiction should be based on an agency theory.

ii. "Mere Department"

In determining whether a subsidiary is a "mere department" of the parent, the court should consider the following four factors: (1) whether there is common ownership; (2) whether the subsidiary is financially dependent on the parent corporation; **[*22]** (3) "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;" and (4) the degree of control the parent corporation exerts over the subsidiary's marketing and operational policies. *Jazini,* 148 F.3d at 185; *Beech Aircraft,* 751 F.2d at 121-122. Only the first factor-common ownership-- is essential to a finding that a subsidiary is a "mere department" of the parent corporation; whereas the other three factor necessitate a balancing process. See *Beech Aircraft,* 751 F.2d at 120; *Dorfman,* 2002 U.S. Dist. LEXIS 72, [WL] at *7 (citing cases); see also *Allojet PLC v. Vantage Assocs.,* No. 04 Civ. 5223, 2005 U.S. Dist. LEXIS 4006, 2005 WL 612848, at *5 (S.D.N.Y. Mar. 15, 2005).

Here, there is common ownership of defendant and HTSCI, but plaintiff does not offer any factual allegations to dispute Smith's assertions that HTSCI is not financially dependent on defendant and does not control HTSCI's marketing or operational policies. However, defendant's involvement in the selection and assignment of HTSCI's executive personnel cannot be determined at this stage, prior to discovery. Although some amount of overlap between the officers **[*23]** and directors of corporations under common ownership is to be expected and does not necessarily warrant a finding that the subsidiary is a "mere department" of the parent, see, e.g. *Jazini, 148 F.3d at 185* (finding that the fact that one of the defendant's four managing executive directors is the chairman of the subsidiary does not establish that the subsidiary is a "mere department" of the parent); *Porter v. LSB Industries, Inc., 192 A.D.2d 205, 600 N.Y.S.2d 867 (4th Dept. 1993)* (holding that the fact that the directors and officers of the subsidiary and parent corporations overlap to an extent is intrinsic to the parent-subsidiary relationship and is not, itself, determinative), since all but two (2) of HTSCI's ten (10) officers are officers of defendant, and the President and CEO and director of defendant is the chairman of the board of HTSCI, there is at least an inference that defendant has control over the selection and assignment of HTSCI's executive personnel. See, e.g. *Obabueki, 2001 U.S. Dist. LEXIS 11810, [WL] at *5* (finding that the structural overlap that existed where all but one of the officers of the putative agent was an officer of the parent corporation, and each of the agent's board **[*24]** members was an officer or director of the parent suggested that the parent had control over the selection and assignment of its subsidiary's executive personnel); *Derthick v. Bassett-Walker, Inc., No. 90 Civ. 5427, 1992 U.S. Dist. LEXIS 14505, 1992 WL 249951, at *3 (S.D.N.Y. Sept. 23, 1992)* (holding that evidence of excessive parental interference in the selection and assignment of the subsidiary's executive personnel may be found in the presence of interlocking officers and directors and finding that the fact that the parent company's two highest ranking officers were members of the subsidiary's board of directors, and that the subsidiary's chairman of the board was a member of the parent's board of directors, coupled with evidence that the companies disregarded corporate formalities, weighed in favor of exercising jurisdiction).

Since at this juncture all inferences must be drawn in favor of plaintiff, and two of the four factors arguably support a finding that HTSCI is a "mere department" of defendant for the purposes of personal jurisdiction under *section 301*, the branch of defendant's motion which seeks dismissal for lack of personal jurisdiction is denied. Plaintiff's application for leave to conduct jurisdictional **[*25]** discovery is granted to the extent that plaintiff is permitted to conduct such discovery limited to the facts necessary to establish general jurisdiction under a "mere department" theory. See, e.g. *Allojet, 2005 U.S. Dist. LEXIS 4006, [WL] at *7* (permitting jurisdictional discovery, limited to the facts relating to establishing general jurisdiction, notwithstanding the plaintiff's failure to make a prima facie showing under *section 301*).

3. Specific Jurisdiction

Personal jurisdiction may still be found to exist over a defendant who is not "doing business" in New York within the meaning of *section 301* based on the defendant's transaction of business within the state pursuant to *N.Y. C.P.L.R. § 302*. *Section 302(a)(1)* permits the exercise of personal jurisdiction over an out-of-state defendant if (1) that defendant "transacts any business within the state" and (2) the claim arises from such business contacts. See *D.H. Blair, 462 F.3d at 104*; *Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)*.

To meet the "transacting business" element, the plaintiff must demonstrate that the defendant "purposely availed [itself] of the privilege of conducting activities within New York **[*26]** and thereby invoked the benefits and protections of its laws * * *." *Bank Brussels, 171 F.3d at 787* (quoting *Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506, 509 (1970)*). In Agency Rent A Car, the Second Circuit enumerated a variety of factors to be considered in determining whether an out-of-state defendant transacts business in New York, including: "(i) whether the defendant has an on-going contractual relationship with a New York corporation * * *; (ii) whether the contract was negotiated or executed in New York * * *, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship * * *; (iii) what the choice-of-law clause is in any such contract * * *; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state * * *."

*98 F.3d at 29* (citations omitted). No one factor is dipositive and the court must look at the totality of circumstances concerning the defendant's interactions with, and activities within, the **[*27]** state. Id.

Plaintiff's claims against defendant relate to payments allegedly due plaintiff by defendant under the profit-sharing and stock option agreements and the termination of his employment by defendant. In this case, none of the factors cited by the Second Circuit support the exercise of personal jurisdiction under the "transacting business" section of New York's long-arm statute with respect to those claims. Specifically, any contracts between the parties with respect to the profit-sharing and stock option payments and plaintiff's employment were not negotiated or executed in New York, the only choice-of-law provision is contained in the stock option agreement and calls for the application of Georgia law, plaintiff does not allege that he participated in any meetings with defendant in New York regarding the formation, performance or breach of contract or that defendant otherwise purposefully availed itself of the privilege of conducting activities within the State of New York, and plaintiff was terminated in Georgia. See, e.g. *Barrett v. Tema Dev. (1988), Inc., 463 F.Supp.2d 423, 430-431 (S.D.N.Y. 2006)*; *Singer v. Carrington Labs., Inc., No. CV-01-2084, 2001 U.S. Dist. LEXIS 13383, 2001 WL 995353, at *7 (E.D.N.Y. Aug. 28, 2001).* **[*28]** In addition, defendant's use of telephone, facsimiles or e-mails to communicate with plaintiff in New York are insufficient to establish that defendant transacted business in New York, absent any indication that defendant intended "to project itself into ongoing New York commerce." *Kulas v. Adachi, No. 96 Civ. 6674, 1997 U.S. Dist. LEXIS 6868, 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997)*; see also *Copeland v. Life Sci. Techs., No. 97 Civ. 0456, 1997 U.S. Dist. LEXIS 18210, 1997 WL 716915, at *2 (S.D.N.Y. Nov. 17, 1997).* [6]

6    Since plaintiff has not made a prima facie showing that defendant transacted business in New York, it is unnecessary to consider the "arising out of" element of specific jurisdiction.

