UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
LOUIS DRETCHEN,                                : 07 Civ. 10306 (CLB) (LMS)
                                               :
                                               :
                        Plaintiff,             :
   v.                                          :
                                               :
                                               :
ALLAN PHARMACEUTICAL LLC,                      :
                                               : **ECF CASE**
                                               :
                        Defendant.             :
------------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT ALLAN
PHARMACEUTICAL LLC'S MOTION TO TRANSFER VENUE**

PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
212.969.3000
Attorneys for Defendant
Allan Pharmaceutical LLC

**On The Brief**

Paul Salvatore (PS-1880)
Mark A. Saloman (MS-5764)
Harris Freier (HF-0921)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.   NOTWITHSTANDING PLAINTIFF'S IRRELEVANT AND/OR UNTRUE ASSERTIONS, TRANSFER OF THIS MATTER TO MISSISSIPPI REMAINS UNWARRANTED ........................................................................... 2

        A.   Plaintiff's Filing In New York Is Entitled To No Deference Because The Operative Facts Of This Case Occurred In Mississippi, Not New York. .............. 2

            1.   When Dretchen was interviewed and hired, and for the first months of his employment, Allan Pharma was completely based in Mississippi ............................................................................... 3

            2.   Dretchen's work required continuous contact with Mississippi ............ 4

            3.   Dretchen spent the majority of his employment outside of New York, regularly traveled to Mississippi, and interacted daily with Allan Pharma personnel in Mississippi ............................................. 5

            4.   Dretchen's employment was terminated during one of his numerous business trips to in Mississippi ........................................ 5

                a.   Allan Pharma investigated Dretchen's criminal background in Mississippi ............................................................ 5

                b.   Dretchen was already in Mississippi when his employment was termianted ................................................................................ 7

        B.   Every Witness Lives, Works, Or Is Otherwise Available In Mississippi. ............ 8

        C.   The Location Of Relevant Documents And Trial Efficiency Also Warrant Transfer To Mississippi. ......................................................................... 11

    II.  THE EASTERN DISTRICT OF PENNSYLVANIA IS THE PROPER ALTERNATIVE VENUE TO MISSISSIPPI ................................................................ 12

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Deshoulieres, S.A. v. Cuthbertson Imports, Inc.*,
   No. 06 Civ. 5163 (HB), 2006 WL 2849818 (S.D.N.Y. Oct. 3, 2006) ......................................8

*Factors Etc., Inc. v. Pro Arts, Inc.*,
   579 F. 2d 215 (2d Cir. 1978) ..............................................................................................10

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*,
   865 F.2d 513 (2d Cir. 1989) ..................................................................................................2

*I Create Int'l, Inc. v. Mattel, Inc.*,
   No. 03 Civ. 3993(JFK), 2004 WL 1774250 (S.D.N.Y. Aug. 9, 2004) .............................2, 12

*Int'l Sec. Exch. v. Chi. Bd. Options Exch. Inc.*,
   No. 06 Civ. 13445(RMB)(THK), 2007 WL 1541087 (S.D.N.Y. May 24, 2007) ...................2

*Kirkland v. New York, State Dept. of Corr. Serv.*,
   358 F. Supp. 1349 (S.D.N.Y. 1973) .......................................................................................9

*Photoactive Productions, Inc. v. Al-Or International Ltd.*,
   99 F.Supp.2d 281 (S.D.N.Y. 2000) .....................................................................................10

*Rosenstock v. Fink*,
   351 F. Supp. 113 (S.D.N.Y. 1972) ........................................................................................3

## **PRELIMINARY STATEMENT**

The opposition of Louis Dretchen simply confirms that there is no meaningful connection between his claims against Allan Pharma and the State of New York. Beyond his assertion that—as a traveling salesman—he lives in New York and at times worked from home, he relies on irrelevant and/or untrue assertions, misleadingly minimizing his regular and continuous contact with Mississippi.

The impression that Dretchen spent the bulk of his employment with Allan Pharma in New York, for example, is disproven by the reimbursement requests which he prepared and submitted. These confirm that Dretchen spent more than half of his employment traveling *outside* of New York and regularly traveled to Mississippi during his employment. Dretchen, likewise, was not "lured" to Mississippi in March 2007 to be fired as he now misrepresents. Rather, he was already in Mississippi on a pre-planned business trip when a meeting with Allan Pharma leadership was arranged around his schedule to review Allan Pharma's disturbing discoveries concerning Dretchen's felony conviction and lack of a pharmacist's license (despite his ongoing claim to be a registered pharmacist).

