**PROSKAUER ROSE LLP**
Paul Salvatore (PS-1880)
Mark A. Saloman (MS-5764)
1585 Broadway
New York, New York 10036
(212) 969-3000
Attorneys for Defendant
*Allan Pharmaceutical LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
LOUIS DRETCHEN,                                     :    07 Civ. 10306 (CLB) (LMS)
                                                    :
                              Plaintiff,            :
                                                    :
                                                    :    **SUPPLEMENTAL DECLARATION**
            v.                                      :    **OF JOSEPH DONOVAN**
                                                    :
ALLAN PHARMACEUTICAL LLC,                           :
                                                    :    **ECF CASE**
                              Defendant.            :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

    **I, Joseph Donovan**, hereby certify and declare as follows:

    1.    I am Chief Financial Officer of Allan Pharmaceutical LLC ("Allan Pharma").

Based upon my personal knowledge and understanding, I am competent to attest to the matters

within this Supplemental Declaration in further support of Allan Pharma's motion to transfer this

case from the United States District Court for the Southern District of New York to the Southern

District of Mississippi.

    2.    Louis Dretchen's affidavit in opposition to Allan Pharma's motion is misleading

in a number of important respects.

    3.    During his interviews, I and others told Dretchen that Allan Pharma's operations

and infrastructure at the time were entirely based in Mississippi.

4.     Dretchen's only formal job interview was held at the Newark Liberty International Airport Marriott because CEO Neil Sirkin and I flew up from Mississippi for the meeting and returned to Mississippi that day.  Accordingly, Dretchen was never interviewed for nor offered a position with Allan Pharma in New York.

5.     While Dretchen notes that he hired a New Jersey lawyer to negotiate the terms of his Employment Agreement, I negotiated the Agreement from Mississippi on behalf of Allan Pharma.

6.     Even after our research and development functions were relocated from Mississippi to Pennsylvania in September 2005 (more than three months after Dretchen's hire), Dretchen still:

- interfaced with Mississippi-based customer-service personnel and contract support administrators on a daily basis;

- worked under an Employment Agreement which was created, drafted, and negotiated by Allan Pharma in Mississippi and governed by the laws of Mississippi;

- received employee benefits which were managed and administered in Mississippi; and

- sold products manufactured in and distributed from Mississippi.

7.     Dretchen's COBRA benefits are administered by Blue Cross/Blue Shield of Mississippi and he continues to deliver monthly health insurance payments to us in Mississippi.

8.     Dretchen's reference to one meeting with Allan Pharma's senior leadership team in Warminster, Pennsylvania, does not alter the fact that he attended dozens of meetings in De Kalb, Mississippi.  No leadership meetings—or meetings of any kind—were ever held in New York.

9.     Though Dretchen embellishes his role in establishing "programs to monitor ordering and customer service," that occurred in Mississippi, not New York.

10.     That Dretchen drops the name of Giora Carni does not change the fact that Mr. Carni had no role in the hire, supervision, or termination of Dretchen nor was he affiliated in any way with Allan Pharma at the time of Dretchen's separation. To my knowledge, Mr. Carni is an Israeli citizen who lives and works in Israel. Notably, Dretchen does not state that Mr. Carni is a potential witness on his behalf.

11.     It is disingenuous for Dretchen to claim that he will be inconvenienced if the litigation moves to Mississippi because he is a traveling salesman. He admits that his chosen profession, by its nature, requires him to travel extensively outside of New York on a regular basis.

12.     Indeed, my review of Dretchen's own expense reports shows that he spent at least 27 days in Mississippi during his work for Allan Pharma and claims to have spent more than half of his entire employment traveling outside of New York. That included 25 trips to our Pennsylvania research facility. A true copy of my summary of his travels is attached as Exhibit 5.

13.     Within the last nine months, Dretchen also attended the NACDS trade show in Boston and, despite his post-employment contractual obligations, we know that Dretchen visited Allan Pharma customers outside of San Francisco, in Columbus, Ohio, and in Ft. Lauderdale, Florida. It is my belief that he has also met with numerous of our other clients in other parts of the U.S. since his separation.

14.     Dretchen's travel for business far beyond Mississippi is in distinct contrast to Allan Pharma's essential witnesses, all of whom live, work, or are otherwise available in Mississippi.

15.    Because we have knowledge concerning, among other things, Dretchen's Agreement, pharmaceutical sales practices, the allegedly due or owing sales commissions—as well as his felony arrest, conviction, inclusion on the Excluded Parties List, debarment for cause from participation in federal contracting, his calculated concealment of those facts from Allan Pharma, and the ultimate decision to terminate the Agreement—Dretchen does not challenge that Mr. Sirkin, Human Resources Manager Mandi McDade, and I are essential witnesses in this case. We live and/or work in Mississippi and do not normally travel to New York.