4. Due Process

In order to satisfy constitutional due process requirements, the exercise of long-arm jurisdiction "must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'" *Agency Rent A Car, 98 F.3d at*

32 (citing *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945))*; see also *Wiwa, 226 F.3d at 99* (accord). Where specific jurisdiction is found, **[*29]** minimum contacts exist "where the defendant purposefully availed itself of the privilege of doing business in the forum and could forsee being haled into court there," but where general jurisdiction is found, minimum contacts exist only where the contacts "are continuous and systematic." *Bank Brussels, 305 F.3d at 127* (internal quotations and citations omitted). Generally, "once a plaintiff has made a 'threshold showing' of minimum contacts, the defendant must come forward with a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Wiwa, 226 F.3d at 99* (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).*

The Second Circuit has enumerated the following factors in determining whether the exercise of jurisdiction "comports with traditional notions of fair play and substantial justice:"

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; **[*30]** and (5) the shared interest of the states in furthering substantive social policies."

*Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1028 (2d Cir. 1997)* (citation omitted); see also *Bank Brussels, 305 F.3d at 129* (accord).

"A voluntary use of certain state procedures, as in [the case where the defendant is authorized to do business in the State and designates the Secretary of State as its agent for service of process pursuant to *section 304 of the New York Business Corporation Law*], is in fact a form of constructive consent to personal jurisdiction which has been found to satisfy due process." *Augsbury, 97 A.D.2d at 176, 470 N.Y.S.2d 787* (citing *Insurance Corporation of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 703-704, 102 S.Ct. 2099, 72 L.Ed.2d 492*

*(1982)*). Since personal jurisdiction over defendant only exists if HTSCI is found to be a "mere department" of defendant, HTSCI's authorization to do business and concomitant designation of the Secretary of State as its agent for service of process would also satisfy due process requirements.

B. Transfer

Defendant contends that even if this Court has personal jurisdiction over it, plaintiff's claims should be transferred **[*31]** to the Northern District of Georgia pursuant to *28 U.S.C. § 1404(a)*.

Motions for change of venue are governed by *28 U.S.C. § 1404(a)*, which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [7] Notions of convenience and fairness must be determined on a case-by-case basis and district courts have broad discretion to transfer actions pursuant to *section 1404(a)*. See *In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992)*. Factors to be considered in determining whether an action should be transferred pursuant to *section 1404(a)* include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties," *D.H. Blair, 462 F.3d at 106* (citing *Albert Fadem Trust v. Duke Energy Corp., 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)*), as well as (8) the forum's **[*32]** familiarity with the governing law, and (9) judicial economy and the interests of justice, based on the totality of circumstances. See *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co., No. 06 Civ. 599, 2006 U.S. Dist. LEXIS 83220, 2006 WL 3317030, at *2 (S.D.N.Y. Nov. 9, 2006)*; see also *Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch., Inc., No. 06 Civ. 13445, 2007 U.S. Dist. LEXIS 38427, 2007 WL 1541087, at *2 (S.D.N.Y. May 24, 2007)*(holding that a could should also consider the transferee court's familiarity with the governing law, as well as trial efficiency and the interests of justice). The moving party bears the burden of making a "clear and convincing showing" that there should be a transfer of venue. *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *2* (quoting *Montgomery v. TAP Enters., No. 06 Civ.*

*5799, 2007 U.S. Dist. LEXIS 12702, 2007 WL 576128, at *2 (S.D.N.Y. Feb. 26, 2007)*); see also *Tralongo v. Shultz Foods, Inc., No. 06 Civ. 13282, 2007 U.S. Dist. LEXIS 23215, 2007 WL 844687, at *2 (S.D.N.Y. Mar. 14, 2007)* (holding that the burden of demonstrating that a transfer is warranted lies with the moving party, and a court should not disturb the plaintiff's choice of forum unless the defendant makes a "clear and convincing showing" that the **[*33]** balance of convenience favors a transfer).

> 7   The parties do not dispute that this action could have been brought in the Northern District of Georgia.

1. Plaintiff's Choice of Forum

The plaintiff's choice of forum is to be given great weight, see *D.H. Blair, 462 F.3d at 106*; *Albert Fadem Trust, 214 F.Supp.2d at 343*, and this factor clearly favors plaintiff herein. Unless the balance of the remaining factors weighs "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *2*. However, the plaintiff's choice of forum "is not entitled to the weight it is generally accorded when the forum chosen has no material connection with the action." *Tralongo, 2007 U.S. Dist. LEXIS 23215, [WL] at *4*. Here, the only connection that plaintiff's claims have with New York are his residence in this state. Thus, this factor is not entitled to the deference normally due it in balancing the factors relative to a transfer motion.

2. Convenience of Witnesses

The convenience of witnesses, particularly nonparty witnesses, is an important factor in considering a transfer pursuant to *section 1404(a)*. *Navigators Mgmt., 2006 U.S. Dist. LEXIS 83220, [WL] at *4*; see **[*34]** also *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *3* (holding that the convenience of witnesses is probably the single-most important factor in the analysis of whether transfer should be granted); *Tralongo, 2007 U.S. Dist. LEXIS 23215, [WL] at *4 at *2* (accord). All of the potential witnesses identified, [8] other than plaintiff, are nonparties to this action and reside in or near, or work in, Georgia, and only one of those witnesses, Devine, has indicated a willingness to travel to New York to testify in this matter. As "the convenience of a party witness is entitled to less weight than the convenience of a nonparty," *Navigators Mgmt, 2006 U.S. Dist. LEXIS 83220, [WL] at *4*, this factor strongly weighs in favor of

a transfer. See, e.g. *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *4* (finding that since every witness who could testify at trial resided or worked in the transferee district, the "convenience of witnesses" factor strongly favored a transfer); *Tralongo, 2007 U.S. Dist. LEXIS 23215, [WL] at *3* (finding that the "convenience of witnesses" [**35**] factor weighed in favor of a transfer where the plaintiff's immediate supervisors, and all persons responsible for the relevant personnel decisions, worked in the transferee court's district).

> 8     The potential witnesses identified by the parties are Argil Wheelock, Roy Brown, Bradley Devine, Martin McGahan and Victoria Beck.

3. Location of Documents

Plaintiff does not dispute that all relevant documents and other evidence in the possession of defendant are located either in Texas or Georgia and not in New York. Accordingly, this factor weighs in favor of a transfer. However, "[t]he location of relevant documents is not a very compelling factor because records are easily portable." *Navigators Mgmt., 2006 U.S. Dist. LEXIS 83220, [WL] at *5*.

4. Convenience of Parties

The "convenience of the parties" factor is relatively neutral. Although defendant currently has its headquarters in Texas, it maintains offices and certain documents in Georgia and, thus, Georgia, to which defendant seeks this action to be transferred, would be slightly more convenient to it than New York. Plaintiff resides in New York and, thus, New York would be a more convenient forum for him. However, during the course of his employment [**36**] with defendant, plaintiff regularly traveled to Georgia, as well as nationally and to Canada. Thus, it cannot be said that plaintiff would be greatly inconvenienced if he had to litigate the present action in Georgia.