In addition, Dretchen ignores key facts, including that:

- at the time of his interview and hire, and for at least the first three months of his employment, Allan Pharma's entire operation was completely based in Mississippi, not Pennsylvania—and never in New York;

- even after Allan Pharma's research and development functions moved to Pennsylvania several months into his employment, Dretchen maintained daily contact with Allan Pharma leadership and support personnel in Mississippi, not New York; and

- every defense witness central to this action lives, works, or is otherwise available in Mississippi, not New York, and Dretchen—a traveling salesman who meets with clients throughout the United States—is readily available to litigate this case in Mississippi.

Critically, Dretchen identifies no material issue which arose in New York or even one independent witness who lives or works in New York. Indeed, Allan Pharma does not maintain

an office or facility in New York, is not incorporated, headquartered, nor licensed to do business in New York, and has had no employees in New York, other than Dretchen.

Mississippi remains the most appropriate forum—all of the witnesses (except for Dretchen) live, work, or are otherwise available in Mississippi; Allan Pharma's operations and infrastructure is based in Mississippi; Dretchen worked under a Mississippi employment agreement which is undisputedly governed by Mississippi law; he worked closely with Allan Pharma's Mississippi-based senior management, maintained daily contact with sales, support, and administrative personnel in Mississippi; traveled to and worked in Mississippi on a regular basis; the operative facts occurred in Mississippi; and his lawsuit is governed by Mississippi law.

That Dretchen asserts that he may be inconvenienced cannot overcome the clear balance of the equities, which overwhelmingly favor transfer of this case to the Southern District of Mississippi.

## ARGUMENT

### I. NOTWITHSTANDING PLAINTIFF'S IRRELEVANT AND/OR UNTRUE ASSERTIONS, TRANSFER OF THIS MATTER TO MISSISSIPPI REMAINS WARRANTED

#### A. Plaintiff's Filing In New York Is Entitled To No Deference Because The Operative Facts Of This Case Occurred In Mississippi, Not New York.

While Plaintiff understandably emphasizes his choice to bring suit in New York, his "choice" alone is insufficient to justify denial of Allan Pharma's motion. *See Int'l Sec. Exch. v. Chi. Bd. Options Exch. Inc.*, No. 06 Civ. 13445(RMB)(THK), 2007 WL 1541087, at *6 (S.D.N.Y. May 24, 2007); *I Create Int'l, Inc. v. Mattel, Inc.*, No. 03 Civ. 3993(JFK), 2004 WL 1774250, at *6 (S.D.N.Y. Aug. 9, 2004). Even *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989) (cited by Dretchen) confirms that "[t]he determination whether to grant a change of venue requires a balancing of conveniences, which is

left to the sound discretion of the district court." Plaintiff does not and cannot legitimately contest that the *material* facts underlying his claims arose in Mississippi, not New York. That trumps his forum selection.[1]

### 1. When Dretchen was interviewed and hired, and for the first months of his employment, Allan Pharma was completely based in Mississippi.

Dretchen concedes that no pre-hire communication with Allan Pharma executives took place in New York. Indeed, his only formal job interview was held outside of the Newark Airport because CEO Neil Sirkin and CFO Joseph Donovan flew up for the meeting and returned to Mississippi that day. Accordingly, Dretchen was never interviewed for nor offered a position with Allan Pharma in New York and Allan Pharma negotiated Dretchen's Employment Agreement from Mississippi. (Donovan Supp. Decl., ¶¶4-5; Sirkin Decl., ¶¶2-6). That he was interviewed in Connecticut and New Jersey only highlights the ease in which Dretchen travels when it suits his interests.