16.    Dretchen's purported witnesses, Raju Vegesna and Sam Sirkin, are also readily available in Mississippi to participate in the case.

17.    Dretchen mentions Allan Pharma's 18 scientists in Pennsylvania as potential witnesses on his behalf. Although it is entirely unclear what evidence Dretchen thinks these individuals possess, they also will be made available in Mississippi.

18.    Allan Pharma's remaining Mississippi-based witnesses have knowledge of facts essential to Allan Pharma's defenses. Customer Service Representative Bertha Rush, for example, has detailed information concerning Dretchen's sales practices that directly relates to the allegations in his Complaint. Specifically, Dretchen claims that he earned sales commissions because his sales revenue, less applicable discounts and rebates, met or exceeded certain targets. Based upon her extensive dealings on a daily basis with Dretchen, Ms. Rush will testify that Dretchen sold product to customers in a manner that impermissibly inflated his gross sales figures and forced Allan Pharma to incur added costs after its customers returned a significant volume of unsold product.

19.    Though Dretchen claims to have had "minimal professional contact" with Ms. Rush, she will be an essential witness for Allan Pharma. Ms. Rush lives and works in

Mississippi and does not normally travel, to New York or elsewhere, for Allan Pharma. Ms.
Rush, moreover, is eight months pregnant and will experience certain hardship if forced to travel
to New York for deposition or trial.

20.     Likewise, Allan Pharma's Comptroller, Ashley Withers, was responsible for
handling administrative functions for Dretchen, which included accounting, customer service,
order entry, sales reporting, contract management, and the majority of his sales support. She also
has direct knowledge concerning the inaccuracy of Dretchen's claims and will testify concerning
the scale of full-credit returns of product oversold to customers by Dretchen and the impact of
the reconciliation of those returns on his allegation that he is owed commission payments. Ms.
Withers lives and works in Mississippi and does not travel to New York, and minimally travels
elsewhere, for Allan Pharma.

21.     In light of Allan Pharma's numerous defenses to Dretchen's claims, his assertion
that we do not need to present the live testimony of our Mississippi-based witnesses is
extraordinary. These witnesses will demonstrate, among other things, that Dretchen's oft-
repeated assertion that he had "$18 million in sales" is inaccurate, inflated, and wrong.

22.     Contrary to Dretchen's assertion, the amount of his allegedly outstanding sales
commissions is vigorously disputed by Allan Pharma. The testimony of these Mississippi-based
witnesses is critically necessary to show that Dretchen's sales figures are overstated and fail to
take into account the significant volume of rebates, returns, and discounts that significantly
reduced his net sales. Consequently, Allan Pharma's witnesses will disprove the very basis of
his demand for unpaid commissions and stock options.

23.     Dretchen does not dispute that his Employment Agreement was formed in
Mississippi and his allegation of breach of that contract and his so-called retaliatory discharge

are centered in Mississippi, not New York.  Indeed, after the utterly unexpected results of

Dretchen's background screening report were received by Allan Pharma in Mississippi, Human

Resources Manager McDade and CEO Sirkin spent a significant amount of time in Mississippi

investigating and confirming the accuracy of the findings of the report and assessing the options

concerning Dretchen's continued work for Allan Pharma.

24.     Dretchen makes much of the passage of time between the date that Ms. McDade

received the background screening report and the date of the termination of his contract.  The

lapse of time, however, was necessary to allow Allan Pharma sufficient opportunity to perform

due diligence and confirm the remarkable findings of the background screening report.

25.     In deference to Dretchen, Allan Pharma followed up on each of the issues raised

by the report before deciding to terminate his Agreement.  First, Ms. McDade conferred with Mr.

Sirkin and he engaged legal counsel in Mississippi to analyze the issues raised by the

background report and identify options concerning Dretchen's continued employment.

26.     Second, Ms. McDade conducted computer-assisted research concerning

Dretchen's federal debarment, reviewed applicable laws, and spoke with Jackie Freeman of the

Office of Health and Human Services who was familiar with Dretchen's case.

27.     During that conversation, Ms. Freeman explained the implications of the cause

and treatment codes which Dretchen had violated, confirmed that he had never sought

reinstatement of his pharmacist's license and had been debarred from participating in any

federally-funded  employee health benefit programs, and cannot be the principal point of contact

of any direct sales to the federal government.

28.     Third, Ms. McDade engaged the background screening service to review Dretchen's license in all 50 states.  That additional investigation confirmed to us that Dretchen did not have a valid pharmacist's license in any state.

29.     Although Dretchen tries to minimize the impact of his criminal background, revoked pharmacy license, and inclusion on the federal Excluded Parties List, our findings greatly affected his continued employment with Allan Pharma.

30.     By his execution of his Agreement, Dretchen tacitly acknowledged that he had not been convicted of a felony or committed any other corrupt practice.  In reality, he had been prosecuted and found guilty of Grand Larceny, a class D felony, and sentenced to five years probation and ordered to complete community service and make restitution.