5. Locus of Operative Facts

The "locus of operative facts" factor "is traditionally an important factor to be considered in deciding where a case should be tried." *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *5* (internal quotations and citations omitted); see also *Tralongo, 2007 U.S. Dist. LEXIS 23215, [WL] at *3* (holding that the location of operative facts is a primary factor in a transfer motion). "Courts

routinely transfer cases to the district where the principal events occurred, and where the principal witnesses are located * * *." *Tralongo, 2007 U.S. Dist. LEXIS 23215, [WL] at *3*. The terms of plaintiff's employment and profit-sharing and stock option agreements were negotiated by defendant in Georgia via telephone, facsimile and e-mail to plaintiff in New York, but, according to defendant, the decision to hire plaintiff was made in Georgia. The stock option agreement contains a choice-of-law provision providing that the laws of the State of Georgia were to apply thereto. Plaintiff performed his [**37**] employment duties both in New York and Georgia, as well as in the New England area and Canada, but, according to defendant, he reported to Devine in Georgia. According to defendant, any compensation and bonus payments to plaintiff were approved and paid out by defendant in Georgia and any discussions and meetings plaintiff had with defendant's executives concerning such payments occurred in Georgia. Moreover, plaintiff was terminated in Georgia and the decision to terminate plaintiff was made in Georgia, although, according to plaintiff, all subsequent discussions with defendant regarding his termination were conducted via telephone and e-mail between him in New York and defendant in Georgia. Since a substantial portion of the facts relevant to plaintiff's claims occurred in Georgia, this factor weighs in favor of transfer.

6. Availability of Process

"Availability of compulsory process is an important consideration in transfer motions." *Int'l. Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *4* (internal quotations and citation omitted). In the event service of process is necessary to compel the appearance of any unwilling nonparty witnesses, the Northern District of Georgia could subpoena the [**38**] potential witnesses identified, who are located within that district, or within one hundred (100) miles thereof, see *Fed. R. Civ. P. 45(b)(2)*, whereas this Court cannot. Thus, this factor strongly weighs in favor of transfer. See, e.g *Int'l Sec., 2007 U.S. Dist. LEXIS 38427, [WL] at *4* (finding that the "service of process" factor strongly weighed in favor of a transfer because none of the nonparty witnesses were subject to subpoena power in New York, but were subject to such authority in the transferee court's district).

7. Means of Parties

Since plaintiff is an individual and defendant is a corporation, the "relative means of the parties" factor

weighs in favor of plaintiff.

8. Familiarity with Law

To the extent plaintiff's claims pertain to the stock option agreement, that document contains a choice-of-law provision providing that Georgia law is to be applied and plaintiff does not allege that that provision is unenforceable due to fraud or bad faith or for public policy considerations. Moreover, applying a choice-of-law analysis to plaintiff's remaining claims establishes that Georgia law applies to plaintiff's contract and quasi-contract claims, but New York applies to plaintiff's tort **[*39]** claims, to the extent those claims pertain to the profit-sharing agreement.

In diversity cases, federal courts apply the choice-of-law analysis of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941).* Accordingly, New York choice-of-law rules apply here.

With respect to plaintiff's contract and quantum meruit or quasi-contract claims, New York courts apply a "center of gravity" or "grouping of contacts" analysis to choice-of-law situations in order to determine which state has the most significant relationship to the transaction and the parties. *Allstate Ins. Co. v. Stolarz, 81 N.Y.2d 219, 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)*; see also *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 583 (2d Cir. 2006)* (applying New York law to contract claims); *Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001)* (applying New York law to quantum meruit claims). In applying a "center of gravity" or "grouping of contacts" analysis, the court should consider the following factors: "[1] the place of contracting, negotiation and performance; [2] the location of the **[*40]** subject matter of the contract; and [3] the domicile [or place of business] of the contracting parties." *Stolarz, 81 N.Y.2d at 227, 597 N.Y.S.2d 904*; see also *Fieger, 251 F.3d at 394* (citing *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 618 N.Y.S.2d 609, 612, 642 N.E.2d 1065 (1994)*).

Applying the "center of gravity" or "grouping of contacts" analysis, Georgia law applies to plaintiff's contract and quasi-contract claims. Plaintiff alleges that he negotiated the terms of the profit-sharing agreement while he was in New York with defendant's personnel located in Georgia, and he does not indicate where he

was located when he actually entered into the contract. Accordingly, this factor is neutral. In addition, the "domicile of the parties" factor is neutral, since the parties are domiciled in different states. However, plaintiff does not dispute that all decisions regarding payments due him under the alleged agreement were made in Georgia or that all payments were issued to him from Georgia. Accordingly, the place of performance of the profit-sharing agreement was Georgia. Since this is the only determinative factor, Georgia law applies to plaintiff's contract and quasi-contract **[*41]** claims pertaining to the profit-sharing agreement.

However, contrary to defendant's claim, New York law applies to plaintiff's remaining claims for fraud and violations of the New York State Labor Law as those claims pertain to the profit-sharing agreement [9], as well as to plaintiff's retaliation claim. New York courts apply an "interest analysis," which requires the application of "the law of the jurisdiction having the greatest interest in the litigation * * *." *Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996)* (internal quotations and citations omitted) (applying New York law). In determining which state has the greater interest, the court must make two separate inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and, (2) whether the purpose of the law is to regulate conduct or allocate loss." *Id. at 645-646* (citing *Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 620 N.Y.S.2d 310, 311, 644 N.E.2d 1001, 1002 (1994)*); see also *Grosshandels-und Lagerei-Berufsgenossenschaft v. World Trade Center Properties, LLC, 435 F.3d 136, 139 (2d Cir. 2006)*, cert. denied, *127 S.Ct. 43, 166 L.Ed.2d 19 (2006)*. "In all interest analyses, the significant contacts **[*42]** are, almost exclusively, the parties' domiciles and the locus of the tort." *Krock, 97 F.3d at 646* (internal quotations and citations omitted); see also *Merrill Iron & Steel, Inc. v. Yonkers Contr. Co., No. 05 Civ. 5042, 2006 U.S. Dist. LEXIS 66625, 2006 WL 2679940, at *4 (S.D.N.Y. Sept. 19, 2006)*. Where, as here, the parties are domiciled in different states, "the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." *Krock, 97 F.3d at 646.*

9    As noted above, since the stock option agreement contains a choice-of-law provision providing that Georgia law applies, this analysis is not applicable to plaintiff's fraud and Labor Law claims to the extent they pertain to the stock option agreement.

Since plaintiff's fraud, retaliation and Labor Law claims are conduct-regulating claims, the proper body of law to be applied thereto turns on the locus of the tort. "When 'the defendant's * * * conduct occurs in one jurisdiction and the plaintiff's injuries are suffered in another, the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred.'" *Merrill Iron, 2006 U.S. Dist. LEXIS 66625, [WL] at *4* (citing *Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 195, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985))*. **[*43]** Although defendant was located in Georgia when it entered into the profit-sharing agreement, which is when plaintiff alleges the fraudulent conduct occurred, and all decisions regarding the payments allegedly due plaintiff under the profit-sharing agreement were made in Georgia, the last event necessary to make defendant liable for fraud and/or violation of the New York Labor Law was its alleged failure to make payments purportedly due plaintiff in New York under the agreement. Thus, plaintiff's injuries were suffered in New York. See, e.g. Id. (finding that New York law applied to plaintiff's tort claims where the last event necessary to make the defendant liable was its alleged failure to issue a joint check to New York). In addition, plaintiff's injuries following his termination were suffered in New York. Therefore, New York law applies to plaintiff's fraud and Labor Law claims as those claims relate to the profit-sharing agreement, as well as to plaintiff's retaliation claim.