Dretchen also neglects to mention that Allan Pharma was entirely based in Mississippi at that time. During his interviews, Dretchen was told that Allan Pharma's operations and infrastructure were entirely based in Mississippi and that the majority of his sales support functions would be based in Mississippi. (Donovan Supp. Decl., ¶3; Sirkin Decl., ¶¶2-6). Dretchen's recruitment and pre-hire activities only confirm that he knew—before he ever

---

[1] Plaintiff's argument that this motion is premature is incorrectly based upon this Court's decision in *Rosenstock v. Fink*, 351 F. Supp. 113 (S.D.N.Y. 1972). There, this Court denied that motion to transfer because, among other things, the motion was factually unsupported and the defendant (a California-based attorney) had other active cases pending in the Southern District and was expected to frequent the District in person on other court business. *Id*. at 115. That this Court contemplated renewal of the motion after the completion of discovery if "the interests of justice or the convenience of specified witnesses require such transfer" is entirely consistent with Allan Pharma's position here. *Id.*

3

accepted employment with Allan Pharma—that his job would require significant contact and work with personnel in Mississippi.

### 2. Dretchen's work required continuous contact with Mississippi.

Even after Allan Pharma's research and development functions were relocated from Mississippi to Pennsylvania in September 2005, Dretchen continued to:

- interface with Mississippi-based customer-service personnel and contract support administrators on a daily basis;

- work under an Employment Agreement which was created, drafted, and negotiated by Allan Pharma in Mississippi and governed by the laws of Mississippi;

- receive employee benefits which were managed and administered in Mississippi; and

- sell products manufactured in and distributed from Mississippi.

(Donovan Supp. Decl., ¶6). To this day, Dretchen's COBRA benefits are administered by Blue Cross/Blue Shield of Mississippi and he continues to deliver monthly health insurance payments to Allan Pharma in Mississippi. (Donovan Supp. Decl., ¶7). Indeed, nearly every nonscientific aspect of Allan Pharma's operation is based in Mississippi.

Dretchen's reference to one meeting with Allan Pharma's senior leadership team in Pennsylvania does not connect this case to New York. No leadership meetings, or meetings of any kind, were ever held in New York—though Dretchen attended dozens of meetings with Allan Pharma leaders in Mississippi. (Donovan Supp. Decl., ¶8; Vegesna Decl., ¶2). Though Dretchen similarly embellishes his role in establishing "programs to monitor ordering and customer service," all of that work occurred in Mississippi, not New York. (Donovan Supp. Decl., ¶9).

4

> 3. **Dretchen spent the majority of his employment outside of New York, regularly traveled to Mississippi, and interacted daily with Allan Pharma personnel in Mississippi.**

Dretchen's estimation that he spent 25% of his time traveling outside of New York is plain wrong—according to his very own expense reimbursement requests. Indeed, the requests he prepared show that he spent more than half of his employment outside of New York, including at least 27 days in Mississippi. (Donovan Supp. Decl., ¶¶11-12 and Exhibit 5). Dretchen "performed the vast majority of his employment duties" away from New York and his assertion that he spent only "five days per month" traveling is inaccurate and untrue.

> 4. **Dretchen's employment was terminated during one of his numerous business trips to Mississippi.**
>
>> a. **Allan Pharma investigated Dretchen's criminal background in Mississippi.**

Dretchen makes much of the passage of time between the date that Ms. McDade received his background screening report and the date of the termination of his contract. The lapse of time, however, was necessary to allow Allan Pharma sufficient opportunity to investigate and confirm the shocking findings of the background report. In deference to Dretchen, Allan Pharma, at its Mississippi facility, followed up on each of the issues raised by the report before deciding to terminate his Agreement. (Donovan Supp. Decl., ¶¶23-25).

First, Ms. McDade conferred with Mr. Sirkin and he engaged legal counsel in Mississippi to analyze the report and identify issues concerning Dretchen's continued employment. Second, Ms. McDade conducted computer-assisted research concerning Dretchen's federal debarment, reviewed applicable federal laws, and spoke with an Office of Health and Human Services employee familiar with Dretchen's case. During that conversation, Health and Human Services explained the implications of Dretchen's conduct, confirmed that he had never sought

reinstatement of his pharmacist's license, established that he had been debarred from participating in any federally-funded employee health benefit programs, and advised that he could not (and cannot) be the principal point of contact of any direct sales to the federal government. (Donovan Supp. Decl., ¶¶25-27). Third, Ms. McDade engaged the background screening service to review Dretchen's licensure in all 50 states. That additional investigation confirmed to Allan Pharma that Dretchen did not have a valid pharmacist's license in any state. (Donovan Supp. Decl., ¶28).