31.     Moreover, Dretchen had repeatedly communicated to us and to third parties that he was a registered pharmacist even though the background screening report, and our subsequent investigation, revealed that he had no pharmacy license in any state.  While Allan Pharma did not require him to maintain a pharmacy license, the business card that Dretchen helped create identifies him as "Lou Dretchen, R.Ph. [sic]".  Likewise, sales literature created by Dretchen for Allan Pharma referred to him as "Lou Dretchen, R.Ph".  A copy of his business card, the relevant page of a sales brochure, and a few examples of documents which Dretchen signed as "Louis Dretchen, R.Ph" are attached as Exhibits 6, 7, and 8.

32.     In fact, he was spotted at the NACDS in Boston last summer with a nametag that, again, stated that he is a registered pharmacist.

33.     Dretchen's identification on the Excluded Parties List also was a significant factor in the decision to terminate his employment.  At all times during Dretchen's employment, Allan Pharma was and remains a party to a Medicaid Drug Rebate Agreement.  By its terms, Allan

Pharma is required to reimburse the federal government for products consumed by patients covered by Medicaid and Medicare.

34.    Dretchen was also present at numerous management meetings in which we discussed Allan Pharma's serious interest in potential direct sales to Medicare and Medicaid, the single largest purchasers of pharmaceutical products in the United States.  Dretchen also knew of Allan Pharma's exploration of direct sales to the Department of Defense and Department of Veterans Affairs.

35.    Because Allan Pharma and PharmaPac manufacture, sell, and distribute pharmaceutical products in a highly regulated and monitored industry, we were obviously concerned that Dretchen's debarment would affect Allan Pharma's ability to do business with the federal government in the future.

36.    Dretchen's claim that he was "lured" from New York to Mississippi on March 21, 2007 to be fired could not be farther from the truth.

37.    As our investigation came to a close, we knew that it was important for Dretchen to have the opportunity to explain or clarify our findings to Allan Pharma's senior leadership team.

38.    We knew that Dretchen was set to arrive in Mississippi on the evening of March 18, 2007, in advance of a scheduled client meeting in Shreveport, Louisiana and a planned meeting with Allan Pharma personnel in De Kalb, and that he planned to stay in Jackson, Mississippi through March 21.  A copy of the hotel bill confirming this stay, which Dretchen submitted for reimbursement, is attached as Exhibit 9.  Dr. Vegesna was also set to arrive in Mississippi, on unrelated matters, on March 20.

39.     Since Dretchen, Dr. Vegesna, Mr. Sirkin, and I could all be together in the same place at the same time, I told Dretchen on March 20 that we would like to meet with him at our lawyer's Jackson office at 9:00 a.m. on March 21.

40.     Shortly after I scheduled the meeting, however, we heard from Dretchen's New Jersey attorney that Dretchen would not meet with us if any lawyers were present.

41.     We then held the meeting, without lawyers present, at the Jackson Hilton on March 21. Inexplicably, Dretchen refused to provide any details or information to explain, contradict, or dispute our findings at our meeting that day. Dretchen's employment with Allan Pharma was then terminated in Jackson, Mississippi.

42.     Accordingly, every material aspect of Dretchen's claims and Allan Pharma's defenses are rooted in Mississippi, not New York. The contract Dretchen claims to have been breached by Allan Pharma was willingly made and entered into in Mississippi and Dretchen voluntarily agreed to be bound by Mississippi law. The decision to terminate the Agreement—the very heart of Dretchen's retaliation claim—was made in Mississippi, based on information obtained in Mississippi, communicated to Dretchen in Mississippi, and implemented in Mississippi.

43.     Likewise, the relevant documents concerning the Agreement and Dretchen's personnel file, sales data, sales contracts, e-mail traffic and hard drives, and all other supporting material relevant to this case are located in Mississippi. Contrary to Dretchen's lawyer's claims, these documents are not in New Jersey or New York.

44.     Finally, Dretchen admits in the last paragraph of his Affidavit that he breached his post-separation obligations to Allan Pharma when he obtained employment with our competitors within six months of the termination of his employment. This appears indicative of a breach of

the Agreement which, again, was made and entered into in the State of Mississippi and is governed by and construed in accordance with the internal laws of Mississippi.

45.    Dretchen does not identify any witnesses in New York who would be needed in the event that Allan Pharma files counterclaims for breach of contract against Dretchen. I am not aware of any such witnesses in New York.

46.    It also seems counterintuitive that Dretchen could rely upon his own unlawful conduct in New York to justify the affirmative claims that he should have filed in Mississippi.