In sum, this factor weighs slightly in favor of transfer, since Georgia law applies to more of plaintiff's claims than does New York law and, thus, the Northern District of Georgia is more familiar with the **[*44]** law applicable to the majority of claims.

### 9. Interests of Justice

Finally, interests of judicial economy weigh in favor of a transfer. The "interest of justice" factor "relates primarily to issues of judicial economy." *Colida v. Panasonic Corp. of N. Am., No. 05 Civ. 5791, 2005 U.S. Dist. LEXIS 27785, 2005 WL 3046298, at *4 (S.D.N.Y. Nov. 10, 2005)* (internal quotations and citation omitted). Although docket conditions and calendar congestion, alone, are insufficient to support a transfer motion, they are properly considered and entitled to "some weight." *In re Hanger Orthopedic Group, Inc. Securities Litigation, 418 F.Supp.2d 164, 171 (E.D.N.Y. 2006)*; see also

*Colida, 2005 U.S. Dist. LEXIS 27785, [WL] at *4.*

It is undisputed that the docket of the Eastern District of New York is significantly more congested than the docket of the Northern District of Georgia: As of September 30, 2006, the total number of pending cases (civil and criminal) per active judge in the Eastern District of New York was more than double that of the Northern District of Georgia--six hundred ninety-seven (697) as compared to three hundred twenty-five (325), respectively. See Administrative Office of the United States Courts, Federal Court Management **[*45]** Statistics (FCMS), available at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. In addition, the median disposition time is less in the Northern District of Georgia than in this Court (9.5 months as compared to 10.5 months). Id.

Since plaintiff has not offered any competing concerns with respect to this factor, interests of judicial economy weigh in favor of transfer.

### III. CONCLUSION

Based on the totality of the circumstances, I find that defendant has made a "clear and convincing showing" that the balance of factors weighs strongly in favor of transferring this action to the Northern District of Georgia. [10] Accordingly, the branch of defendant's motion which seeks to transfer venue of this action pursuant to *28 U.S.C. § 1404(a)* is granted and the clerk of the Court is directed to transfer this case to the Northern District of Georgia. Defendant's motion is otherwise denied.

> 10   In light of this determination, I decline to address the branch of defendant's motion seeking dismissal of plaintiff's complaint pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failure to state a claim.

SO ORDERED

SANDRA J. FEUERSTEIN

United States District Judge

Dated: June 20, 2007

Central Islip, **[*46]** N.Y.

LEXSEE 2006 U.S. DIST. LEXIS 83220

**NAVIGATORS MANAGEMENT COMPANY, INC., (f/d/b/a SOMERSET MARINE, INC.), as Managing General Agent of a Certain Slip of Underwriters Identified as AP-97 (Marine) 1/97, and AMERICAN HOME ASSURANCE COMPANY, Plaintiffs, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ESSEX INSURANCE COMPANY, and ROYAL INDEMNITY COMPANY, Defendants.**

**06 Civ. 599 (LBS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 83220*

**November 9, 2006, Decided
November 9, 2006, Filed**

**PRIOR HISTORY:** *In re Am. Milling Co., 409 F.3d 1005, 2005 U.S. App. LEXIS 8717 (8th Cir. Mo., 2005)*

**COUNSEL:** **[*1]** For Navigators Management Company, Inc. as Managing General Agent of a Certain Slip of Underwriters Identified as AP-97 (Marine) 1/97 formerly doing business as Somerset Marine, Inc., American Home Assurance Company, Plaintiffs: John Anthony Vincent Nicoletti, LEAD ATTORNEY, Nicoletti Hornig Campise & Sweeney, New York, NY.

For ST. Paul Fire and Marine Insurance Company, Essex Insurance Company, Royal Indemnity Company, Defendants: Bary L. Gassman, LEAD ATTORNEY, Jeffrey J. Asperger, LEAD ATTORNEY, Asperger Associates, L.L.C., Chicago, IL US; Timothy Gerard Hourican, LEAD ATTORNEY, BrownRaysman Millstein Felder & Steiner LLP, New York, NY.

**JUDGES:** Leonard B. Sand, U.S.D.J.

**OPINION BY:** Leonard B. Sand

**OPINION**

*MEMORANDUM AND ORDER*

    SAND, J.,

    After several preliminary proceedings (which have little or no relevance to the motion for change of venue which is presently before the Court) the parties now seem to agree that the question of coverage (which is the subject of this declaratory judgment action) turns on whether the captain of the towboat (Captain Johnson) that caused the damage in the underlying action was an employee or borrowed servant of plaintiff's insured, American Milling. **[*2]** Navigators asserts that this question of coverage should be resolved as a matter of law based on the language of the insurance policy and factual determinations already made by the federal court in Missouri in a related liability and limitation action. Defendants assert that the question of whether the Captain was an "employee" and therefore covered by American Milling's insurance policy is not a pure question of law, but rather requires factual determinations after discovery and hearings. These proceedings, defendants urge, are not appropriately held here, far removed from the situs of the allision and the persons who are knowledgeable as to the facts relevant to the characterization of the relationship between Captain Johnson and American Milling. The question presently before the Court is not whether there is coverage, but whether this Court should decide the issue or transfer it to the Eastern District of Missouri, under *28 U.S.C. § 1404(a)*, "for the convenience of the parties and witnesses, in the interest of justice."

Case 7:07-cv-10306-CLB     Document 13-5     Filed 12/13/2007     Page 2 of 6

Page 2
2006 U.S. Dist. LEXIS 83220, *2

I

This case has a somewhat tortured procedural history. It arises out of an allision that occurred on the Upper Mississippi River near **[*3]** St. Louis. A river towboat, owned by American Milling (an Illinois corporation) and operated by Captain Johnson (a Louisiana citizen) under a crewing agreement with his employer Winterville Marine Service, Inc. (a Mississippi corporation), was pushing barges up the river when it struck a bridge causing some of the barges to break free and allide with a floating casino owned by President Casino and moored in St. Louis, Missouri. Unsurprisingly, property damage and personal injuries were the result. Various negligence actions (with claimants including President Casino, certain barge owners, and approximately 125 individuals alleging personal injury) and exoneration/limitation of liability cases were filed and consolidated before Judge Limbaugh in the Eastern District of Missouri. *See In re American Milling Co., 270 F. Supp. 2d 1068 (E.D. Mo. 2003), aff'd in part, rev'd in part, 409 F.3d 1005 (8th Cir. 2005).* Judge Limbaugh found that American Milling, Winterville, and Captain Johnson were 80% liable for the allision (jointly and severally) and that President Casino was 20% liable for failing to take reasonable precautions to protect its casino from **[*4]** runaway barges. *Id. at 1111.* On appeal, the Eight Circuit affirmed the decision in part, but held that Winterville and Captain Johnson were not entitled to protections under the Limitation of Liability Act. *In re American Milling Co., 409 F.3d 1005 (8th Cir. 2005), reh'g and reh'g en banc denied* (8th Cir. 2005). Litigation still continues in the Eastern District of Missouri as the underlying action is in the damages phase.