Dretchen, understandably, tries to minimize the impact of his felony conviction, revoked pharmacy license, and inclusion on the Excluded Parties List. By his execution of his Agreement, for example, Dretchen tacitly acknowledged that he had not been convicted of a felony or committed any other corrupt practice. (Donovan Decl., Exh. 1: Agreement, ¶4.(e)). In truth, he had been convicted of the felony of grand larceny.

Moreover, Dretchen had repeatedly communicated to Allan Pharma and to third parties that he was a registered pharmacist, even though the background screening report and Allan Pharma's additional investigation revealed that he had no pharmacy license in any state. While Allan Pharma did not require Dretchen or his successor to maintain a pharmacy license, *he does not dispute* that he improperly held himself out as a registered pharmacist when he worked for Allan Pharma. Indeed, the business card that Dretchen helped create improperly identifies him as "Lou Dretchen, R.Ph. [sic]" and sales literature and other documents created by Dretchen referred to him as "Lou Dretchen, R.Ph". (Donovan Supp. Decl., ¶¶29-31 and Exhibits 6, 7, and 8).

Compounding his deceptions, Dretchen attended a multi-day continuing education seminar for pharmacists in April 2006 in Seattle, Washington (at the company's expense)

6

because he claimed that he needed the continuing education credits to maintain his pharmacy license—which he had surrendered long ago! (Vegesna Decl., ¶¶3-6).

Dretchen's identification on the Excluded Parties List also was a significant factor in the decision to terminate his employment. At all times during Dretchen's employment, Allan Pharma was and remains a party to a Medicaid Drug Rebate Agreement. Moreover, Dretchen was present at numerous management meetings in Mississippi which addressed Allan Pharma's serious interest in potential direct sales to Medicare and Medicaid, the single largest purchasers of pharmaceutical products in the United States. Dretchen also knew of Allan Pharma's exploration of direct sales to the Department of Defense and Department of Veterans Affairs. (Donovan Supp. Decl., ¶¶33-35).

### b. Dretchen was already in Mississippi when his employment was terminated.

Dretchen's claim that he was "lured" from New York to Mississippi to be fired also could not be farther from the truth. Dretchen arrived in Jackson, Mississippi on March 18, 2007 and planned to stay through March 21 for regularly planned meetings with Allan Pharma personnel in De Kalb and a client meeting in Shreveport, Louisiana. Because Dretchen, Dr. Vegesna, Mr. Sirkin, and Mr. Donovan were all in Mississippi, they were able to set a meeting in Jackson around Dretchen's schedule for March 21. (Donovan Supp. Decl., ¶¶36-41 and Exhibit 9).

Inexplicably, Dretchen refused to provide any details or information to explain, contradict, or dispute Allan Pharma's findings at the March 21 meeting. Dretchen's employment with Allan Pharma was then terminated in Jackson, Mississippi. (Donovan Supp. Decl., ¶41). The notion that he was tricked into coming to Mississippi on March 21 is utterly false.

Accordingly, every material aspect of Dretchen's retaliation claim is rooted in Mississippi, the contract Dretchen claims to have been breached was drafted, negotiated, and

7

willingly made and entered into in Mississippi, and Dretchen voluntarily agreed to be bound by Mississippi law.[2] The locus of the operative facts is a primary factor considered in transferring venue and the Southern District "routinely transfer[s] cases when the principal events occurred, and the principal witnesses are located, in another district." *Deshoulieres, S.A. v. Cuthbertson Imports, Inc.*, No. 06 Civ. 5163 (HB), 2006 WL 2849818, at *4 (S.D.N.Y. Oct. 3, 2006).[3]

### B. Every Witness Lives, Works, Or Is Otherwise Available In Mississippi.

Dretchen does not challenge that CEO Sirkin, Human Resources Manager McDade, and CFO Donovan are essential witnesses in this case because they have knowledge concerning, among other things, Dretchen's Agreement, pharmaceutical sales practices, the allegedly due or owing sales commissions, and his felony conviction, inclusion on the EPLS, and debarment for cause from participation in federal contracting, his calculated concealment of those facts from Allan Pharma, and the ultimate decision to terminate the Agreement. These witnesses live and/or work in Mississippi and do not normally travel to New York. (Donovan Supp. Decl., ¶15).