47.    Dretchen travels for a living and will be no more inconvenienced litigating in Mississippi than he would be elsewhere. It, however, remains an unfair, onerous, exceptionally expensive, and extraordinarily time-consuming undertaking for Allan Pharma to be forced to present its numerous Mississippi-based witnesses for depositions and for trial in New York in order to defend itself against claims that arose in and are materially connected to Mississippi.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated at De Kalb, Mississippi
this _7_ th day of January, 2008.

By: _____
JOSEPH DONOVAN
Chief Financial Officer
Allan Pharmaceutical LLC

10

**PROSKAUER ROSE LLP**
Paul Salvatore (PS-1880)
Mark A. Saloman (MS-5764)
1585 Broadway
New York, New York 10036
(212) 969-3000
Attorneys for Defendant
*Allan Pharmaceutical LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
LOUIS DRETCHEN,                           :    07 Civ. 10306 (CLB) (LMS)
                                          :
                    Plaintiff,            :
                                          :
                                          :    **CERTIFICATION OF VERIFIED**
              v.                          :    **FACSIMILE SIGNATURE**
                                          :
ALLAN PHARMACEUTICAL LLC,                 :
                                          :
                    Defendant.            :    **ECF CASE**
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

         The undersigned hereby certifies that the signatory of the annexed document

personally acknowledged the genuineness of the signature as true and exact.  The original

document or a copy with an original signature affixed will be forwarded for filing if

requested by the Court or any party hereto.

                              Respectfully submitted,

                    By:    s/*Mark A. Saloman*
                              PROSKAUER ROSE LLP
                              Paul Salvatore (PS-1880)
                              Mark A. Saloman (MS-5764)
                              1585 Broadway
                              New York, New York 10036
                              (212) 969-3000
                              *Attorneys for Defendant*
                              Allan Pharmaceutical LLC

Dated:  January 7, 2008

**5**

## Louis Dretchen Travel Days

| State | No. of Days[*] |
|-------|---------------|
| Mississippi | 27 |
| Alabama | 4 |
| Arkansas | 7 |
| California | 20 |
| California | 20 |
| Connecticut | 12 |
| District of Columbia | 2 |
| Florida | 7 |
| Georgia | 6 |
| Illinois | 4 |
| Maryland | 2 |
| Massachusetts | 15 |
| Minnesota | 2 |
| Missouri | 4 |
| Nevada | 26 |
| New Jersey | 43 |
| North Carolina | 4 |
| Ohio | 7 |
| Pennsylvania | 25 |
| Tennessee | 4 |
| Washington | 4 |
| Total Travel Days | 245 |
| Days employed | 464[**] |
| **Total Travel Time** | **52.8%** |

[*] Source: business expense reimbursement reports submitted to Allan Pharmaceutical LLC by Louis Dretchen.

[**] Dretchen worked for Allan Pharmaceutical LLC for approximately 154 business days in 2005; 250 business days in 2006; and 60 business days in 2007.

6



**Lou Dretchen, R.Ph.**
Executive Vice President
Sales & Marketing

8 Sasson Terrace
Valley Cottage, New York 10989

845-268-9109 ( Office )
914-325-3322 ( Cell )

**Ldretchen@aol.com** ( E-Mail )

7



# Bringing Good Science to Life...

*Allan Pharmaceutical is a rapidly growing specialty pharmaceutical company which was created to formulate, manufacture, and distribute a wide range of generic prescription pharmaceutical products to the national market. It is rapidly expanding to the international markets. Our main Goal is to create satisfaction in our customers by providing them with the highest quality products and exceptional service, at competitive prices.*

*Allan Pharmaceutical's product portfolio covers a wide spectrum of dosage forms (topicals, liquids, solids, etc.), as well as therapeutic classes (cough & cold, wound care and maternal health.*

**Lou Dretchen, R.Ph   VP Sales & Marketing
845.268.9109**

*www.allanpharmaceutical.com*

**8**



January 3, 2006

Ms. Nancy Sibray
Director Of Pharmacy Purchasing
Acute Care Pharmaceuticals
12225 World Trade Drive
Suite F & G
San Diego, California, 92128

Dear Nancy,

Allan Pharmaceuticals, LLC, is proud to introduce Allanzyme ( Accuzyme ) Ointment, Allanfil ( Panafil ) Ointment, Folic Acid 1mg, Quinine Sulfate 325mg, Allanfol (Folic Acid 2.2mg/B-6 25mg/B-12 12mcg) ( Folgard ), Allanhist ( Accuhist PDX Syrup ), Allanhist Drops ( Accuhist PDX Drops ), AllanVan S ( Viravan Suspension ), AllanVan DM ( Viravan DM ), and Allantan ( Rynatan ), as part of our diverse portfolio of Generic products. Allan is pleased to offer you the opportunity to add these products to your program at the pricing below:

Allanzyme Ointment 30 gm  - NDC – 13279–0100–30
AWP - $ 48.56    WAC - $ 36.68    Invoice - $ 27.51 ( Dead Net )