In addition to its primary insurance coverage, American Milling had obtained an excess liability, or "bumbershoot," policy underwritten by Navigators [1] (a New York corporation). Acordia of Pittsburgh (located in Pittsburgh, Pennsylvania) brokered the bumbershoot policy. Defendants claim that the Charles L. Crane Agency (located in St. Louis, Missouri), who arranged the primary policy for American Milling, was also involved in arranging the bumbershoot policy. The bumbershoot policy provided coverage for (1) the named assured, (2) any employee of the named assured, (3) any person to whom the named assured is obligated by virtue of a written contract or agreement to provide insurance, and (4) any person added, with notice to **[*5]** Navigators,

as an additional assured. (*See* Pl.'s Mem. in Opp. at 2.) The bumbershoot insurance contract was bound and signed in New York.

1    Navigators was then doing business as Somerset Marine, Inc.

Plaintiffs denied coverage to Captain Johnson and Winterville under the bumbershoot policy and then filed a declaratory judgment action in this Court on December 3, 2004 seeking a declaration that they have no coverage obligations to Captain Johnson or Winterville. On June 23, 2005, Captain Johnson assigned any rights he had against American Milling and any interest he had in any of American Milling's insurance policies to President Casino and its insurers (who are the defendants in the instant case). In exchange, President and its insurers agreed not to execute against Captain Johnson or his personal assets any judgment obtained in the underlying negligence action. Through a Rule 25 substitution, President and its insurers stepped into the shoes of Captain Johnson in the original declaratory judgment action **[*6]** and then moved to dismiss for lack of personal jurisdiction over Captain Johnson, claiming that he had no contacts with New York. Before the Court ruled on that motion, plaintiffs filed the instant declaratory judgment action on January 25, 2006 directly against some of President's insurers, the defendants in this case. [2] The Court has held original declaratory judgment action in abeyance. Plaintiffs essentially seek a declaration that they are not liable under the bumbershoot policy to the defendants as Captain Johnson's assignees. Before the Court now is defendants' motion to transfer venue under *28 U.S.C. § 1404(a)*.

2    The instant declaratory judgment action does not name President, Captain Johnson, HIH (another one of President's insurers), or Winterville as defendants. On June 16, 2006, defendants moved to dismiss for failure to join indispensable parties (including President, Captain Johnson, HIH, the 125 personal injury claimants, and various barge claimants) and under the doctrine of forum non conveniens. Because the parties, in letters and at oral argument, addressed the possibility of a transfer of venue to the Eastern District of Missouri, the Court invited them to file the instant motion, and has held the prior motion in abeyance.

**[*7]** II

*Section 1404(a)*, states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Notions of convenience and fairness must be determined on a case-by-case basis. *In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)*. Some of the factors that courts should consider include (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)*. Courts have also considered the forum's familiarity with the governing law and judicial economy and the interests of justice, based on the totality of the circumstances. *See, e.g., Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 341 (S.D.N.Y. 2002)*.

Plaintiffs contend that defendants have not made **[*8]** a sufficient showing that the factors favoring a transfer outweigh the deference that is due to the plaintiff's choice of forum, *see Gottdiener, 462 F.3d at 107* (plaintiff's choice of forum "given great weight"), because, they argue, the issues essential to the question of coverage can be determined purely as a matter of law. Therefore, plaintiffs argue, many of the factors that would favor a transfer simply drop out of the picture. Plaintiffs argue that this Court need only interpret the terms of the bumbershoot policy, and that no witnesses will be needed because all of the relevant factual issues have been resolved by the Eastern District of Missouri in the underlying action. The parties seem to agree that the dispositive issues as to coverage are (1) whether Captain Johnson was an employee or borrowed servant of American Milling, and (2) whether the term "employee" in the bumbershoot policy encompasses the relationship that Captain Johnson had with American Milling. Plaintiffs argue that the Eastern District of Missouri has already determined that Captain Johnson was not an employee of American Milling and that determination has preclusive effect in this case because **[*9]** Captain Johnson was a party to that case and defendants stepped into Captain Johnson's shoes. Plaintiffs argue further that all of the facts necessary to determine whether Captain Johnson was a borrowed servant have also been determined by the Eastern District of Missouri. Defendants, on the other hand, argue that the Eastern

District's factual findings are insufficient for a court to determine whether Captain Johnson was an employee or borrowed servant of American Milling within the terms of the bumbershoot policy. That determination, defendants argue, will require fact discovery and witness testimony, and those activities are more conveniently done in the Eastern District of Missouri.

*A. Collateral Estoppel*

A party is collaterally estopped from relitigating an issue if: "(1) the identical issue was raised in a previous proceeding, (2) the issue was actually litigated and decided in the previous proceeding, (3) the party had a full and fair opportunity to litigate the issue, and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)*. This Court need not determine **[*10]** the preclusive effect of the Eastern District of Missouri's factual findings that Captain Johnson was an employee of Winterville. [3] Nor must it decide whether the term "employee" as used in the bumbershoot policy has the same meaning as employee for the purposes of liability. [4] It is enough to note that the issue of whether Captain Johnson was a borrowed servant of American Milling was never raised in the proceedings in the Eastern District of Missouri, nor did Judge Limbaugh need to rely on factual findings that would determine Captain Johnson's status as a borrowed servant to decide the issue of whether Winterville was liable as an owner pro hac vice of the M/V Anne Holly. *See In re American Milling Co., 270 F. Supp. 2d at 1100-01*. Even a determination that Captain Johnson was an employee of Winterville for the purposes of vicarious liability, a finding that the Eastern District of Missouri did not explicitly make, would not necessarily preclude a finding that he is also a borrowed servant of American Milling for the purposes of the bumbershoot policy. The issue of Captain Johnson's status as a borrowed servant of American Milling was not before the court; American **[*11]** Milling's liability did not turn on it; Winterville's liability did not turn on it.

> 3 Judge Limbaugh in his factual findings stated that Captain Johnson was employed by Winterville. *In re American Milling, 270 F.Supp. 2d at 1073*. The court found that American Milling paid Winterville to supply crew (including Captain Johnson) for the M/V Anne Holly. *Id. at 1078*. Winterville paid the crew's

salaries (including withholding applicable taxes), provided the crew with transportation to and from the vessel, and provided the crew with communications equipment. *Id.* The court went on to find, however, that there were certain special aspects of the relationship between American Milling and Captain Johnson and the rest of the crew. American Milling was consulted prior to hiring a pilot and retained the authority to have any of the crew removed from its vessel. *Id.* American Milling personnel met with the crew to review operating policies and procedures, as well as information on maintenance work and navigation conditions. *Id.* American Milling officers would board the vessel throughout the towing season to confer with the crew. *Id. at 1079.* The crew was required to submit daily pilothouse and engine room logs to both American Milling and Winterville, which American Milling reviewed daily. *Id.*

[*12]

4   At oral argument, counsel for plaintiffs argued that it would be incongruous for the definition of employee for the purposes of insurance coverage to differ from the definition of employee for the purposes of liability, and that the Eastern District of Missouri had determined that Winterville was vicariously liable for the actions of Captain Johnson because he was their employee. (*See* Oral Arg. Tr. at 13, Oct. 26, 2006.) In fact, the court determined that Winterville was liable for the damages caused by the towboat M/V Anne Holly as an owner pro hac vice, and thus also entitled to protection under the limitation of liability act. *See In re American Milling, 270 F. Supp. 2d at 1100-01, 1111.* This portion of the holding was overturned by the Eighth Circuit. *See In re American Milling Co., 409 F.3d 1005 (8th Cir. 2005), reh'g and reh'g en banc denied* (8th Cir. 2005). Nowhere in his opinion did Judge Limbaugh discuss whether Winterville or American Milling or both were vicariously liable for the actions of Captain Johnson as either an employee or borrowed servant, though one could infer that the Eight Circuit assumed that Winterville was vicariously liable for the negligence of Captain Johnson because the court upheld the finding that Winterville was liable even though it was not an owner pro hac vice. Neither the Judge Limbaugh nor the Eight Circuit

based any portion of their holdings on the relationship between American Milling and Captain Johnson.