Likewise, Customer Service Representative Bertha Rush has detailed information concerning Dretchen's sales practices that directly relates to the allegations in his Complaint. Ms. Rush will testify that Dretchen sold product to customers in a manner that impermissibly inflated his gross sales figures and forced Allan Pharma to incur added costs after its customers returned a significant volume of unsold product. Though Dretchen claims to have had "minimal

---

[2] Dretchen's intimation that the Agreement's broad choice of law clause provision is inapplicable to all of the causes of action in his Complaint is groundless.

[3] Dretchen also relies upon *his* purported breach of his post-separation obligations to Allan Pharma in New York to justify affirmative claims that belong in Mississippi. That novel argument is counterintuitive and legally unsupported. Moreover, the Agreement he breached, again, was made and entered into in the State of Mississippi and is governed by and construed in accordance with the internal laws of Mississippi. Dretchen, further, identifies no New York witness needed in the event a counterclaim is filed.

8

professional contact" with Ms. Rush, she is an essential witness for Allan Pharma who lives and works in Mississippi and does not normally travel, to New York or elsewhere, for Allan Pharma. Ms. Rush, moreover, is eight months pregnant and will experience certain hardship if forced to travel to New York for trial. (Donovan Supp. Decl., ¶¶18-19).

Another Mississippi-based witness, Comptroller Ashley Withers, was responsible for handling administrative functions for Dretchen, including accounting, customer service, order entry, sales reporting, contract management, and the majority of his sales support. She will testify concerning the scale of full-credit returns of product oversold to customers by Dretchen and the impact of the reconciliation of those returns on his allegation that he is owed commission payments. Ms. Withers lives and works in Mississippi and does not travel to New York, and minimally travels elsewhere, for Allan Pharma. (Donovan Supp. Decl., ¶20).[4]

Due to the hotly contested issues in this case, Dretchen's assertion that Allan Pharma does not need the live testimony of its Mississippi-based witnesses is extraordinary. Indeed, they will demonstrate, among other things, that Dretchen's oft-repeated assertion that he had "$18 million in sales" is inaccurate, inflated, and wrong and the significant volume of rebates, returns, and discounts dramatically reduced his net sales. (Donovan Supp. Decl., ¶¶21-22). Further contrary to Dretchen's assertion, Allan Pharma's original submission and the foregoing

---

[4] Plaintiff's reliance on *Kirkland v. New York, State Dept. of Corr. Serv.*, 358 F. Supp. 1349 (S.D.N.Y. 1973) is similarly misplaced. In that case, defendants' motion to transfer the matter from the Southern District to the Northern District of New York was denied because plaintiffs resided in the Southern District, the defendants were state agencies with offices in the Southern District, and the individual defendants who lived in the Northern District were expected to have "nominal or nonexistent" active participation in the suit. *Id.* at 1351. In stark contrast, *every* key witness in the case at bar—with the sole exception of Dretchen—lives, works, and/or is readily available to participate in the case in Mississippi, not New York.

sufficiently identifies Allan Pharma's key witnesses and the general subjects that their testimony will cover.[5]

Dretchen's concern that his purported witnesses, Raju Vegesna and Samuel Sirkin, will be beyond the jurisdiction of the Southern District of Mississippi is likewise unwarranted. Both are readily available in Mississippi, if needed. (Sirkin Decl., ¶7; Vegesna Decl., ¶7). Dretchen also mentions Allan Pharma's 18 scientists in Pennsylvania as potential witnesses on his behalf. Although it is entirely unclear what evidence Dretchen thinks these individuals possess—because he fails to state the substance of their testimony (*see* footnote 5, *supra*)—they are available in Mississippi. (Donovan Supp. Decl., ¶17).

That Dretchen drops the name of Giora Carni is also both irrelevant and misleading. Mr. Carni had no role in the hire, supervision, or termination of Dretchen nor was he affiliated in any way with Allan Pharma at the time of Dretchen's separation. Mr. Carni does not reside in the U.S. and, notably, Dretchen does not identify Mr. Carni as a potential witness. (Donovan Supp. Decl., ¶10).