Allanfil Ointment 30gm  - NDC – 13279–0101–30
AWP - $ 78.32    WAC - $ 62.92    Invoice - $ 47.19 ( Dead Net )

Folic Acid 1mg 100's - NDC – 13279–0600–10
AWP - $ 34.50    WAC - $ 19.50    Invoice - $ 7.00  ( Dead Net )

Folic Acid 1mg 1000's NDC – 13279–0600–11
AWP - $ 78.00    WAC - $ 56.15    Invoice - $ 17.00  ( Dead Net )

Quinine Sulfate 325 mg 100's  - NDC – 13279–0675-10
AWP - $ 90.34    WAC- $ 60.50    Invoice - $ 10.75 ( Dead Net )

Quinine Sulfate 325 mg 1000's  - NDC - 13279 0675-11
AWP - $ 844.06    WAC- $ 565.00    Invoice - $ 117.00 ( Dead Net )

Allanfol (Folic 2.2/B-6 25mg/B-12 500mcg ) ( Folgard ) 100's - NDC – 13279–0601-10
AWP - $ 43.50    WAC - $ 29.95    Invoice - $ 13.00 ( Dead Net )

Allantan ( Rynatan Pediatric Suspension) 473 ml - NDC – 13279–0303-16
AWP - $ 148.05    WAC - $ 84.15    Invoice - $ 29.00 ( Dead Net )

Page  1



Allanhist PDX ( Accuhist PDX Syrup ) 473 ml - NDC – 13279–0300-16
AWP - $ 58.06    WAC - $ 36.60    Invoice - $ 22.00  ( Dead Net )

Allanhist PDX Drops ( Accuhist PDX Drops ) 30 ml - NDC – 13279–0301-30
AWP - $ 38.20    WAC - $ 24,80    Invoice - $ 11.00 ( Dead Net )

AllanVan S ( Viravan Suspension ) 473 ml – NDC - 13279–0306–16
AWP - $ 139.50    WAC - $ 80.25    Invoice - $ 62.00  ( Dead Net )

AllanVan DM ( Viravan DM Suspension ) 473 ml  - NDC - 13279-0307–16
AWP - $ 153.30    WAC - $ 101.65    Invoice - $ 67.50 ( Dead Net )


Payment Terms, Two (2%) Percent Thirty ( 30 ) Days, Net Thirty-One ( 31 ) Days.

Contract Effective January 3, 2006 through December 31, 2009.

Contract Number is AcuteCare2006.



Sincerely,                                        Accepted

Lou Dretchen, R.Ph.
Executive VP Sales & Marketing        Nancy  Sibray  /  Director

                                                  Acute Care Pharmaceuticals
                                                  Company

                                                  January  3, 2006
                                                  Date


Page 2



February 14, 2006

Paul M. Malacrida, R.Ph.
Director, Pharmacy Services
Managed Health Care Associates, Inc. ( M H A )
25A Vreeland Road
Suite 203
Florham Park, New Jersey 07932

Dear Paul,

Allan Pharmaceuticals, LLC, is proud to introduce **Allanzyme 650 Spray, ( Papain-Urea Spray )**, **33 ml Bottles,** as part of our diverse portfolio of Generic products. The active ingredients are comparable to the Brand **Accuzyme Spray, 33 ml.**

I am pleased to inform you that First Data Bank and Medispan will link Allanzyme under the same **GCN Code** as the Brand Accuzyme. Currently Allanzyme is the **ONLY** alternate available.

Allan Pharmaceuticals is pleased to offer you the opportunity to add this product to your program at the pricing below:

| Allan Product Description | Size | NDC Number | Contract Price | AWP |
|---|---|---|---|---|
| Papain-Urea ( Allanzyme 650 ) Spray ( Accuzyme ) | 33 ml | 13279-0102-33 | $ 42.68 | $ 48.56 |

The pricing will become effective immediately **upon receipt of your signed acceptance** and will expire with your existing agreement.

Please sign and fax back your signed acceptance to me at 845 – 268 – 9109. If you have any questions regarding the enclosed, please feel free to contact me at 845 – 268 – 9109.