[*13] Because the defendants are not clearly collaterally estopped from litigating the status of the relationship between Captain Johnson and American Milling, and because the ultimate determination of that status may depend on the particular facts and circumstances of this case, which are more conveniently presented in the Eastern District of Missouri, this Court holds that it is appropriate to leave it to the Eastern District of Missouri to determine the preclusive effect of its prior judgment.

*B. Factors Favoring Transfer*

If the issue of coverage in this declaratory judgment action cannot be determined solely as a matter of law, several factors favor a transfer of venue to the Eastern District of Missouri. The convenience of witnesses, especially nonparty witnesses, is an important factor in considering a transfer. *See Indian Harbor Ins. Co. v. Factory Mutual Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005).* To determine whether the bumbershoot policy extended coverage to Captain Johnson, a court must determine the nature of Captain Johnson's relationship with American Milling, and the meaning of the term "employee" in the bumbershoot policy. [5]

> 5   Additionally, defendants claim that they will need to present witnesses on two other issues relating to coverage: whether there was an agreement within the meaning of the bumbershoot policy that American Milling would provide Winterville with insurance coverage, and whether American Milling ever provided notice to plaintiffs that Winterville should be added as an additional named assured. The witnesses on these issues would be the same as the witnesses they would offer on the status of Captain Johnson and the meaning of the terms of the insurance policy, namely representatives from American Milling and Winterville on the existence and nature of any agreement, and American Milling, Acordia, Crane, and Navigators on notice.

[*14] The issue of whether Captain Johnson was an employee or borrowed servant of American Milling could require the testimony of representatives of American Milling, representatives of Winterville and Captain

2006 U.S. Dist. LEXIS 83220, *14

Johnson himself. None of these potential witnesses are parties to this suit. American Milling's offices are located in Cahokia Illinois, just across the border from Missouri and less than five miles from St. Louis and the Eastern District of Missouri. Clearly it would be more convenient for witnesses from American Milling to testify in the Eastern District of Missouri than in the Southern District of New York. While Winterville's offices are located in Greenville, Mississippi and Captain Johnson lives in Louisiana, both are parties to ongoing litigation in the Eastern District of Missouri arising out of the same incident. Therefore, while neither New York nor St. Louis would be ideal, it would seem more convenient for them to appear in St. Louis.

The issue of the meaning of the term "employee" in the bumbershoot policy could require testimony from American Milling (the insured), Acordia of Pittsburgh and the Charles L. Crane Agency [6] (the brokers), and Navigators (the underwriters). [*15] Of the nonparty witnesses, two are located in or very near St. Louis--Crane is located in St. Louis and American Milling just across the river in Illinois--and one, Acordia, is located in Pittsburgh, far from either New York or St. Louis. Only Navigators is located in New York, and the convenience of a party witness is entitled to less weight than the convenience of a nonparty. *See Indian Harbor Ins. Co., 419 F. Supp. 2d at 402.*

6    Plaintiffs assert that Acordia was the sole broker on the bumbershoot policy, and therefore witnesses from the Crane Agency would not be needed, however defendants claim that the Crane Agency was involved in arranging all of American Milling's insurance coverage, including the bumbershoot policy. Defendants point to an affidavit of plaintiff's counsel stating that Acordia was replaced by Crane as American Milling's broker. (*See* Nicoletti Aff. P 5, June 13, 2005.) This is a question of fact that the Court need not resolve at this time. It is enough to note that the testimony of representatives of the Crane Agency would be helpful in resolving this issue and could also be relevant in determining whether Navigators was ever given notice that Winterville was an additional insured.

[*16] Other factors are either neutral or favor a transfer to the Eastern District of Missouri. While a transfer is not generally appropriate merely to shift the burden of inconvenience from one party to the other, *Dwyer v. General Motors Corp., 853 F. Supp. 690, 693 (S.D.N.Y. 1994)*, in this case a transfer would be of great convenience to a number of interested parties that have not been joined in the action. In particular, 125 personal injury claimants in Missouri have expressed interest in joining the action as defendants, but have stated they are unable to afford the costs of litigating in New York. (See August 21, 2006 Letter to Court, attached as Ex. 14 to Def.'s Reply Mem.) A transfer to the Eastern District of Missouri would provide these parties with an opportunity to intervene. [7] A transfer would be less convenient to plaintiffs, but because they already have a presence in the Eastern District of Missouri to litigate a related action, they would not be greatly inconvenienced.

7    At oral arguments, counsel for plaintiffs stated that if a court found that the bumbershoot policy covered Captain Johnson and that the assignment was valid, plaintiffs would post the judgment in the court in the Eastern District of Missouri or initiate an interpleader action. (Oral Arg. Tr. at 24.) Plaintiffs argue that this would ensure that any claimants in Missouri would be protected and not deprived of the proceeds of their policy. (*Id.*) This argument misses the point. The issue is not where the plaintiffs would tender judgment if found liable, but rather whether the personal injury claimants who seek to intervene would have their interests adequately represented in the declaratory judgment action to determine coverage. A mere assurance that a judgment, if ordered, would be paid in a jurisdiction where the personal injury claimants would have access to it does not suffice to eliminate the issue of those claimants' interest in the determination of coverage.

[*17] The location of relevant documents is not a very compelling factor because records are easily portable. *See Coker v. Bank of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997)*. In any event, relevant documents are located in both potential fora; documents relating to the bumbershoot policy are located in New York and documents relating to Captain Johnson's status are located in or near St. Louis. This factor is neutral.

The locus of operative facts in this case is indeterminate. While courts should consider where the insurance contract was made when determining the locus

of operative facts in a declaratory judgment action, *see Indian Harbor Ins. Co., 419 F. Supp. 2d at 405*, the Court must also take into account the facts surrounding Captain Johnson's employment status. The insurance contract was bound and signed in New York, but negotiated in Pittsburgh and (defendants contend) in St. Louis. Therefore the issuance of the policy did not occur in one state. The facts and circumstances surrounding Captain Johnson's relationship with American Milling occurred in or around Missouri. Therefore, while there is no single locus of operative fact, a substantial **[*18]** portion of the facts relevant to this declaratory judgment action occurred in or around the Eastern District of Missouri.

Neither party has made a sufficient showing that it will need to use service of process to compel the appearance of unwilling witnesses, but if it became necessary, the Eastern District of Missouri could subpoena more (though not all) relevant witnesses than this Court. The relative financial means of the parties is a neutral factor, as both plaintiffs and defendants are corporations with access to substantial resources.