It is further disingenuous for Dretchen to assert that he will be inconvenienced if the litigation moves to Mississippi. He is a traveling salesman whose chosen profession requires his extensive and regular travel outside of New York. He spent more than half of his employment for Allan Pharma outside of New York and, within the last nine months, traveled for business to Boston, San Francisco, Ohio, Florida, and—most likely—elsewhere outside of New York. (Donovan Supp. Decl., ¶¶11-14). Dretchen's travel for business far beyond Mississippi is in

---

[5] *See, e.g., Photoactive Productions, Inc. v. Al-Or International Ltd.*, 99 F.Supp.2d 281, 292 (S.D.N.Y. 2000) (movant only needs "an affidavit containing detailed factual statements . . . including the potential principal witnesses expected to be called and a general statement of the substance of their testimony."); *compare Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F. 2d 215, 218 (2d Cir. 1978) (motion to transfer properly denied when movant failed to submit any supporting affidavit concerning potential witnesses or their testimony).

distinct contrast to Allan Pharma's essential witnesses, *all* of whom live, work, or are otherwise available in Mississippi.

Plaintiff also erroneously argues that the cost of litigating in Mississippi will be prohibitive. The hourly rate for top senior partners in Mississippi is $225.00. *See Baker v. Washington Mutual Finance Group*, No. 1:04cv137WJG-JMR, 2007 WL 571103, at *14 (S.D. Miss. Feb. 20, 2007) (hourly rate of $225.00 is "representative of the customary rates of senior attorneys . . . in this area."); *Lopez v. City of Biloxi*, No. 1:03cv122WJG-JMR, 2006 WL 1195221, at *3 (S.D. Miss. May 4, 2006) (litigator with 21 years of experience and abilities that are "well-known by both the Court and by his fellow attorneys" allowed lodestar of $200.00 per hour). These rates presumably are much lower than what Dretchen is paying his legal counsel now.[6]

### C. The Location Of Relevant Documents And Trial Efficiency Also Warrant Transfer To Mississippi

Plaintiff contends—without foundation—that Allan Pharma's documents have already been delivered to its counsel in New York. That is untrue. (Donovan Supp. Decl., ¶43). According to public records, moreover, there were 10,793 filings in the Southern District of New York, compared to only 2,780 in the Southern District of Mississippi.[7] Though neither of these factors is dispositive, they also favor transfer of this case.

---

[6] Indeed, Dretchen's counsel's hourly rate was higher nine years ago, *see Greenbaum v. Svenska Handelsbanken, N.Y.*, 998 F. Supp. 301, 304 (S.D.N.Y. 1998) (fee application of Donald Sapir, Esq. sought reimbursement at $325.00 per hour), and, assuming cost of living-type increases, Dretchen's counsel's rate likely is in the $400 to $500 range per hour today.

[7] *See* "Annual Report of the Director: Judicial Business of the United States Courts," *U.S. District Courts - Civil Cases Commenced, Terminated, and Pending During the 12-Month Periods Ending September 30, 2005 and 2006*, http://www.uscourts.gov/judbus2006/appendices/c0.pdf (last visited Jan. 2, 2008)).

## II. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE PROPER ALTERNATIVE VENUE TO MISSISSIPPI

Though Dretchen fails to identify any relevant connection to New York, and resists transferring to the appropriate forum of Mississippi, he suggests that Pennsylvania would also be an appropriate forum. To that end, Dretchen asserts that he:

- met with Allan Pharma executives in Pennsylvania in June 2005. (Dretchen Aff., ¶10);

- had "significant professional contact" in Pennsylvania with Dr. Vegesna and 18 Allan Pharma scientists. (Dretchen Aff., ¶13); and

- visited Pennsylvania on a monthly basis to meet with co-workers. (Dretchen Aff., ¶15; Donovan Supp. Decl., ¶12).

Assuming the truth of Dretchen's assertions—and only if the Court deems Mississippi to be an inappropriate venue—then the convenience of these witnesses and the interests of justice favor transferring this case to the Eastern District of Pennsylvania. *See, e.g., I Create,* 2004 WL 1774250, at *2 (citations omitted). New York, however, is the least convenient venue for the parties and witnesses and is the state with the least connection to the material issues in this case.

### CONCLUSION

Based upon the foregoing reasons, Allan Pharmaceutical LLC respectfully requests that this matter be transferred to the Southern District of Mississippi, Eastern Division.

Dated: New York, New York  
January 10, 2008

PROSKAUER ROSE LLP

By: /s/ *Mark A. Saloman*  
Paul Salvatore (PS-1880)  
Mark A. Saloman (Mississippi-5764)