Sincerely,

Lou Dretchen, R.Ph
Executive VP Sales & Marketing

Paul Malacrida, R.Ph. / Director

**Managed Healt Care Associates**
Company

**February 14, 2006**
Date *2.17.06*

*MAKE EFFECTIVE T NEW CONTRACT 3-1-06*

March 14, 2006

**allan**
**pharmaceutical**

Mr. Laxmikant D. Patel, R.Ph.
Director Of Pharmacy
Duane Reade
440 Ninth Avenue
New York, New York, 10001

Dear Lax,

Allan Pharmaceuticals, LLC, is proud to introduce Allanzyme ( Accuzyme ) Ointment and Spray, Allanfil ( Panafil ) Ointment and Spray, Folic Acid 1mg, Quinine Sulfate 325mg Capsules, Allanfol (Folic Acid 2.2mg/B-6 25mg/B-12 12mcg) ( Folgard ), Allanhist ( Accuhist PDX Syrup ), Allanhist Drops ( Accuhist PDX Drops ), AllanVan S ( Vitavan Suspension ), AllanVan DM ( Vitavan DM ), and Allantan ( Rynatan ), as part of our diverse portfolio of Generic products. Allan is pleased to offer you the opportunity to add these products to your program at the pricing below:

Allanzyme  Ointment 30 gm  – NDC – 13279–0100–30
AWP - $ 48.56    WAC - $ 36.68    Direct Invoice – $ 22.01 ( Dead Net )

Allanzyme  Spray 33 ml – NDC – 13279–0102–33
AWP - $ 48.56    WAC - $ 36.68    Direct Invoice – $ 29.34 ( Dead Net )

Allanfil  Ointment 30gm  - NDC – 13279–0101–30
AWP - $ 78.32    WAC - $ 62.92    Direct Invoice – $ 37.75 ( Dead Net )

Allanfil  Spray 33ml  - NDC – 13279–0103–33
AWP - $ 78.32    WAC - $ 62.92    Direct Invoice – $ 50.34 ( Dead Net )

Folic Acid  1mg  100's – NDC – 13279–0600–10
AWP - $ 34.50    WAC - $ 19.50    Direct Invoice – $ 5.50  ( Dead Net )

Folic Acid  1mg  1000's  NDC – 13279–0600–11
AWP - $ 78.00    WAC - $ 56.15    Direct Invoice – $ 13.75  ( Dead Net )

Quinine Sulfate 325 mg 100's – NDC - 13279–0675-10
AWP - $ 90.34    WAC - $ 60.50    Direct Invoice – $ 13.95 ( Dead Net )

Quinine Sulfate 325 mg 1000's - NDC - 13279  0675-11
AWP - $ 844.06    WAC - $ 565.00   Direct Invoice – $ 139.50 ( Dead Net )

Allanfol (Folic 2.2/B-6 25mg/B-12 1mg ) ( Folgard ) 100's - NDC – 13279–0601-10
AWP - $ 43.50    WAC - $ 29.95    Direct Invoice – $ 12.00 ( Dead Net )

Page 1



**allan**
pharmaceutical

AllanTex ( Foltx ) 90's - NDC - 13279-0602-90
AWP - $ 43.93    WAC - $ 32.95    Direct Invoice - $ 16.00 ( Dead Net )

Allantan ( Rynatan Pediatric Suspension) 473 ml – NDC – 13279–0303-16
AWP - $ 148.05    WAC - $ 84.15    Direct Invoice – $ 19.50 ( Dead Net )

Allanhist PDX ( Accuhist PDX Syrup ) 473 ml - NDC – 13279-0300-16
AWP - $ 58.06    WAC - $ 36.60    Direct Invoice - $ 20.13 ( Dead Net )

Allanhist PDX Drops ( Accuhist PDX Drops ) 30 ml - NDC – 13279-0301-30
AWP - $ 38.20    WAC - $ 24.80    Direct Invoice - $ 9.92 ( Dead Net )

AllanVan S ( Viravan Suspension ) 473 ml – NDC - 13279-0306-16
AWP - $ 139.50    WAC - $ 80.25    Direct Invoice - $ 54.57 ( Dead Net )

AllanVan DM ( Viravan DM Suspension ) 473 ml - NDC - 13279-0307-16
AWP - $ 153.30    WAC - $ 101.65    Direct Invoice - $ 60.99 ( Dead Net )

Payment Terms, Two ( 2% ) Percent Sixty ( 60 ) Days, Net Sixty-One ( 61 ) Days.

Contract Effective March 14, 2006 through December 31, 2009.

Contract Number is DUANE2006.

Sincerely,

*Lou Dretchen*

Lou Dretchen, R.Ph.
Executive VP Sales & Marketing

Accepted

*Laxmikant Patel*

Lax D. Patel, R.Ph. / Director

**Duane Reade**
Company

**March  14, 2006**
Date

Page 2

8 Sasson Terrace • Valley Cottage, NY 10989 • Tel/Fax: 845-268-9109 • Ldretchen@aol.com



August 10, 2006

Mr. Bill Versosky
Director Purchasing Generics
ANDA
2915 Weston Road
Weston,  Florida  33331

Dear Bill,

Allan Pharmaceuticals, LLC, is proud to introduce **AllanDerm Ointment, ( Trypsin 90 USP, Castor Oil, Balsam Peru, Ointment ), 60 gm Tubes,** as part of our diverse portfolio of Perscription ( Rx ) products. You may compare the active ingredients in Allanderm T Ointment to the active ingredients as found on the label of XenaDerm®[1] Ointment, 60 gm.