### III

Based on the totality of the circumstances, this Court finds that it would be in the interests of justice to transfer this declaratory judgment action to the Eastern District of Missouri. Despite plaintiff's insistence that all relevant factual issues have been already resolved by the Eastern District, this Court finds that further factual inquiry may be required, and if it is, the Eastern District of Missouri is

a more convenient forum for many of the witnesses who may testify. Likewise if the personal injury claimants were to seek to intervene as parties, the Eastern District of Missouri would be a more convenient forum for them. The existing **[*19]** parties will not be greatly inconvenienced by litigating in the Eastern District as they are already parties to an ongoing action arising out of the same incident in that forum. Finally, this Court finds it in the interests of judicial economy for the court already familiar with the underlying cause of action giving rise to this coverage dispute, and before which several other related actions have already been consolidated, to decide this case as well. These factors outweigh the deference to which the plaintiff's choice of forum is due. We leave it the Eastern District of Missouri to determine the extent of the preclusive effect of its judgment in *In re American Milling Co., 270 F. Supp. 2d 1068 (E.D. Mo. 2003)*.

The motion to transfer venue under *28 U.S.C. 1404(a)* is granted. The case is transferred to the Eastern District of Missouri.

**SO ORDERED.**

Dated: November 9, 2006

New York, NY

*Leonard B. Sand*

U.S.D.J.

LEXSEE 2007 U.S. DIST. LEXIS 11458

**PARAGON REALTY GROUP LLC, Plaintiff v. CAROL M. LECATES and FRANCIS A. LECATES, JR., Defendants.**

**Case No. 3:06 CV 846 (CFD)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2007 U.S. Dist. LEXIS 11458*

**February 5, 2007, Decided**

**COUNSEL:** **[*1]** For Paragon Realty Group LLC, Plaintiff: Richard P. Colbert, Rosemary Q. Barry, LEAD ATTORNEYS, Day Pitney LLP, Stamford, CT.

For Carol M. Lecates, Frances A. Lecates, Jr., Defendants: John F. Lakin, Randolph L. Smith, LEAD ATTORNEYS, Barnes Walker, Bradenton, FL; Thomas F. Maxwell, Jr., Tristan Scott Cowperthwait, LEAD ATTORNEYS, Pullman & Comley, Bridgeport, CT.

**JUDGES:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHRISTOPHER F. DRONEY

**OPINION**

*RULING ON DEFENDANTS' MOTION TO DISMISS*

Plaintiff, Paragon Realty Group LLC ("Paragon"), brought this suit in the Superior Court of the State of Connecticut alleging negligent misrepresentation, fraudulent misrepresentation, and violations of the Connecticut Unfair Trade Practices Act related to a Florida real estate venture. The Defendants, Carol and Francis Lecates, then removed the suit to this court based on diversity of citizenship. The complaint states that Paragon is a Connecticut limited liability company with its principal place of business in Westport, Connecticut, while the two defendants are alleged to be citizens of New Jersey.

The LeCates have filed a motion to dismiss under *Fed. R. Civ. P. 12(b)(2)* **[*2]** , *12(b)(3)*, and *12(b)(6)* alleging that this Court lacks personal jurisdiction over

them, that venue is improper, and that Paragon failed to state a claim upon which relief may be granted. In the event that their motion to dismiss is denied, defendants seek the alternative relief of dismissal or transfer of this action under the doctrine of forum non conveniens. Subsequently, Paragon amended its complaint, but the LeCates renewed their motion to dismiss or to transfer. For the reasons below, defendants' motions are denied.

**I. Background**

Paragon's claims arise out of misrepresentations allegedly made by the LeCates [1] to induce Paragon to invest in a joint venture to purchase and develop property in Sarasota, Florida. In June 2005, CFL Management, LLC ("CFL"), a Florida limited liability company with the LeCates as its sole members, entered into an agreement with a third party related to the Sarasota property. The LeCates soon learned that the third party, John Glickman, had made material misrepresentations about the development of the Sarasota property.

1 The LeCates are husband and wife.

**[*3]** In July 2005, the LeCates, through their agent, Steve Maloy, [2] contacted Paragon to determine whether Paragon wished to participate in developing the Sarasota property. In a July 20, 2005 telephone call between Paragon's Westport, Connecticut offices and Maloy, Paragon and Maloy discussed the Sarasota properties, but Maloy allegedly failed to disclose the misrepresentations made by Glickman, and made additional misrepresentations himself. Paragon also alleges that Maloy regularly called and e-mailed Paragon in Connecticut, but never revealed the falsity of the misrepresentations. Finally, Paragon alleges that on July

26, 2005 the LeCates attended a meeting at Paragon's Connecticut offices at which they also failed to disclose the misrepresentations by Glickman and made additional misrepresentations. Carol LeCates also sent three emails to Paragon following the July 26 meeting.

2    Steve Maloy is Carol LeCates' brother and resides in Florida.

## II. Discussion

### A. Personal Jurisdiction

The LeCates **[*4]** claim that the Court lacks personal jurisdiction over them because they do not meet the criteria of Connecticut's long-arm statute, *Conn. Gen. Stat. § 52-59b*, nor does their conduct satisfy the "minimum contacts" requirement of the *Due Process Clause of the Fourteenth Amendment*.

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant." *Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn. 2003)* (citing *Metro. Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996)); Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993).* "A plaintiff facing a *Fed.R.Civ.P. 12(b)(2)* motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction. Moreover, we construe the pleadings and affidavits in plaintiff's favor at this early stage." *PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997)* (internal citations omitted); *see also* **[*5]** *Amerbelle Corp. v. Hommel, 272 F.Supp.2d 189, 192-193 (D.Conn., 2003)* ; *Jarrow Formulas, Inc., 175 F. Supp.2d 296, 300 (D. Conn. 2001).* 3

3    In connection with the instant motion, Paragon submitted the affidavit of John Nelson, the managing member of Paragon. The LeCates submitted affidavits from Francis LeCates and Carol LeCates.

In diversity cases, personal jurisdiction is determined by the law of the state in which the district court sits. *See Arrowsmith v. United Press Int'l, 320 F.2d 219, 231 (2d Cir. 1963). Connecticut General Statutes § 52-59b(a)* governs the exercise of jurisdiction over nonresidents of the state. Under that statute, personal jurisdiction over a nonresident individual exists if the individual or his agent

(1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside **[*6]** the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; (4) owns, uses or possesses any real property situated within the state; or (5) uses a computer . . . or a computer network . . . located within the state.

Paragon has alleged that the LeCates transacted business in Connecticut, that the torts for which it seeks recovery occurred within Connecticut, and that, to the extent that the torts occurred outside of Connecticut, they caused injury within the state. In particular, Paragon alleges that the LeCates came to Paragon's offices in Westport, Connecticut for a meeting related to the real estate venture and that some of the misrepresentations that form the basis of its complaint were made by the LeCates at that meeting.