I am pleased to inform you that First Data Bank has given AllanDerm T **GCN Code 015667,** and Medispan has given AllanDerm T **GPI Code 90700050004220.** AllanDerm T has been assigned the same GCN Code, and GPI Code as the **XenaDerm® Ointment.** Currently AllanDerm T is the **ONLY** other listed product under these GCN and GPI Code Numbers.

Allan Pharmaceuticals is pleased to offer you the opportunity to add this product to your program at the pricing below:

| **Allan Product Description** | **Size** | **NDC Number** | **WAC** | **AWP** |
|---|---|---|---|---|
| AllanDerm T( Trypsin 90 USP, Castor Oil, Balsam Peru ) Ointment ( XenoDerm ) | 60 gm | 13279-0104-60 | $ 44.46 | $ 64.79 |

The pricing will become effective immediately upon receipt of your signed acceptance and will expire with your existing agreement.

**ANDA's Invoice ( Dead-Net )**
  **$  38.00**

Contract effective date and Price Protection will be from August 7, 2006 through December 31, 2009.  Contract Number is  AlDerm2006
Please sign and fax back your signed acceptance to me at  845 – 268 – 9109.  If you have any questions regarding the enclosed,  please feel free to contact me at  845 – 268 – 9109.

Sincerely,

Lou Dretchen, R. Ph.
Executive VP Sales & Marketing

Accepted

Bill Versosky / Director  *Richard Cunnadette*
**ANDA**
Company Name
**August  10,  2006**
Date

---

[1] XENADERM is a registered trademark of Healthpoint, Ltd
8 Sasson Terrace
Valley Cottage, NY 10989
845-268-9109 Office   914-325-3322 Cell



August 11, 2006

Ms. Shireen DeFoggi
Contracting Director
Premier, Inc.
2320 Cascade Pointe Boulevard
Charlotte, North Carolina, 28266

Dear Shireen,

Allan Pharmaceuticals, LLC, is proud to introduce AllanDerm Ointment, ( Trypsin 90 USP, Castor Oil, Balsam Peru, Ointment ), 60 gm Tubes, as part of our diverse portfolio of Perscription ( Rx ) products. You may compare the active ingredients in Allanderm T Ointment to the active ingredients as found on the label of XenaDerm®[1] Ointment, 60 gm.

I am pleased to inform you that First Data Bank has given AllanDerm T GCN Code 015667, and Medispan has given AllanDerm T GPI Code 90700050004220. AllanDerm T has been assigned the same GCN Code, and GPI Code as the XenaDerm® Ointment. Currently AllanDerm T is the ONLY other listed product under these GCN and GPI Code Numbers.

Allan Pharmaceuticals is pleased to offer you the opportunity to add this product to your program at the pricing below:

| Allan Product Description | Size | NDC Number | WAC | AWP |
|---|---|---|---|---|
| AllanDerm T( Trypsin 90 USP, Castor Oil, Balsam Peru ) Ointment ( XenoDerm ) | 60 gm | 13279-0104-60 | $ 44.46 | $ 64.79 |

The pricing will become effective immediately upon receipt of your signed acceptance and will expire with your existing agreement.

**Premier Contract Price**
$ 40.50

Contract effective date and Price Protection will be from August 11, 2006 through June 30, 2009. Addendum to Allan Pharmaceutical, LLC., Contract Number Premier2006. Please sign and fax back your signed acceptance to me at 845 – 268 – 9109. If you have any questions regarding the enclosed, please feel free to contact me at 845 – 268 – 9109.

Sincerely,

Lou Dretchen, R. Ph.
Executive VP Sales & Marketing

Accepted

Shireen DeFoggi / Director    Pharmacy Contracts
Premier, Inc.
Company Name    PREMIER PURCHASING PARTNERS, L
~~August 14,~~ 2006    By: PREMIER PLANS, LLC.,
Date    8/14/06    Its General Partner

By:
Printed Name:
Title:
By: R H Morgan
Printed Name: Bryan Morgan R Ph
Title: Vice President Pharmacy Services

[1] XENADERM is a registered trademark of Healthpoint, Ltd
8 Sasson Terrace
Valley Cottage, NY 10989
845-268-9109 Office  914-325-3322 Cell

August 14, 2006

**ap**
**allan**
**pharmaceutical**

Mr. Laxmikant D. Patel, R.Ph.
Director Of Pharmacy
Duane Reade
440 Ninth Avenue
New York, New York, 10001

Dear Lax,

Due to Market conditions, Allan Pharmaceuticals, LLC, is pleased to let you know that
Allan Pharmaceuticals has lowered the price of AllanFil ( Panafil ) Ointment 30 gm,
Allanhist ( Accuhist PDX Syrup ), Allanzyme ( Accuzyme ) Spray, at the pricing below:

Allanzyme Spray 33 ml - NDC – 13279–0102–33
AWP - $ 48.56    Direct Invoice - $ 26.40 ( Dead-Net )

Allanfil Ointment 30gm  - NDC – 13279–0101–30
AWP - $ 78.32    Direct Invoice - $ 24.99 ( Dead-Net )

Allanhist  PDX ( Accuhist PDX Syrup ) 473 ml - NDC – 13279–0300–16
AWP – $ 58.06    Direct Invoice - $ 17.82 ( Dead-Net )

Contract Effective August 14, 2006 through December 31, 2009.