**[*7]** The LeCates concede that they were present at the meeting, but invoke the "fiduciary shield doctrine" by citing *Milne v. Catuogno Court Reporting Servs., Inc., 239 F. Supp.2d 195, 203 (D. Conn. 2002)* and arguing that they were only present in Connecticut in their capacities as officers of CFL. Since the *Milne* decision, however, the fiduciary shield doctrine has been disfavored by Connecticut courts. *See, e.g., Dictaphone Corp. v. Gagnier, No. 3:05CV266 (CFD), 2006 U.S. Dist. LEXIS 11942, 2006 WL 726675, at *2 (D. Conn. March 12, 2006)* (compiling cases). Even if the LeCates were operating as representatives of an LLC, that would not shield them from personal liability for their own acts or

omissions. *Kilduff v. Adams, Inc., 219 Conn. 314, 331-32, 593 A.2d 478 (1991)* (holding that it was appropriate to impose personal liability on corporate officers and shareholder for their own fraudulent misrepresentations). Similarly, it cannot be a shield from personal jurisdiction in Connecticut in a suit based on allegations involving the defendants' own acts committed in Connecticut. *See, e.g., Vertrue Inc. v. Meshkin, 429 F. Supp.2d 479, 491 (D. Conn. 2006)* **[*8]** ("Whatever validity the 'fiduciary shield' doctrine may have in other contexts, it would appear to have no place in this case, which involves allegations that [the individual defendant] violated Connecticut statutes by his own conduct in this state.")

Further, while the LeCates own conduct is enough to establish personal jurisdiction in Connecticut, the Court may also consider Maloy's conduct. While the LeCates claim that Maloy was a representative of CFL, Paragon alleges that Maloy represented himself as an agent for the LeCates personally. Paragon also alleges that Maloy transmitted fraudulent misrepresentations into Connecticut by telephone and email while acting as the LeCates' personal agent. "[I]t is well-established that false or fraudulent misrepresentations transmitted to Connecticut by mail, wire or telephone constitute tortious conduct in Connecticut sufficient to establish personal jurisdiction under Connecticut's long-arm statute." *Vertrue Inc. v. Meshkin, 429 F. Supp.2d at 492* -493 (internal quotation marks omitted) (compiling cases).

Since the Connecticut long-arm statute is satisfied, the Court must now address whether exercising jurisdiction **[*9]** over the LeCates would comport with due process. "When, [as here,] the controversy is specifically related to a defendant's contacts with a forum, there is sufficient due process contact if 'the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105, 108 (3d Cir. 1985)* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).* Here defendants came to Connecticut to meet with a Connecticut entity and engaged in conduct that is subject of the instant suit. Thus, exercising jurisdiction comports with due process. *See Vertrue Inc. v. Meshkin, 429 F. Supp.2d at 492* -493 (noting that "Connecticut federal district courts have consistently held that it is proper to assert personal

jurisdiction, pursuant to *Conn. Gen. Stat. § 52-59b(a)(2)*, over a nonresident defendant who transmits fraudulent representations to a Connecticut resident for the purpose of inducing that resident to act."); *David v. Weitzman, 677 F. Supp. 95, 98 (D. Conn. 1987)* **[*10]** (holding that it was proper to assert jurisdiction pursuant to *§ 52-59b(a)(2)* even when the defendant's "sole contact with the forum state was to send into it by mail and telephone fraudulent misrepresentations" in connection with the purchase of a condominium in Florida). Because exercising jurisdiction over the LeCates comports with due process, their motion to dismiss for lack of personal jurisdiction is denied.

## B. Venue

A transfer may be made under *28 U.S.C. § 1404(a)* or *28 U.S.C. § 1406(a).* Pursuant to *28 U.S.C. § 1406(a),* "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Section 1406* does not apply because venue is proper in Connecticut pursuant to *28 U.S.C. § 1441. Section 1441 (a)* provides that venue for removed actions lies in the district court of the United States for the "district and division embracing the place where such action is pending."

*Section 1404* provides: "[f]or **[*11]** the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Section 1404(a)* "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).* "The burden of justifying transfer of venue ... lies with the moving party, who must make a clear and convincing showing that transfer should be made." *Kodak Polychrome Graphics, LLC, Plaintiff v. Southwest Precision Printers, Inc., No. 3:05 CV 330 (MRK), 2005 U.S. Dist. LEXIS 23359, *2-*3 (D. Conn. Oct. 7, 2005); see also O'Brien v. Okemo Mt., 17 F. Supp.2d 98, 104 (D. Conn. 1998)* (movant's burden to show that the relevant factors "strongly favor" transfer). The factors to be considered by a district court in evaluating a motion for transfer under *§ 1404(a)* include "convenience of the parties and witnesses, availability of process to compel

unwilling witnesses to **[*12]** testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice." *A Slice of Pie Prods v. Wayans Bros. Entm't, 392 F. Supp.2d 297, 305 (D. Conn. 2005)*.

Defendants argue that several essential witnesses reside in Florida and that process would be unavailable to compel them to testify here in Connecticut. However, none of the parties to this lawsuit is in Florida; Paragon is in Connecticut and the LeCates are in New Jersey. It also appears that about half of the relevant witnesses are located in the Northeast and half in Florida. Thus, Connecticut and Florida appear to be equally convenient for potential witnesses. Further, the LeCates have not made a showing that the Florida witnesses would be unwilling to travel to Connecticut to testify.

Defendants primarily argue that transfer to the District Court for the Middle District of Florida is in the interests of justice because there is ongoing parallel litigation in Florida's Twelfth Judicial Circuit. In that suit, CFL is suing Paragon, and Paragon has filed a counter claim that **[*13]** is substantially similar to the complaint in this case. However, transferring this action to a federal court in Florida would not result in the consolidation of the federal and state actions. Accordingly, transfer would neither sufficiently promote judicial efficiency nor facilitate the course of litigation for the parties.

The other relevant factors also fail to strongly favor transfer to Florida. While the real estate development was in Florida, the alleged misrepresentations occurred in or were transmitted into Connecticut. Thus, the locus of the operative facts is in both Florida and Connecticut. It also appears that relevant documents are located in New Jersey and Connecticut as well as Florida. Even if Florida law is determined to govern this dispute, this factor on its own is not decisive as "[f]ederal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." *Pitney Bowes v. National Presort, Inc., 33 F. Supp.2d 130, 132 (D. Conn. 1998)*. Thus, the LeCates have failed to overcome Paragon's choice of venue and their motion to transfer venue is denied.

## C. Failure to State a Claim

Defendants argue that **[*14]** Count Two, the negligent misrepresentation claim, should be dismissed for failure to plead fraud with the requisite particularity. *Rule 9(b)* requires that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To comply with *Rule 9(b)* a complaint must "identify who made the misstatements, the occasions on which these were made and the content of the misstatements." *Yoder v. Orthomolecular Nutrition Inst. Inc., 751 F.2d 555, 562 (2d Cir. 1985)*. In Count One and the background section of the amended complaint, Paragon alleges the fraudulent statements and omissions made by the LeCates and their agent, as well as the dates, and occasions of the misstatements. While Count Two does not repeat these allegations it incorporates them by reference. The Court finds that Paragon adequately alleged who made these misstatements and omissions and the occasions on which these were made. However, the Court finds that the description of Glickman's alleged omissions and misrepresentations in paragraph 14 of the amended complaint is not adequately specific. Accordingly, to avoid dismissal of the portion of its amended **[*15]** complaint related to Glickman, Paragon must file a second amended complaint describing the content of Glickman's misrepresentations and the nature of his omissions. The LeCates' motion to dismiss for failure to allege fraud with particularity is denied without prejudice to renew if Paragon fails to file an adequate second amended complaint by March 5, 2007.

## II. Conclusion

Defendants' Motions to Dismiss or to Transfer [Doc. # 30, 32] are DENIED.

So ordered this *5th* day of February 2007 at Hartford, Connecticut.

/s/ **CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**