Contract Number is  DUANE2006.

Sincerely,                                         Accepted

Lou Dretchen, R.Ph.
Executive VP Sales & Marketing                    Lax D. Patel, R.Ph. / Director

                                                  **Duane  Reade**
                                                  Company

                                                  **August   14, 2006**
                                                  Date



September 27, 2006

Mr. Bill Versosky
Director Purchasing Generics
ANDA
2915 Weston Road
Weston, Florida 33331

Dear Bill,

Allan Pharmaceuticals, LLC, is proud to offer **Allanvan - S, and Allanvan DM** as part of our diverse portfolio of Perscription ( Rx ) products.

Allan Pharmaceuticals is pleased to offer you the opportunity to add this product to your program at the pricing below:

| Allan Product Description | Size | NDC Number | WAC | AWP |
|---|---|---|---|---|
| AllanVan S Suspension<br>( Viravan Suspension ) | 473 ml | 13279-0306–16 | $ 80.25 | $ 139.50 |
| AllanVan DM<br>( Viravan DM Suspension ) | 473 ml | 13279-0307–16 | $ 101.65 | $ 153.30 |

The pricing will become effective immediately **upon receipt of your signed acceptance** and will expire with your existing agreement.

**ANDA's Invoice ( Dead-Net )**
$  56.80
$  59.50

Contract effective date and Price Protection will be from September 27, 2006 through December 31, 2009. Contract Number is Alvan2006

All purchase orders will be in case quantities of Twelve ( 12 ) bottles per case.

Please sign and fax back your signed acceptance to me at 845 – 268 – 9109. If you have any questions regarding the enclosed, please feel free to contact me at 845 – 268 – 9109.

Sincerely,

Lou Dretchen, R. Ph.
Executive VP Sales & Marketing

Accepted

Bill Versosky / Director
ANDA
Company Name
September 27, 2006
Date

8 Sasson Terrace
Valley Cottage, NY 10989
845-268-9109 Office   914-325-3322 Cell

**9**

**FAIRFIELD INN SUITES**
**407 RIVERWIND DRIVE**
**PEARL MS 39208**
**601-936-3434**





L. DRETCHEN

| | |
|---|---|
| Room: | 326    XMIB |
| Room Type: | QNQN |
| No. Of Guests: | 1 |
| Rate: | 93.00 |
| Clerk: | |

LEISURE

Arrive  18Mar07  Time   06:18p Depart 21Mar07  Time   | Folio#  PY-88686

| Date | Reference Number | Description | Charges | Credits |
|---|---|---|---|---|
| 18Mar07 | RP326 | ROOM CHARGE | 93.00 | |
| 18Mar07 | T1326 | Occupancy Sales Ta | 1.86 | |
| 18Mar07 | T2326 | State Occupancy Ta | 6.51 | |
| 19Mar07 | RP326 | ROOM CHARGE | 93.00 | |
| 19Mar07 | T1326 | Occupancy Sales Ta | 1.86 | |
| 19Mar07 | T2326 | State Occupancy Ta | 6.51 | |
| 20Mar07 | RP326 | ROOM CHARGE | 93.00 | |
| 20Mar07 | T1326 | Occupancy Sales Ta | 1.86 | |
| 20Mar07 | T2326 | State Occupancy Ta | 6.51 | |
| 21Mar07 | VI326 | Visa | | 304.11- |

```
**************************************
*   CARD #: VIXXXXXXXXXXXX8052        *
*   Amount:     304.11   Auth: 050330 *
*        ** Signature on File  **     *
**************************************
```

**      BALANCE   **                        .00

Marriott Rewards Club Member: XXXXX3248.  Retain this receipt for your records.

### Latest News From Marriott Rewards

It's MegaBonus time!  Time to dream MEGA-big about your next
vacation.  Stay with Marriott between March 1 and May 31, 2007
and receive your MegaBonus!
Register today at MarriottRewards.com or 1-888-MARRIOTT.

A Colorful Spring Break awaits you at www.Gifts.Marriott.com
Receive a FREE Samsonite suitcase with each VacationCard purchase!
Offer valid on $1000 or $2000 VacationCard purchases through 4/9/07.
Pack more into your Spring Break with this great offer!